99

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

AF HOLDINGS LLC.,                          CASE No. 12-cv-14442

      Plaintiff,

vs.                                        MOTION TO QUASH OR MODIFY
                                           SUBPOENA

MATTHEW CICCONE,

      Defendants.

**FILED**

**JAN 1 7 2013**

CLERK'S OFFICE-DETROIT-PSG
U.S. DISTRICT COURT

---

JONATHAN W. TAPPAN              John Doe (50.4.160.247)
Attorney for Plaintiff          Pro Se,
2549 Somerset Blvd. #102        Lz2009@outlook.com
Troy, MI 48084
(415) 325-5900

---

# Index of Exhibits

A. Motion to intervene in order to quash subpoena or alternatively for issuance of a protective order.

1. CASE 0:12-cv-02687-RHK-JJG   Document 11; Letter from Paul Godfread representing Alan Cooper.

2. CASE 2:11-cv-03995-DRH-GRB   Document 39; Order & Recommendation regarding: RE BITTORRENT ADULT FILM COPYRIGHT INFRINGEMENT CASES; K-Beech, Inc. v. John Does 1-37, CV 11-3995

3. CASE 1:10-cv-06255 CP Productions, Inc. Vs. Does 1-300; Honorable Shadur's Statement

4. CASE 11-4220 SC; SBO PICTURES, INC., d/b/a WICKED PICTURES, a California Corporation vs DOES 1-3036; ORDER GRANTING IN PART PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO TAKE EXPEDITED DISCOVERY, SEVERING DOE DEFENDANTS 2-3036 FROM ACTION, AND DISMISSING CLAIMS AGAINST DOE DEFENDANTS 2-3036

5.   CASE 2:11-cv-15231-GCS-RSW Document 8; PATRICK COLLINS, INC vs JOHN
     DOES 1-23; ORDER GRANTING MOTION TO QUASH IN PART AND SEVERING
     DOE DEFENDANTS 2-23

Dated: 1/15/2013

John Doe (50.4.160.247),
Pro Se,
Lz2009@outlook.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| AF HOLDINGS LLC., | CASE No. 12-cv-14442 |
| Plaintiff, | |
| vs. | MOTION TO QUASH OR MODIFY SUBPOENA |
| MATTHEW CICCONE, | |
| Defendants. | |

| | |
|---|---|
| JONATHAN W. TAPPAN | John Doe (50.4.160.247) |
| Attorney for Plaintiff | Pro Se, |
| 2549 Somerset Blvd. #102 | Lz2009@outlook.com |
| Troy, MI 48084 | |
| (415) 325-5900 | |

**MOTION TO INTERVENE IN ORDER TO QUASH SUBPOENA OR
ALTERNATIVELY FOR ISSUANCE OF A PROTECTIVE ORDER**

The undersigned, whose IP address is 50.4.160.247, moves this court to intervene pursuant to
Fed. R. Civ. P. 24(a)&(b) in order to quash the subpoena served upon their Internet Service
Provider by Plaintiff, or in the alternative, for a protective order, for the reasons stated in the
accompanying Brief In Support pursuant to Fed. R. Civ. P. 26(C)(1).

John Doe (50.4.160.247)
Pro Se,
Lz2009@outlook.com

## MOTION TO QUASH AND/OR VACATE SUBPOENA AND INCORPORATED MEMORANDUM OF LAW

**Nature of Motion:**

The undersigned, pro se, moves the court, pursuant to Fed. R. Civ. P. 45(c)(3), and limits his appearance for the purposes of contesting jurisdiction, for an order quashing the subpoena served on November 29, 2012, the Internet Service provider (ISP) of the undersigned, seeking information relating to subscriber information.

The undersigned was not the direct recipient of the subpoena at issue in this case, but is instead an end user of the above named Internet Service Provider (ISP). The undersigned has standing to file this motion to quash pursuant to the personal rights and privileges of protection of information, identity, rights of jurisdiction, and undue burden of travel. See *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995).

The purpose of the subpoena issued to the undersigned is to disclose my identity as a listed "Doe" in the above styled case, which is a placeholder name used when a defendant's true identity is unknown. See generally, *Plant v. Does*, 19 F. Supp. 2d 1316, 1320 (S.D. Fla. 1998).

**Standard of Review:**

Fed. R. Civ. P. 24(a) is applicable to the present case and provides in pertinent part that upon a timely motion the court *must* permit anyone to intervene who:

> … (2) claims an interest relating to the property or transaction, and is so situated that disposing of action may as a practical matter impair or impede the movant's ability to protect its interest, unless the existing parties adequately represent

Similarly, Fed. R. Civ. P. 24(b) provides that upon a timely motion the court *may* permit anyone to intervene who:

> … (B) has a claim or defense that shares with the main action a common question of law or fact

## Background – AF Holdings LLC

I do verily believe that the plaintiff, AF Holdings LLC, is a foreign based company, registered on St. Kitts and Nevis. The plaintiff is a client of Prenda Law (aka "Anti-Piracy Law Group").

I further verily believe that John Steele is now associated with Prenda Law by name only. Prenda Law has also associated itself with John Steele's caretaker, Alan Cooper. Prenda Law has indicated that its current CEO is Alan Cooper.

By way of correspondence dated November 29, 2012, I do verily believe that Godfread Law Firm, P.C., informed the Honorable Judge Richard Kyle and the Honorable Judge Joan N. Erickson that Alan Cooper's identity had been used without his consent as the CEO of AF Holdings LLC, which was the plaintiff to several cases. Those cases were dismissed with prejudice. Attached hereto and marked as **Exhibit 1** to this Motion is a copy of this correspondence.

## Copyright Infringement Cases

Most recently, the courts have had to deal with the issue of copyright infringement cases. However, with the ever increasing amount of claims being filed, the courts have had to question the manner in which the plaintiff's and/or their counsel are seeking their relief. More specifically, Prenda Law has been scrutinized by numerous districts for abusing the court system. The courts have found that Prenda Law has improperly joined a number of unknown defendants; engaged in abusive tactics; and coerced innocent parties into settlements.

Review of this courts' system has revealed that the Eastern District of Michigan Courthouse has had numerous cases filed against John Does by plaintiff's alleging they are the registered owners for a variety of pornographic films.

## Basis of this Motion

This motion is based on the following factors, which are explained in further detail below:

(1) The person using a device connected to the internet at any given time is not necessarily the individual to whom the involved Internet Protocol Address (hereinafter referred to as "IP Address") is registered; and

(2) Despite indication from the Media Access Control (hereinafter referred to as "MAC") that the internet is connected, there is no way to identify the individual who is accessing the internet.

(3) It is foreseeable that the plaintiff's intent is to join multiple defendants into one action.

## 1. *The person using a device connected to the internet at any given time is not necessarily the individual to whom the involved IP Address is registered.*

The public IP address recorded does not necessarily correlate to any software being installed on any computer belonging to an individual. The public IP address only correlates to the immediate location of the Internet service and who pays the ISP. This is due to the fact that a majority of the homes and small businesses today use a Wireless Firewall/Router (hereinafter referred to as "WFR") to share the Internet connection to systems at their location. The WFR allows multiple wired and wireless connections from computers (some possibility unauthorized); all using the same public IP address.

As the wireless signal of the WFR commonly extends outside the residence, it is not unusual for unauthorized systems to connect to it. Some ISP subscribers may have run their wireless Internet connection open, so virtually anyone could have connected to it and downloaded the plaintiff's movie. Even if an ISP subscriber secures the wireless Internet connection with a password, there are various vulnerabilities that could be exploited to gain access to it.

The WFR provides each system connected to it a private "internal" IP address that no one outside the home network will ever see. However, this does not guarantee an outside user will not access the Internet. In fact, the unauthorized use of an individual's Internet

connection is sometimes unwittingly done by a neighbor, but has also been done by malicious third-parties.

The courts have previously dealt with the aforementioned situation and acknowledged that the protection against unauthorized users is not a guarantee. In *In Re BitTorrent Adult Film Copyright Infringement Cases*, **(Exbibit 2, pg 6)**   the Honorable Gary Brown held: "it is no more likely that the subscriber to an IP address carried out a particular computer function- here the purported illegal downloading of a single pornographic film-than to say an individual who pays the telephone bill made a specific telephone call".

2.  ***Even a valid Media Access Control (MAC) address will often indicate only the wireless router connected to the internet and cannot be relied upon to determine who accessed the internet at any particular time.***

The identity of devices connected to the Internet through an IP address is often limited to the first chain of devices.  However, since the development of the wireless router, the only identifiable individual is the owner of this router.

Regardless of how "secure" the individual owner makes the wireless router, it never guarantees that third parties cannot access it and download information. The ISP will not be able to determine who accessed the Internet at any given moment. Additionally, the ISP cannot identify the computer or device that utilized the Internet at a particular time.

The aforementioned points were also outlined by the Honorable Gary R. Brown in the case of *In Re: BitTorrent Adult Film Copyright Infringement Cases,* **(Exhibit 2, pg 7):**

> …unless the wireless router has been appropriately secured (and in some cases even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film. As one court noted:  In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connect to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet

through the router and modem under the same IP address. The wireless router strength could be increased beyond 600 feet if additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass the security using publicly available software.

### 3. It is foreseeable that the plaintiff's intent is to join multiple defendants into one action.

Under certain circumstances, two or more persons join together as coplaintiffs or codefendants in a lawsuit, they generally must share similar rights or liabilities. Most recently, the courts have opined that parties advancing copyright claims are attempting to "identify hundreds of Doe defendants through pre-service discovery and facilitate mass settlement". *See, On the Cheap, LLC v. Does 1-5011,* Case No. C10A472.

The plaintiff in the case at bar is not foreign to the concept of bringing suits for copyright infringement as it relates to the distribution of pornographic films. The plaintiff, AF Holdings LLC, brought *at least* 240 claims in *at least* 20 states. As outlined above, many of the defendants are mere subscribers and not infringers. Therefore, the concept of joinder will compel innocent third party individuals to participate in the litigation process and "...settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a case about the alleged illegal trading of a pornographic film". *Digital Sin, Inc. v. Does 1–176, No. 12-CV-00126 (AJN), 2012 WL 263491, at *2 (S.D.N.Y. Jan. 30, 2012).*

In *CP Productions, Inc. v. Does 1-300, Case 1:2010-cv-06255* **(Exhibit 3)**, Judge Milton Shadur dismissed the plaintiff's case as against all John Doe Defendants for the plaintiff's abuse of the litigation system "in more than one way". Judge Shadur stated:

> This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants – this one seeking the nullification of a February 11, 2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, 1 CP's counsel

> is ordered to appear in court on March 9, 2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

In *Millennium TGA, Inc. v. Does 1-21 case 3:2011-cv-02258,* Judge Samuel Conti recognized joinder issues in the plaintiff's case thereby denying the request for leave to take an early discovery, stating, "[t]his Court does not issue fishing licenses". Since this time, multiple cases have been severed for improper joinder by the courts. *See Boy Racer, Inc. v. Does 1-52 case 5:2011-cv-02329; Boy Racer, Inc. v. Does 1-71 case 5:2011-cv-01958; and New Sensations, Inc. v. Does 1-1786 case 5:2010-cv-05864.*

In *Patrick Collins, Inc. v. John Does 1-23*, United States District Court Case No. 12-cv-15231 **(Exhibit 5, pg 4)**, concluded that joinder of the Doe defendants was not permitted under Rule 20 of the Federal Rules of Civil Procedure. He stated:

> Defendant Doe argues that this court should quash the subpoenas served upon the Doe defendants because the plaintiff has improperly joined the putative defendants under Rule 20(a) of the Federal Rules of Civil Procedure. Defendant Doe maintains that joinder is improper because the allegations in the complaint, while involving a single Work, involve unrelated defendants who allegedly violated the copyright laws at different times and locations, sometimes using different services and perhaps subject to different defenses. Further, defendant claims that the nature of BitTorrent does not support plaintiff's claim that all John Doe IP addresses acted together for the entire relevant time period.

The court concluded that simply alleging use of BitTorrent technology does not comport with the requirements of Rule 20(a) for permissive joinder **(Exhibit 5, pg 6)**:

> ....the court concludes that simply alleging the use of BitTorrent technology, like earlier P2P file sharing protocols, does not comport with the requirements under Rule 20(a) for permissive joinder. Here, the alleged activity involves 23 different defendants, 4 different ISPs, and nearly three months of activity (7/15/2011 through 10/11/2011). This is insufficient to establish that the Doe defendants were involved in the same transaction or series of transactions.

***

> [E]ven if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case.

***Summary***

Although individuals are assigned IP and MAC addresses when accessing the Internet, this does not guarantee identification of the user. In fact, the degree of uncertainty is so high that in most cases it is often impossible to truly pinpoint which person accessed the Internet at a given moment. This often leads to a misidentification of the wrongdoers and innocent people are forced to not only participate in the litigation process but endure the unneeded stress for an act that he or she did not commit. The Honorable Judge Samuel Conti in *SBO Pictures, Inc. v. Does 1-3036, 2011 WL 6002620, at \*3 (N.D.Cal. Nov. 30, 2011)* **(Exhibit 4)** recently ruled on this exact point by stating:

> …. the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes. By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, Plaintiff's sought-after discovery has the potential to draw numerous internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed.

In numerous jurisdictions, the courts have allowed cases misidentifying the wrong individuals to proceed which have resulted in settlements due to fear that the individual will be a named party in an action. Unfortunately, the court now has to hear matters dealing with situations where innocent individuals are being coerced into an unjust settlement.

In the case of *Digital Sin*, 2012 WL263491, the courts noted that there is concern about the threat of a lawsuit's potential impact on social and economic relationships which compels innocent individuals to enter into an extortionate settlement.

Counsel's intentions are clear in this action. The plaintiff will not be simply requesting a discovery to obtain information as it pertains to Matthew Ciccone but rather enter into a

fishing expedition to name innocent individuals as defendants and coerce them into a settlement purely on the grounds of fear.

## Case at Bar (Ciccone Action)

Notwithstanding the aforementioned information, I have no knowledge about Matthew Ciccone's case. I have never known Matthew Ciccone. The first time I learned about Matthew Ciccone and the acts he committed was upon reading a copy of the subpoena served upon WOW.

I do not have knowledge of the movie that is the subject of this litigation. I do not have this movie or any film of this nature on my computer.

Following a review of the subpoena, I immediately telephoned WOW to inquire about the details of this subpoena. I advised WOW that at the time Matthew Ciccone's offense was committed I did not have the IP address in question. It was during this telephone conversation, I was informed that if WOW is compelled to provide plaintiff's counsel with the name of the individual who is the owner of the IP address that is the subject of this motion then WOW will give counsel the information of the current owner. WOW verified that I in fact was not the owner of the aforementioned IP address and they do not have knowledge of who the owner was at the time Matthew Ciccone committed his offense.

## Conclusion

I do verily believe that this is a fit and proper case in which this Honorable Court grant an Order restricting WOW from disclosing the information as it pertains to the undersigned.

I do verily believe that the undersigned would be prejudiced if forced to have to proceed through the litigation process involving Matthew Ciccone as the undersigned has no knowledge of his matter or the allegations being advanced against him by the plaintiff.

In the event the Court feels production of the personal information for either the undersigned is appropriate, the undersigned respectfully request that the Court enter an Order limiting the use

of such information for the stated purpose of proving and/or disproving their claims against Mr. Ciccone only.

I bring this motion to squash the subpoena for no other or improper purpose or delay.

## **CERTIFICATE OF SERVICE**

I hereby certify that I have mailed a copy of the motion record to JONATHAN W. TAPPAN, and a courtesy copy to BERNARD J. FUHS.


Dated: 1/15/2013

John Doe (50.4.160.247),
Pro Se,
Lz2009@outlook.com

# EXHIBIT 1

# GODFREAD LAW FIRM, P.C.

100 South Fifth Street, Suite 1900, Minneapolis, MN 55402

November 29, 2012

**Via ECF**
The Honorable Richard H. Kyle
772 Federal Building
316 N. Robert Street
St. Paul, MN 55101

The Honorable Joan N. Erickson
12W U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Re:     **Alan Cooper - AF Holdings, LLC and Ingenuity13, LLC**

Dear Judge Kyle and Judge Erickson:

I represent Alan Cooper who is concerned that his name or identity is being used without his consent as the CEO of AF Holdings, LLC, a plaintiff in several cases pending in the District of Minnesota. His name appears in attachments to the pleadings in these cases. Perhaps, the CEO of AF Holdings has the same name as my client, we have substantial information that would indicate that this is not a mere coincidence. I would like to be certain my client is not at risk of liability for the outcome of these cases and others like it and that he is not being made a front for the litigation activities of plaintiffs. I have attempted to contact counsel for AF Holdings and their reaction has not been reassuring.

My client had for several years acted as a caretaker for a Minnesota property owned by an attorney by the name of John Steele. When visiting his property, Steele had on numerous occasions bragged to my client about a plan involving massive copyright litigation in multiple jurisdictions. He also specifically instructed my client to contact him if anyone asked about various corporations, that Cooper was to call him. When Cooper confronted Steele about that, Steele told him not to worry about it. Needless to say, my client was suspicious, but did not know what to make of this situation. Upon learning about the many lawsuits filed by AF Holdings and learning that AF Holdings has a CEO with an identical name he began to investigate further, eventually prompting him to retain counsel.

Steele has filed numerous lawsuits across the country similar to the ones before this court involving copyright infringement over Bittorrent and may be heavily involved in the cases filed here by AF Holdings. Steele has appeared on behalf of AF Holdings in at least one case (see Ex. A). Steele also shares an office address (161 N. Clark Street, Chicago, IL 60601) with the office listed on the website of plaintiff's counsel (www.wefightpiracy.com) (see Ex. B and C). Steele's former law firm, Steele Hansmeier, appears to be the predecessor firm to Prenda Law and used the same domain name (see Ex. D - a screenshot of a cached copy of Steele's law firm Steele Hansmeier at www.wefightpiracy.com in February 2011) Steele Hansmeier has also represented Ingenuity 13, which also appears to have a similar case pending here (0:12-cv-02686-RHK-JJG) which apparently also has a manager named Alan Cooper. (See Ex. E, page 8). From these exhibits, it is also clear that attorney Dugas shares a phone number with attorney Gibbs of Steele Hansmeier (415-325-5900).

paul@godfreadlaw.com
www.godfreadlaw.com

phone 612-284-7325
fax 612-465-3609

Hon. Richard H. Kyle and Hon. Joan N. Ericksen
November 29, 2012
Page Two

When investigating this matter and calling the number listed on the wefightpiracy.com website, I confirmed that Steele is currently "of counsel" with Prenda Law. I called and emailed local counsel, Michael Dugas to give notice of representation and to find out if there was in fact a different Alan Cooper with AF Holdings. Within an hour after giving notice to Prenda Law and local counsel of my representation, Steele himself called my client several times in a row and asked if he had been talking to attorneys in Minnesota. Because I had not yet heard from attorneys Dugas or Steele, I looked for an alternative phone number for attorney Dugas and found a different number than the one that appears on the pleading (312-880-9160, See Ex. F). This number appears as attorney Steele's number in Exhibit A as well. Calling that number, I heard a voicemail message which said "Prenda Law." I again left a message, but have received no response. Because I have received no response from Dugas or Steele, and because Steele has contacted my client, my suspicions are now increased.

Today, I received an email from another attorney from Prenda Law, Paul Duffy, suggesting that their client, AF Holdings, probably would not volunteer information. I reasserted my request to confirm that there was another Alan Cooper at AF Holdings. Shortly before sending this letter, Duffy emailed me again and said that I should not contact his office again.

My client would like certainty that his identity is not being used without his knowledge and against his will as the would be CEO of AF Holdings, LLC or as a manager of Ingenuity13, LLC. Because both are Nevis based companies, discovering the true officers or directors is at best difficult. I have attempted to contact plaintiffs' attorneys, but have not received a response that would allow me to advise my client that he should not be concerned.

I respectfully request leave to file a motion to intervene and to seek discovery regarding the true identity of AF Holdings, LLC's CEO and Ingenuity 13, LLC's manager, Alan Cooper.

Sincerely,

Paul Godfread

Exhibits

cc:     John Steele, Esq. (via email)
        Paul Duffy, Esq. (via email)
        Michael Dugas (via ECF)

paul@godfreadlaw.com
www.godfreadlaw.com

phone 612-284-7325
fax 612-465-3609

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AF HOLDINGS LLC, | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case : 1:12-cv-00048** |
| | ) | |
| **DOES 1 – 1058,** | ) | **Judge : Hon. Beryl A. Howell** |
| | ) | |
|     **Defendants.** | ) | |
| | ) | |

## MOTION FOR PRO HAC VICE ADMISSION OF JOHN L. STEELE

    I, Paul A. Duffy, hereby move pursuant to Local Civil Rule 83.2(d) for the *pro hac vice* admission of John L. Steele to the bar of this Court to act as co-counsel in this action.  Mr. Steele is of counsel with the firm of Prenda Law, Inc., and is a member in good standing of the bar of the State of Illinois and the U.S. District Court for the Northern District of Illinois.  On the basis of the foregoing, it is respectfully requested that this Court admit Mr. Steele *pro hac vice* for the purpose of appearing and participating as co-counsel on behalf of Plaintiff, AF Holdings, Inc., in this action.

Dated:  April 20, 2012            Respectfully submitted,

                   By:    /s/ Paul A. Duffy

                      Paul A. Duffy (D.C. Bar # IL0014 )
                      Prenda Law Inc.
                      161 N. Clark Street, Suite3200
                      Chicago, IL  60601
                      Telephone: (312) 880-9160
                      Facsimile:  (312) 893-5677
                      Attorneys for Plaintiff,
                      AF Holdings LLC

Exhibit A
Pg 1 of 5

4:12-cv-14442-GAD-MKM Doc # 23 Filed 01/17/13 Pg 19 of 99 Pg ID 1239
CASE 0:12-cv-02687-RHK-JJG Document 11 Filed 11/29/12 Page 4 of 25
Case 1:12-cv-00048-BAH Document 32 Filed 04/20/12 Page 2 of 5

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 20, 2012, I caused a true and correct copy of the foregoing Motion For Pro Hac Vice Admission to be electronically filed with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

Dated: April 20, 2012

/s/ Paul A. Duffy
Paul A. Duffy

Exhibit A
Pg 2 of 5

4:12-cv-14442-GAD-MKM Doc # 23 Filed 01/17/13 Pg 20 of 99 Pg ID 1240
CASE 0:12-cv-02687-RHK-JJG Document 11 Filed 11/29/12 Page 5 of 25
Case 1:12-cv-00048-BAH Document 32 Filed 04/20/12 Page 3 of 5

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

AF HOLDINGS LLC,        )

      Plaintiff,        )

v.        )  Case : 1:12-cv-00048

DOES 1 – 1058,        )  Judge : Hon. Beryl A. Howell

      Defendants.        )

## DECLARATION OF JOHN L. STEELE

I, John Steele, declare pursuant to 28 U.S.C. § 1746 and Local Civil Rule 83.2(d):

1. I am of counsel with the law firm of Prenda Law, Inc., counsel for Plaintiff, AF Holdings, LLC in the above-captioned action. I submit this declaration in support of Paul A. Duffy's Motion pursuant to Local Civil Rule 83.2(d) for the *pro hac vice* admission of John Steele to the bar of this Court.

2. My full name is John L. Steele.

3. My office address is 161 N. Clark Street, Suite 3200, Chicago, Illinois 60601. My office telephone number is (312) 880-9160.

4. I have also been admitted to practice before, and am a member in good standing of, the bars of the United States Court District Court for the Northern District of Illinois, and the State of Illinois.

5. I have not been disciplined by any bar.

6. I have been admitted *pro hac vice* to this Court in one case (1:12-mc-00150-ESH-AK) in the previous two years.

Exhibit A
Pg 3 of 5

4:12-cv-14442-GAD-MKM Doc # 23 Filed 01/17/13 Pg 21 of 99 Pg ID 1241
CASE 0:12-cv-02687-RHK-JJG Document 11 Filed 11/29/12 Page 6 of 25
Case 1:12-cv-00048-BAH Document 32 Filed 04/20/12 Page 4 of 5

7.      I do not engage in the practice of law from an office located in the District of
Columbia.  I am not a member of the District of Columbia bar, nor do I have an application
for membership pending.

I hereby declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Dated:       April 20, 2012

/s/ John Steele

John Steele
Prenda Law Inc.
161 N. Clark St., Suite 3200
Chicago, IL 60601
Telephone: (312) 880-9160
Facsimile:  (312) 893-5677


**Exhibit** A
**Pg** 4 **of** 5

4:12-cv-14442-GAD-MKM   Doc # 23   Filed 01/17/13   Pg 22 of 99   Pg ID 1242
CASE 0:12-cv-02687-RHK-JJG   Document 11   Filed 11/29/12   Page 7 of 25
Case 1:12-cv-00048-BAH   Document 32   Filed 04/20/12   Page 5 of 5

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| AF HOLDINGS LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case : 1:12-cv-00048 |
| | ) |
| DOES 1 – 1058, | )    Judge : Hon. Beryl A. Howell |
| | ) |
|     Defendants. | ) |
| | ) |

### [PROPOSED] ORDER

Upon consideration of the Motion for *Pro Hac Vice* Admission of John L. Steele, it is

hereby

ORDERED that John L. Steele be specially admitted to appear and participate in the

above-captioned matter as counsel for Plaintiff AF Holdings, LLC.

Dated: April 20, 2012                  _____

                                        Hon. Beryl A. Howell
                                        United States District Court Judge

**Exhibit** A
**Pg** 5 **of** 5

11/27/12      Chicago Divorce Lawyer, Child Support Attorney, Child Custody Lawyers, Family Law Attorneys – Ste...



**Divorce And Family Law**

**Child Custody**

**Child Support**

**Modification & Enforcement**

**Collaborative Divorce & Mediation**

**Prenuptial & Postnuptial Agreements**

**Spousal Support / Maintenance**

**Domestic Violence & Orders of Protection**

**Adoption**

**Bankruptcy**

**STEELE LAW FIRM, LLC**
Phone: 312-893-5888 Toll-Free (in Northern Illinois):
1-800-DIVORCE

**Office Locations:**

**Downtown Chicago**
161 N Clark St., Suite 3200
Chicago, IL 60601

**Naperville**
2135 CityGate Ln, Suite 300
Naperville, IL 60563

www.steele-law.com

## WELCOME TO THE STEELE LAW FIRM, LLC
### with Offices in Chicago, IL.

**Family Law ● Bankruptcy ● Divorce ● Child Custody
Child Support ● Prenuptial Agreements**

If you are going through a divorce, or if your financial troubles are leading you to consider bankruptcy, you now have the opportunity to take a situation that isn't working out and make it better.

All of our clients have unique personal problems that they need help with. We are in the business of solving thos problems, whether they be related to family law matters, such as divorce, child custody or child support, or consumer bankruptcymatters. Contacting a lawyer can be the first step toward taking hold of your future and building a better life.

**If you are looking for an attorney who will do what it takes to get you relief from your legal concerns, contact us to schedule a free initial consultation about your case.**

### Quality Legal Assistance in Illinois

The Steele Law Firm is one of Chicagoland's premier family law and consumer bankruptcy law firms. Our attorneys and staff are committed to providing high quality, accessible, compassionate service to our clients. We give each client and case the individual attention they deserve, and do everything in our power to reach our clients' overall needs and goals.

Our main office is located in the Loop in downtown Chicago, and we also have an office location in the Chicago suburb of Naperville. We represent clients with matters in Cook County, DuPage County, Kane County, Lake County, and Will County family courts, and the Northern, Southern and Central Districts of Illinois federal bankruptcy courts.

Whether you are looking for an advocate in a divorce proceeding, need help enforcing a child support order, want to know whether Chapter 7 or Chapter 13 bankruptcy is better for you, you need the advice and assistance of a skilled, experienced Illinois attorney to help you protect all of your legal rights.

Give us a call today at (312) 893-5888 or 1-800-DIVORCE (in Northern Illinois) or contact us to learn more about how we can help you or to set up a FREE consultation.

### Rate Information:

Fixed Hourly Rates
Fixed Flat Fees Available
**FREE Consultation**

**We Accept Major Credit Cards**
● Visa
● MasterCard
● American Express
● Discover

**We Can Assist You With:**

● Matrimonial Law
● Family Law
● Divorce
● Domestic Relations
● Dissolution of Marriage and Legal Separation
● Litigation in Trial Courts
● Negotiated Settlements
● Alternative Dispute Resolution, such as Collaborative Law and Mediation
● Appeals to Reviewing Courts
● Financial Discovery and Analysis
● Property Division
● Retirement Benefits
● Qualified Domestic Relations Orders (QDROs)
● Paternity
● Adoption



Exhibit B
Pg 1 of 2

1/2

11/27/12          Chicago Divorce Lawyer, Child Support Attorney, Child Custody Lawyers, Family Law Attorneys - Ste...



- Child Custody, Including Joint Custody and Sole Custody
- Child Visitation
- Child Support
- Child Abductions
- Maintenance, formerly known as Alimony
- Spousal Support
- Marital Settlement Agreements
- Premarital Agreements
- Postnuptial Agreements
- Annulments
- Domestic Violence
- Post-Decree and Post-Judgment Issues and Modifications
- Restraining Orders
- Separation Agreements

**We are a debt relief agency.**

11/27/12                                      Prenda Law INC.



About the Firm  Firm Resources  Attorneys  Practice Areas  Giving  Case Samples



Call: 1-800-380-0840

## DISCLAIMER

The information provided on Prenda Law, Inc.'s website is not intended to be legal advice, but merely conveys general information related to legal issues commonly encountered. This information is not intended to create any legal relationship between Prenda Law, Inc. Intellectual Property Attorneys or any attorney and the user. Neither the transmission nor receipt of these website materials will create an attorney-client relationship between sender and receiver.

The information is not guaranteed to be correct, complete, or current. We make no warranty, expressed or implied, about the accuracy or reliability of the information at this website or at any other website to which this site is linked.

Please note that recovery results vary per client. The recovery amounts in each case reflect the specific facts of that case. Further, recovery amounts in past cases are not a guarantee of future results.

There are no photos of clients on this website. Photos used on this website have been purchased from stock photography companies.

This website is not intended to create and does not create an attorney-client relationship between the user and Prenda Law, Inc. Intellectual Property Attorneys. An attorney-client relationship with us cannot be formed by reading the information at this website. The only way to become our client is through a mutual agreement in a formal letter. This website is not soliciting clients and does not propose any type of transaction. You should not act or rely on any information at this website without seeking the advice of an attorney. The determination of whether you need legal services and your choice of a lawyer are very important matters that should not be based on websites or advertisements.

THIS SITE IS PROVIDED ON AN "AS IS", "AS AVAILABLE" BASIS AND PRENDA LAW INC. EXPRESSLY DISCLAIMS ALL WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NONINFRINGEMENT.

PRENDA LAW DISCLAIMS ALL RESPONSIBILITY FOR ANY LOSS, INJURY, CLAIM, LIABILITY, OR DAMAGE OF ANY KIND RESULTING FROM, ARISING OUT OF OR ANY WAY RELATED TO (A) ANY ERRORS IN OR OMISSIONS FROM THIS SITE AND ITS CONTENT, INCLUDING BUT NOT LIMITED TO TECHNICAL INACCURACIES AND TYPOGRAPHICAL ERRORS, (B) ANY THIRD PARTY WEBSITES OR CONTENT THEREIN DIRECTLY OR INDIRECTLY ACCESSED THROUGH LINKS IN THIS SITE, INCLUDING BUT NOT LIMITED TO ANY ERRORS IN OR OMISSIONS THEREFROM, (C) THE UNAVAILABILITY OF THIS SITE OR ANY PORTION THEREOF, (D) YOUR USE OF THIS SITE, OR (E) YOUR USE OF ANY EQUIPMENT OR SOFTWARE IN CONNECTION WITH THIS SITE.

## PERSONAL INFORMATION SUBMITTED TO THE WEBSITE

Any information that you send us in an email message might not be confidential or privileged. Prenda Law, Inc. makes effort to protect personal information submitted by users of the website, including through the use of firewalls and other security measures on our servers. However, no server is 100 percent secure, and you should take this into account when submitting personal or confidential data about yourself on any website, including this one.

Additionally, while the website does not gather your name, email address or similar information about you without your knowledge or consent, the website does permit you to voluntarily submit data about yourself so that we can provide you with requested services. The information gathered will be incorporated into our mailing database and will not be sold to third parties for marketing purposes. At your request, we will remove your personal information from our files.

If you are interested in having us represent you, you should call us so we can determine whether the matter is one for which we are willing or able to accept professional responsibility. We will not make this determination by email communication.

The telephone numbers for our office are listed in this website. We reserve the right to decline any representation. We may be required to decline representation if it would create a conflict of interest with our other clients.

## PRACTICE JURISDICTIONS

Prenda Law, Inc. is an Illinois law firm. Always directly confirm with the individual attorney whom you contact whether he or she practices the type of law with which you need assistance in your jurisdiction.

wefightpiracy.com/terms-of-service.php

Exhibit  C
Pg  1  of  3

1/3

11/27/12                                           Prenda Law INC.

## TERMS OF USE MAY BE MODIFIED BY THE FIRM

Prenda Law, Inc. periodically changes, adds, or updates the material in this website without notice. Prenda Law, Inc. assumes no liability or responsibility for any errors or omissions in the contents of this website. Your use of this website is at your own risk. Under no circumstances shall Prenda Law, Inc. or any other party involved in the creation, production or delivery of this website be liable to you or any other person for any indirect, special, incidental, or consequential damages of any kind arising from your access to, or use of, this website.

## THIRD-PARTY WEBSITES

This website may occasionally contain links to third party websites for the convenience of our users. Prenda Law, Inc. does not endorse any of these third party sites and does not intent to imply any association between the firm and the party(ies) involved. Furthermore, Prenda Law, Inc. does not control these third party websites and cannot represent that their policies and practices will be consistent with these Terms of Use. If you use any links to websites not maintained by Prenda Law, Inc., you do so at your own risk. Prenda Law, Inc. is not responsible for the contents or availability of any linked sites. These links are provided only as a convenience to the recipient.

## LEGAL AND ETHICAL REQUIREMENTS

Prenda Law, Inc. has tried to comply with all legal and ethical requirements in compiling this website. We do not want to represent clients based on their review of any portion of this website that does not comply with legal or ethical requirements.

To the extent that the professional responsibility rules of any jurisdiction require us to designate a principal office or an attorney responsible for this website, Prenda Law, Inc. designates its office in 161 N Clark St., Suite 3200, Chicago, IL 60601 and its telephone number as (312) 880-9160.

## STATE ADVERTISING DISCLAIMERS

**Alabama:** No representation is made that the quality of the legal services to be performed is greater than the quality of legal services performed by other lawyers.

**Colorado:** Colorado does not certify attorneys as specialists in any field.

**Florida:** The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience.

**Illinois:** Unless otherwise stated, our attorneys claiming certification in an area of law are not certified by the Illinois Board of Legal Specialization.

**Iowa:** The determination of the need for legal services and the choice of a lawyer are extremely important decisions and should not be based solely upon advertisements or self-proclaimed expertise. This disclosure is required by rule of the Supreme Court of Iowa.

NOTICE TO THE PUBLIC: Memberships and offices in legal fraternities and legal societies, technical and professional licenses, and memberships in scientific, technical and professional associations and societies of law or field of practice do not mean that a lawyer is a specialist or expert in a field of law, nor do they mean that such a lawyer is necessarily any more expert or competent than any other lawyer. All potential clients are urged to make their own independent investigation and evaluation of any lawyer being considered. This notice is required by rule of the Supreme Court of Iowa.

**Kentucky and Oregon:** THIS IS AN ADVERTISEMENT.

**Mississippi:** The Mississippi Supreme Court advises that a decision on legal services is important and should not be based solely on advertisements.

**Missouri:** Neither the Supreme Court of Missouri nor the Missouri Bar reviews or approves certifying organizations or specialist designations.

**Nevada:** The State Bar of Nevada does not certify any lawyer as a specialist or expert.

**New Mexico:** LAWYER ADVERTISEMENT.

**Tennessee:** None of the attorneys in this firm are certified as a Civil Trial, Criminal Trial, Business Bankruptcy, Consumer Bankruptcy, Creditor's Rights, Medical Malpractice, Legal Malpractice, Accounting Malpractice, Estate Planning or Elder Law specialist by the Tennessee Commission on Continuing Legal Education and Specialization. Certification as a specialist in all other listed areas is not currently available in Tennessee.

**Wyoming:** The Wyoming State Bar does not certify any lawyer as a specialist or expert. Anyone considering a lawyer should independently investigate the lawyer's credentials and ability, and not rely upon advertisements or self-proclaimed expertise.

## LAWYER'S LISTINGS

The information in the directory of lawyers is provided by the listees. Prenda Law, Inc. does not warrant the validity of the information, nor does it guarantee the quality of the work product.

The determination of the need for legal services and the choice of a lawyer are extremely important decisions and should not be based solely upon advertisements or self-proclaimed expertise. Prenda Law, Inc. does not review the contents of the listings, which are provided by the listees or any links; Prenda Law, Inc. is not responsible for any material or information contained in the linked sites or provided by listees.

A description or indication of limitation of practice by a lawyer does not mean that any agency or board has certified such lawyer as a specialist or expert in any indicated field of law practice, nor does it mean that such lawyer is necessarily any more expert or competent than any other lawyer.

All potential clients are urged to make their own independent investigation and evaluation of any lawyer being considered.

## OWNERSHIP, LICENSE & RESTRICTIONS ON USE

As between Prenda Law, Inc. and you, all right, title and interest (including all copyrights, trademarks and other intellectual property rights) in this website belongs to Prenda Law, Inc., its licensors, or listees. In addition, the names, images, pictures, logos and icons identifying Prenda Law, Inc. products and services in many countries are proprietary marks of Prenda Law, Inc. and/or its subsidiaries or affiliates. Except as expressly provided below, nothing contained herein shall be construed as conferring any license or right, by implication, estoppel or otherwise, under copyright or other intellectual property rights.

wefightpiracy.com/terms-of-service.php

**Exhibit** C
**Pg** 2 **of** 3

2/3

11/27/12                                    Prenda Law INC.

You are hereby granted a nonexclusive, nontransferable, limited license to view and use information retrieved from this website provided solely for your personal, informational, non-commercial purposes, and provided you do not remove or obscure the copyright notice or other notices. Except as expressly provided above, no part of this website, including but not limited to materials retrieved there from and the underlying code, may be reproduced, republished, copied, transmitted, or distributed in any form or by any means. In no event shall materials from this website be stored in any information storage and retrieval system without prior written permission from Prenda Law, Inc. Intellectual Property Attorneys.

Use, duplication, or disclosure by or for the United States Government is subject to the restrictions set forth in DFARS 252.227-7013 (c)1)(ii) and FAR 52.227-19.

## LIMITATION OF LIABILITY

A covered party (as defined below) shall not be liable for any direct, indirect, incidental, special, or consequential damages of any kind whatsoever (including, without limitation, attorneys' fees and lost profits or savings) in any way due to, resulting from, or arising in connection with this site, including its content, regardless of any negligence of any covered party. "Covered party" means Prenda Law, Inc., its affiliates, its listees, and any officer, director, employee, subcontractor, agent, successor, or assign Prenda Law, Inc., its affiliates, and its listees.

## GOVERNING LAWS IN CASE OF DISPUTE; JURISDICTION

These Terms of Use shall be governed by and construed in accordance with the laws of the State of Illinois, USA, as they apply to agreements made and solely performed therein. Disputes arising hereunder shall be exclusively subject to the jurisdiction of the federal courts of the United States of America and/or the state courts of Illinois and jurisdiction therefore shall rest solely in Illinois, USA.

## ENTIRE AGREEMENT; SEVERABILITY

These Terms of Use incorporate by reference any notices contained on this Site and constitute the entire agreement with respect to your access to and use of this Site. If any provision of these Terms and Conditions is unlawful, void or unenforceable, then that provision shall be deemed severable from the remaining provisions and shall not affect their validity and enforceability.

Material available in Prenda Law, Inc. website is protected by copyright law.

Prenda Law, Inc. All rights reserved.



You may reproduce materials available at this site for your own personal use and for non-commercial distribution. All copies must include the above copyright notice. ATTORNEY ADVERTISING DISCLAIMER. The contents of this website should not be construed as legal advice on any specific fact or circumstance. Its content was prepared by Prenda Law Inc. (an Illinois law firm organized as a limited liability company with its principal office at 161 North Clark Street, Suite 3200, Chicago, Illinois 60601, Ph 1-800-380-0840) for general information purposes only. Your receipt of such information does not create an attorney-client relationship with Prenda Law Inc. or any of its lawyers. You should not act or rely on any of the information contained here without seeking professional legal advice. Prior results referred to in these materials do not guarantee or suggest a similar result in other matters. Prenda Law Inc.'s lawyers are licensed in Illinois and a limited number of other jurisdictions. They and the Firm cannot file actions in all states without associating locally licensed attorneys and/or becoming admitted in that jurisdiction for a limited purpose.
Prenda Law Inc. lawyer responsible for the contents of this website is Paul Duffy.

wefightpiracy.com/terms-of-service.php                                                Exhibit ___   3/3
                                                                                      Pg _3_ of _3_

11/28/12                                Steele | Hansmeier PLLC



# STEELE | HANSMEIER

- Home
- About Us
- Services
- Contact Us
- Disclaimer

- Steele | Hansmeier Jun 19, 2010 Steele | Hansmeier PLLC is a law firm dedicated to eradicating digital piracy. We represent prominent content producers and commence legal action against individuals and businesses who steal our client's content.



- Combating Piracy in the Digital Age Jun 19, 2010 Our practice includes addressing the unique legal issues posed by Internet-based piracy, where the vast majority of infringement occurs under the cover of IP addresses



- Preserving the Creative Arts Jun 19, 2010 We view our mission as preserving the creative arts for future generations. If left unchecked, digital piracy represents an existential threat to creative arts professionals around the world.

Exhibit  D
Pg  1  of  4

1/4

11/28/12                            Steele | Hansmeier PLLC



- Steele | Hansmeier 

- Combating Piracy in the Digital Age

- Preserving the Creative Arts 

Contact Us

# About Us

Steele | Hansmeier PLLC is a Chicago-based law firm that provides legal services to content producers and creative professionals. Our focus is pursuing individuals and businesses who infringe on the copyrights associated with our clients' creative works. Our practice includes addressing the unique legal issues posed by Internet-based piracy, where the vast majority of infringement occurs under the cover of Internet Protocol ("IP") addresses.

We view our mission as a small part of the overall effort to preserve the creative arts for future generations. In our view, the ease with which digital content is pirated represents an existential threat to the future of professional content producers. Our clients understand all too well the problems posed by the unauthorized redistribution of their copyrighted works, particularly given the capital investment associated with producing and marketing professional works.

# Services

The legal services offered by Steele | Hansmeier PLLC reflect the lifecycle of a creative work. Such services include:

- Due diligence efforts to determine whether a proposed creative work lacks originality or infringes on another creative work;
- Developing a plan for protecting and enforcing U.S. and international copyrights;
- Securing U.S. copyrights and coordinating with third parties to secure international copyrights in both Berne and non-Berne Convention countries; and
- Enforcing U.S. copyrights and coordinating with third parties to enforce international copyrights.

Many of our services involve coordinating with third party attorneys (e.g. international copyright work) and third party technology providers (e.g. copyright enforcement). Our consistent focus is to provide our clients with strong returns on the capital they invest in our time and that of our third party service providers.

top

# Due Diligence

Before investing substantial capital into the production and/or distribution of a creative work, a creative artist may wish to conduct a basic level of due

Exhibit D
Pg 2 of 4

11/28/12                                  Steele | Hansmeier PLLC

diligence into determining the degree to which their work resembles other copyrighted creative works. The methods for conducting this sort of due diligence vary based on the medium, through most forms of creative work lend themselves to digital due diligence. For example, an audio file can be digitally fingerprinted based on a variety of characteristics (e.g. rhythm, length, melody, etc.). This fingerprint can be compared to those of other audio files. Similar results would then be reviewed to determine whether a copyright issue exists. If such an issue exists, then the creative artist can attempt to obtain a license from the copyright holder of the original work. A creative artist's bargaining power is much stronger before they invest millions of dollar into marketing and distributing a creative work.

In 2008, Joe Satriani filed a copyright infringement lawsuit against the Grammy Award-winning band, Coldplay. Satriani's suit alleged that Coldplay's hit song, *Vida la Vida*, contained substantial portions of Satriani's, *If I Could Fly*. The parties eventually reached an out-of-court monetary settlement for an undisclosed financial sum.

In addition to avoiding infringement lawsuits, it is important to know whether a given creative work will even be afforded the protection of the copyright laws of the jurisdictions in which the artist intends to market the creative work. Steele | Hansmeier PLLC offers services to assist creative artists in conducting the forms of due diligence described in this section.

## Protection Planning

Another category of services offered by Steele | Hansmeier PLLC is assisting creative artists plan their copyright strategy in advance of the creation and/or publication of their creative works. Despite the existence of international treaties, such as the Berne Convention, the world as a whole essentially remains a patchwork of copyright laws with varying degrees of enforcement. By way of example, a creative artist's approach to copyright protection in the United States should look much different than the artists approach to copyright protection in China. We offer to assist creative artists in developing copyright protection strategies worldwide.

## Securing Copyrights

Once a creative work has been produced and/or published, it is generally important to register a copyright in every country where the copyright holder may wish to assert their rights. We offer to assist creative artists by coordinating the registration of their copyrights around the world, as required.

In the United States it is particularly important to register one's copyrights. As a general rule, copyright registration is a prerequisite to filing a copyright infringement lawsuit in U.S. federal court and a timely filing will preserve remedies that may be lost indefinitely if one does not timely register his or her copyright.

## Enforcing Copyrights

Copyright enforcement is a rapidly evolving field. Recent advances in communications technology have dramatically lowered the cost and increased the profitability of mass-piracy. As piracy evolves, so too must copyright enforcement strategies. Steele | Hansmeier PLLC offers services on the cutting edge of copyright enforcement, including: 1) DMCA enforcement services; 2) pirate pursuit services; and 3) advising on comprehensive paradigm shifts in copyright enforcement.

# Disclaimer

Our website is intended to provide only an overview of Steele | Hansmeier PLLC. Nothing on this website is meant to be or should be relied on as legal advice. Commentary on this website is not necessarily up to date. This website is not intended to be an offer to represent you, nor is it intended to establish an attorney client privilege.

## Links

-Berne Convention
-Copyright Office
-Copyright Overview
-Copyright Statutes
-Creative Commons

## Resources

-Patry Blog
-Geist Blog (Canadian law)
-IP Watch

## Pages

- About Us
- Contact Us
- Disclaimer
- Services


Exhibit D
Pg 3 of 4                                      3/4

11/28/12                                     Steele | Hansmeier PLLC

## Latest News

### Google fights piracy



According to an article published on Digital Trends, Google is taking steps to implement several anti-piracy measures, which will ideally make it more difficult for searchers to located pirated material. First, Google is increasing its responsiveness to takedown requests of so-called "reliable copyright holders." Second, its autocomplete function will filter out greater amounts of infringing results. [...]

### Pixar's president discusses copyright laws



According to a recently published article in the Salt Lake Tribune, Ed Catmull, president of Pixar Studios, linked international copyright protection to Pixar's ability to continue investing in the cutting-edge technology that's brought us such movies as Wall-E, Monster's, Inc., and Up – all of which are presumably registered trademarks of Pixar Animation Studios. At [...]

### Robin Hood is the week's most pirated movie



Ridley Scott's Robin Hood, starring Russell Crowe and Cate Blanchett, is not only popular in the theaters, but also among the BitTorrent crowd. According to BitTorrent news site, TorrentFreak, Robin Hood, despite its relatively lower IMDB rating, beat out both Iron Man 2 and the Expendables for the the top spot on the piracy chart [...]

© Copyright Steele | Hansmeier PLLC - Design by Kriesi.at - Wordpress Themes

- RSS
- Facebook
- Twitter
- flickr

top

Exhibit D
Pg 4 of 4        4/4

Case 2:11-mc-00084-JAM-DAD  Document 1  Filed 10/28/11  Page 1 of 8

1 | Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
2 | 38 Miller Avenue, #263
Mill Valley, CA 94941
3 | 415-325-5900
blgibbs@wefightpiracy.com
4
*Attorney for Petitioner*
5
6
7                IN THE UNITED STATES DISTRICT COURT FOR THE
8                       EASTERN DISTRICT OF CALIFORNIA
9
10 | In the Matter Of a Petition By                )
                                                  )
11 | INGENUITY13 LLC,                              )        **No.**
                                                  )
12 |                                               )        Judge:
                                                  )
13 |                                               )        **VERIFIED PETITION TO**
                                                  )        **PERPETUATE TESTIMONY**
14 |                                               )
                                                  )
15
16         1.      Petitioner Ingenuity13 LLC by and through its undersigned attorney, hereby
17 | petitions this Court for an order pursuant to Federal Rule of Civil Procedure 27 authorizing the
18 | issuance of subpoenas *duces tecum* to the Internet Service Providers ("ISPs") listed on Exhibit A to
19 | this petition.
20         2.      Petitioner is limited liability company organized and existing under the laws
21 | of the Federation of Saint Kitts and Nevis. Petitioner produces adult entertainment content and this
22 | content is being unlawfully reproduced and distributed over the Internet via the BitTorrent file
23 | transfer protocol. An individual or individuals wrongfully reproduced and distributed Petitioner's
24 | copyrighted works via the BitTorrent protocol in violation of Petitioner's exclusive rights under
25 | United States Copyright Act, 17 U.S.C. §§ 101, *et seq.* Petitioner anticipates bringing a civil action
26 | against the person or persons engaging in such unlawful activity. This action would be cognizable in
27 | a United States court as United States courts have exclusive jurisdiction over copyright actions.
28 | Without knowing the identity or identities of the anonymous infringers, Petitioner has no means to

Exhibit E
Pg 1 of 8

4:12-cv-14442-GAD-MKM   Doc # 23   Filed 01/17/13   Pg 33 of 99   Pg ID 1253
CASE 0:12-cv-02687-RHK-JJG   Document 11   Filed 11/29/12   Page 18 of 25

Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 2 of 8

name and serve the individual or individuals in an action with summons and complaint. The purpose of this petition is to ascertain these identity or identities.

3.      Petitioner seeks the name, address, telephone number, e-mail address and Media Control Access number of each account holder associated with the Internet Protocol ("IP") addresses listed on Exhibit B to this petition. Each of the IP addresses was identified by Petitioner's agents as being associated with infringing activity on the corresponding dates and times listed on Exhibit B. The reasons to perpetuate the testimony are multiple. First, without this information Petitioner has no means to name and serve a complaint on the infringing parties. Second, on information and belief, this information is destroyed in the regular course of business and will be unavailable to Petitioner after it is destroyed. An example of an ISP's data retention policy is shown as Exhibit C. Finally, under the Cable Communications Policy Act, 47 U.S.C. § 551(c)(2)(B), a court order is necessary to discover an account holder's identity.

4.      The names and addresses of the person or persons whom Petitioner expects to be adverse parties are unknown to Petitioner. The individual or individuals responsible for infringing Petitioner's works are known to Petitioner only by an IP address—a number that is assigned to devices, such as computers, that are connected to the Internet. Petitioner used geolocation to trace the IP addresses of the expected adverse party or parties to a point of origin within the State of California.

5.      The name and address of each responding party is set forth on Exhibit A to this petition. Petitioner is seeking the name, address, telephone number, e-mail address and Media Control Access number of each account holder associated with the Internet Protocol ("IP") addresses listed on Exhibit B to this petition.

### FACTUAL ALLEGATIONS

6.      Petitioner is the owner of the copyright for the motion picture set forth in Exhibit D to this petition.

7.      As set forth below, Petitioner has actionable claims for direct and contributory copyright infringement and a claim for civil conspiracy against the individual or individuals who

Exhibit _E_
Pg _2_ of _8_

4:12-cv-14442-GAD-MKM  Doc # 23  Filed 01/17/13  Pg 34 of 99  Pg ID 1254
CASE 0:12-cv-02687-RHK-JJG  Document 11  Filed 11/29/12  Page 19 of 25

Case 2:11-mc-00084-JAM-DAD  Document 1  Filed 10/28/11  Page 3 of 8

engaged in infringing activities via the IP addresses set forth on Exhibit B hereto based on the parties' use of the BitTorrent protocol to illegally reproduce and distribute Petitioner's work(s).

**A.  The Unknown Infringers used BitTorrent to Infringe Petitioner's Copyrights**

8.      BitTorrent is a modern file sharing method ("protocol") used for distributing data via the Internet. BitTorrent protocol is a decentralized method of distributing data. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data among themselves by exchanging pieces of the file with each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another.

9.      The BitTorrent protocol is an extremely popular method for transferring data. A group of individuals transferring data among one another (the "swarm") will commonly include peers from many, if not every, state in the United States and several countries around the world. And every peer in the swarm participates in distributing the file to dozens, hundreds, or even thousands of other peers.

10.     The BitTorrent protocol is also an extremely popular method for unlawfully copying, reproducing, and distributing files in violation of the copyright laws of the United States. A broad range of copyrighted albums, audiovisual files, photographs, software, and other forms of media are available for illegal reproduction and distribution via the BitTorrent protocol.

11.     Efforts at combating BitTorrent-based copyright infringement have been stymied by BitTorrent's decentralized nature. Because there are no central servers to enjoin from unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy efforts. Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and efficient means of transferring enormous quantities of data also acts to insulate it from anti-piracy measures.

12.     The infringing parties in this action were all observed using the BitTorrent protocol to unlawfully reproduce and distribute Plaintiff's copyrighted work by exchanging pieces with one another either directly or via a chain of data distribution.

Exhibit E
Pg 3 of 8

4:12-cv-14442-GAD-MKM   Doc # 23   Filed 01/17/13   Pg 35 of 99   Pg ID 1255
CASE 0:12-cv-02687-RHK-JJG   Document 11   Filed 11/29/12   Page 20 of 25

Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 4 of 8

**B. Each infringer installed a BitTorrent Client on his or her computer**

13.   The individual or individuals associated with the infringing activity installed a BitTorrent Client onto his or her computer(s). Normal commercial computers do not come pre-loaded with BitTorrent software. Each infringer must have separately installed on their respective computers special software that allows peer-to-peer sharing of files by way of the Internet. The infringers use software known as BitTorrent clients. Among the most popular BitTorrent clients are Vuze (formerly Azureus), μTorrent, Transmission and BitTorrent 7, although many others are used as well.

14.   Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

**C. The Initial Seed, Torrent and Tracker**

15.   A BitTorrent user who wants to upload a new file, known as an "Initial Seeder," starts by creating a "torrent" descriptor file using the client he or she installed onto his or her computer. The Client takes the target computer file, the "initial seed," in this case, one of the copyrighted Works, and divides it into identically sized groups of bits known as "pieces." The Client then gives each one of the computer file's pieces, in this case, pieces of one of the copyrighted works, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

16.   When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test whether the piece is free of errors. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and ensure that the piece is authentic and uncorrupted.

17.   Torrents files also have an "announce" section, which specifies the Uniform Resource Locator ("URL") of a "tracker" and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by the Client on peer computers to verify the integrity of the data they receive. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides

4

VERIFIED PETION TO PERPETUATE TESTIMONY

**Exhibit E**
**Pg 4 of 8**

4:12-cv-14442-GAD-MKM   Doc # 23   Filed 01/17/13   Pg 36 of 99   Pg ID 1256
CASE 0:12-cv-02687-RHK-JJG   Document 11   Filed 11/29/12   Page 21 of 25

Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 5 of 8

peers with the URL address(es). The tracker computer or computers direct a peer user's computer to another peer user's computer that have particular pieces of the file, in this case, one of the copyright Works on them, and facilitates the exchange of data among the computers. Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking).

**D. Torrent Sites**

18.   "Torrent Sites" are websites that index torrent files that are currently being made available for copying and distribution by the people using the BitTorrent protocol. There are numerous torrent websites, such as www.torrentz.eu or thepiratebay.org.

19.   Upon information and belief, each infringer went to a torrent site to upload and download one of the Petitioner's copyrighted Works.

**E. Uploading and Downloading a Work Through a BitTorrent Swarm**

20.   Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here, one of the copyright Works) using the BitTorrent Client that the peers installed on their computers.

21.   The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here, one of the copyrighted Works, to the peers who are seeking to download the computer file. Once a peer receives a piece of the computer file, it starts transmitting that piece to other peers. In this way, all of the peers and seeders are working together in what is called a "swarm."

22.   Here, each infringing peer member participated in a swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

23.   In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds of piece saved in the form of a computer file, like the Works here, upload the torrent file onto a torrent site, and deliver a different piece of the computer

VERIFIED PETION TO PERPETUATE TESTIMONY

Exhibit $E$
Pg $5$ of $8$

4:12-cv-14442-GAD-MKM   Doc # 23   Filed 01/17/13   Pg 37 of 99   Pg ID 1257
CASE 0:12-cv-02687-RHK-JJG   Document 11   Filed 11/29/12   Page 22 of 25

Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 6 of 8

1 file to each of the peers. The receiving peers then automatically begin delivering the piece they just
2 received to the other peers in the same swarm.

3        24.      Once a peer, here an infringer, has downloaded the full file, the BitTorrent
4 Client reassembles the piece and the peer is able to view the video. Also, once a peer has
5 downloaded a full file, that peer becomes known as "an additional seed" because it continues to
6 distribute the torrent file which, in this case, was one of the copyrighted Works.

7    **F.   Petitioner's Computer Investigators Identified Each Infringer's IP Address as an
          Infringer of Petitioner's Copyright Works**
8

9        25.      Petitioner retained 6881 Forensics, LLC ("6881") to identify the IP addresses
10 used by the individual or individuals that were misusing the BitTorrent protocol to unlawfully
11 distribute Petitioner's copyrighted Work.

12       26.      6881 used forensic software, "BitTorrent Auditor" to audit a swarm for the
13 presence of infringing transactions.

14       27.      6881 extracted the resulting data gathered from the investigation, reviewed the
15 evidence logs, and isolated the transactions and the IP addresses associated with the copyrighted
16 work listed on Exhibit D hereto.

17       28.      The IP addresses and hit dates contained on Exhibits B accurately reflects
18 what is contained in the evidence logs and show that:

19              (A)     Each infringer copied a piece of one of Petitioners copyrighted work;
20                      and

21              (B)     Each infringer was part of a BitTorrent swarm.

22       29.      6881's technician analyzed each BitTorrent "piece" distributed by the IP
23 addresses listed on Exhibit B and verified that each piece consisted of part of the copyrighted work.

24       30.      In order for petitioner to be able to take appropriate action to protect its
25 copyrighted work under 17 U.S.C. §§ 101, *et seq*, petitioner must be authorized issuance of
26 subpoenas *duces tecum* to the ISPs listed on Exhibit A to this petition.

27       31.      No prior application has been made for the relief sought herein.

28

6

VERIFIED PETION TO PERPETUATE TESTIMONY

**Exhibit** E
**Pg** 6 **of** 8

Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 7 of 8

1    WHEREFORE, petitioner requests that an order be made and entered directing that petitioner

2   may compel the production of documents to the extent of determining the name, current (and

3   permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses of

4   the person or persons whose IP addresses are listed in Exhibit B from the ISPs listed on Exhibit A

5   for the purposes of determining the true identity of unknown infringers.   To further support its

6   Petition, Petitioner attaches as Exhibit F its Memorandum of Law in Support of Petitioner's Verified

7   Petition to Perpetuate Testimony.

8

9

10   Respectfully Submitted,

11                                         Ingenuity13 LLC,

12   **DATED: October 28, 2011**

13                          By:          /s/  Brett L. Gibbs, Esq.

14                                 Brett L. Gibbs, Esq. (SBN 251000)
15                                 Steele Hansmeier PLLC.
                                   38 Miller Avenue, #263
16                                 Mill Valley, CA 94941
                                   415-325-5900
17                                 blgibbs@wefightpiracy.com
                                   *Attorney for Plaintiff*
18

19

20

21

22

23

24

25

26

27

28
                                              7
                          VERIFIED PETION TO PERPETUATE TESTIMONY

Exhibit _E_
Pg _7_ of _8_

# NOTARIZED VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in this Verified Petition is, to the best of my knowledge, true and correct.

**DATED: October 28, 2011**                    _____/S/  Alan Cooper_____
                                               Alan Cooper, Manager of Ingenuity 13 LLC

I, Brett L. Gibbs, Esq., hereby confirm per Eastern District of California Local Rule 131(f) that counsel for Plaintiff has a signed original notarized version of the above Verified Petition.

**DATED: October 28, 2011**

                    By:    _____/s/  Brett L. Gibbs, Esq._____

                           Brett L. Gibbs, Esq. (SBN 251000)
                           Steele Hansmeier PLLC.
                           38 Miller Avenue, #263
                           Mill Valley, CA 94941
                           415-325-5900
                           blgibbs@wefightpiracy.com
                           *Attorney for Plaintiff*

VERIFIED PETION TO PERPETUATE TESTIMONY


Exhibit E
Pg 8 of 8

Skip to Main Content Logout My Account Search Menu New Civil Search Refine Search  Back          Location . All MNCIS Sites - Case Search   Help

### REGISTER OF ACTIONS
#### CASE NO. 27-CV-12-17079

| | |
|---|---|
| Guava LLC vs CenturyLink Inc | Case Type: **Civil Other/Misc.**<br>Date Filed: **08/10/2012**<br>Location: **- Hennepin Civil**<br>Judicial Officer: **Steenson DuFresne, Mary E.** |

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| **Defendant** | **CenturyLink Inc** | **DAVID EARLE CAMAROTTO**<br>*Retained*<br>612-333-3000(W) |
| **Plaintiff** | **Guava LLC** | **MICHAEL KEVIN DUGAS**<br>*Retained*<br>312-880-9160(W) |

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 08/10/2012 | **Motion** |
| 08/20/2012 | **Notice of Case Assignment** (Judicial Officer: Steenson DuFresne, Mary E. ) |
| 09/24/2012 | **Proposed Document** |
| 09/24/2012 | **Certificate of Representation** |
| 09/24/2012 | **Memorandum** |
| 09/24/2012 | **Affidavit-Other** |
| 09/24/2012 | **Affidavit of Service** |
| 09/27/2012 | **Notice of Appearance** |
| 09/27/2012 | **Notice of Appearance** |
| 09/27/2012 | **Motion** |
| 09/27/2012 | **Responsive Motion** |
| 09/28/2012 | **Order-Other** |
| 09/28/2012 | **Notice of Appearance** |
| 10/01/2012 | **Motion Hearing**  (9:15 AM) (Judicial Officer Steenson DuFresne, Mary E.)<br>Result: Held |
| 10/01/2012 | **Taken Under Advisement** (Judicial Officer: Steenson DuFresne, Mary E. ) |
| 10/12/2012 | **Correspondence** |
| 10/15/2012 | **Correspondence** |
| 10/29/2012 | **Telephone Motion Hearing**  (9:30 AM) (Judicial Officer Steenson DuFresne, Mary E.)<br>Result: Held |
| 10/29/2012 | **Order Granting Motion** (Judicial Officer: Steenson DuFresne, Mary E. ) |

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| | **Defendant CenturyLink Inc**<br>Total Financial Assessment<br>Total Payments and Credits<br>Balance Due as of 11/29/2012 | | 422.00<br>422.00<br>0.00 |
| 09/25/2012 | Transaction Assessment | | 322.00 |
| 09/25/2012 | E-File Electronic Payment   Receipt # EP27C-2012-12417 | CenturyLink Inc | (322.00) |
| 09/25/2012 | Transaction Assessment | | 100.00 |
| 09/25/2012 | E-File Electronic Payment   Receipt # EP27C-2012-12420 | CenturyLink Inc | (100.00) |
| | **Plaintiff Guava LLC**<br>Total Financial Assessment<br>Total Payments and Credits<br>Balance Due as of 11/29/2012 | | 622.00<br>622.00<br>0.00 |
| 08/20/2012 | Transaction Assessment | | 422.00 |
| 08/21/2012 | Mail Payment   Receipt # 1227-2012-19301 | Prenda Law Inc | (422.00) |
| 09/27/2012 | Transaction Assessment | | 100.00 |
| 09/27/2012 | E-File Electronic Payment   Receipt # EP27C-2012-12743 | Guava LLC | (100.00) |
| 09/28/2012 | Transaction Assessment | | 100.00 |
| 09/28/2012 | E-File Electronic Payment   Receipt # EP27C-2012-12816 | Guava LLC | (100.00) |



Exhibit E

Pg 1 of 1

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

IN RE: BITTORRENT ADULT FILM                    **ORDER &**
COPYRIGHT INFRINGEMENT CASES          **REPORT & RECOMMENDATION**
    Civil Action Nos.
    11-3995(DRH)(GRB);
    12-1147(JS)(GRB);
    12-1150(LDW)(GRB); and
    12-1154(ADS)(GRB)

-----------------------------------------------------------------X

**APPEARANCES:**
**K-Beech, Inc. v. John Does 1-37, CV 11-3995 (DRH)(GRB):**
    For Plaintiff
    Frederic R. Abramson, Esq.
    160 Broadway, Suite 5000
    New York, New York   10038

    For Defendant John Doe #2
    Joseph P. Augustine, Esq.
    Augustine & Eberle LLP
    90 Broad Street, Floor 25
    New York, New York   10004

    For Defendant John Doe #29
    James Rosenzweig, Esq.
    560 Fifth Avenue, 3rd Ave.
    New York, New York   10036

    For Defendant John Doe #35
    James D. Murtha, Esq.
    26 Railroad Ave. #351
    Babylon, New York   11702

**Malibu Media, LLC v. John Does 1-26, CV 12-1147 (JS) (GRB),**
**Malibu Media, LLC v. John Does 1-11, CV 12-1150 (LDW) (GRB),**
**Patrick Collins, Inc. v. John Does 1-9, CV 12-1154 (ADS) (GRB):**
    For Plaintiffs
    Jason Aaron Kotzker
    Kotzker Law Group
    9609 S. University Blvd. #632134
    Highlands Ranch, Colorado   80163

1

**GARY R. BROWN, United States Magistrate Judge:**

These actions are part of a nationwide blizzard of civil actions brought by purveyors of pornographic films alleging copyright infringement by individuals utilizing a computer protocol known as BitTorrent.   The putative defendants are identified only by Internet Protocol ("IP") addresses.    These four civil actions involve more than 80 John Doe defendants; these same plaintiffs have filed another nineteen cases in this district involving more than thrice that number of defendants.[1]   One media outlet reports that more than 220,000 individuals have been sued since mid-2010 in mass BitTorrent lawsuits, many of them based upon alleged downloading of pornographic works.[2]

This Order addresses (1) applications by plaintiffs in three of these actions for immediate discovery, consisting of Rule 45 subpoenas directed at non-party Internet Service Providers ("ISPs") to obtain identifying information about subscribers to the named IP addresses and (2) motions to quash similar subpoenas by several putative John Doe defendants in the remaining action.   For the reasons that follow, including evidence of abusive litigation tactics by plaintiffs, the plaintiffs' applications for service of subpoenas are granted only as to John Doe 1 in each case under terms and conditions set forth herein, and denied in all other respects.   The motions to quash are granted because the work in that action is not subject of a copyright registration.

Furthermore, it is respectfully recommended to the respective district judges that (1) as to

---

[1] *See Patrick Collins, Inc. v. Does 1-7*, CV 11-1270 (JG) (RER) (80 defendants in consolidated case); *K-Beech, Inc. v. Does 1-29*, CV 11-3331 (JFB) (ETB); *K-Beech, Inc. v. Does 1-37*, CV 11-3741 (LDW) (AKT); *K-Beech, Inc. v. Does 1-52*, CV 11-3994 (JFB) (ETB); *Patrick Collins, Inc. & K-Beech, Inc. v. Doe*, CV 11-4094 (JFB) (GRB); *Malibu Media, LLC v. Does 1-10*, CV 12-1146 (JS) (ETB); *Malibu Media, LLC v. Does 1-20*, CV 12-1148 (ADS) (AKT); *Malibu Media, LLC v. Does 1-30*, CV 12-1149 (LDW) (AKT); *Patrick Collins, Inc. v. Does 1-11*, CV 12-1153 (JFB) (ARL); *Malibu Media, LLC v. Does 1-13*, CV 12-1156 (JFB) (ETB).

[2] *See* http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk.

2

three of the actions, the matters be dismissed without prejudice as to all defendants other than John Doe 1; (2) that the fourth action be dismissed without prejudice; and (3) that these plaintiffs and their counsel be directed that all future actions be filed only against a single defendant.

## BACKGROUND

### 1. Allegations in the Complaints

The four complaints that are subject to this Order are nearly identical, though each involves a different pornographic film, to wit: *Gang Bang Virgins, Veronica Wet Orgasm, Maryjane Young Love* and *Gangbanged. See K-Beech, Inc. v. Does 1-37*, CV 11-3995 (DRH)(GRB) (hereinafter "*K-Beech*"); *Malibu Media LLC v. Does 1-26*, CV 12-1147(JS)(GRB) (hereinafter "*Malibu 26*"); *Malibu Media LLC v. Does 1-11*, CV 12-1150 (LDW)(GRB) (hereinafter "*Malibu 11*"); and *Patrick Collins, Inc. v. Does 1-9*, CV 12-1154 (ADS)(GRB) (hereinafter "*Patrick Collins*"). In three of the cases, plaintiff claims to be the owner of a copyright registered for the work in question. *See, e.g., Malibu 26,* Complaint at ¶¶11-13, Docket Entry ("DE") [1]. In *K-Beech,* plaintiff claims only that an application for copyright has been submitted as to its work *Gang Bang Virgins. K-Beech,* Am. Compl. at ¶¶11-12, DE [18]. Each defendant is identified only by an IP address purportedly corresponding to a physical address in this district, defined in the complaint as "a number that is assigned by an ISP to devices, such as computers, that are connected to the Internet." *Malibu 26,* Compl. at ¶8. The Complaints further allege that "[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." *Id.* at ¶9.

The complaints describe, in some detail, a peer-to-peer filing sharing protocol known as BitTorrent which is a means by which devices connected to the Internet can share large computer files (such as digital copies of movies) while minimizing the strain on computer networks. *See,*

3

*e.g., Malibu 26,* Compl. at ¶¶14-15.   BitTorrent works by breaking files into many smaller files "to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), [and] allows users to join a 'swarm' of host computers to download and upload from each other simultaneously (one computer connected to numerous computers)."   *Id.* at ¶15.   BitTorrent also uses a "tracker" computer that tracks the pieces of the files as those pieces are shared among various computers.   This tracking feature the plaintiffs to identify the IP addresses from which the films were downloaded, the subscribers to which have become the defendants in these actions.   *Id.* ¶¶24-26.

### 2.  Plaintiffs' Motions for Early Discovery

Plaintiffs in *Malibu 26, Malibu 11, and Patrick Collins* have filed motions for leave to file non-party subpoenas prior to a Rule 26(f) conference, seeking to serve subpoenas upon the ISPs to identify the subscribers to the subject IP addresses.   Specifically, these subpoenas seek the "true name, address, telephone number, e-mail address and Media Access Control ("MAC") address of the Defendant to whom the ISP issued an IP address."   *See, e.g., Malibu 26,* Proposed Order, DE [3-2].

### 3.  Motions to Quash

By order dated September 16, 2011, the Honorable A. Kathleen Tomlinson granted a nearly identical motion for early discovery in *K-Beech.*   *See K-Beech,* Order of 9/16/11, DE [6]. However, to protect the rights of all parties, Magistrate Judge Tomlinson established a procedure by which both the ISPs and the John Does were afforded an opportunity to move to quash before the information was provided to K-Beech.   The procedure Magistrate Tomlinson implemented elicited information that not only permits reasoned review of the motions to quash, but also provides insight into the pending motions for early discovery.

4

A total of six putative John Doe defendants moved to quash, *see K-Beech,* Motions, DE [7],

[13], [14], [16], [17], & [34], while a seventh had counsel appear without filing a motion.   Several

motions include fact based arguments which are highly individual to each moving party, as well as

legal arguments.    One argument common to all of these motions arises from the fact that,

according to the allegations, K-Beech does not have a registered copyright to *Gang Bang Virgins,*

but premises its action on a copyright application.   K-Beech has amended its complaint to include

trademark allegations, but, notably, has not alleged the receipt of a copyright registration.   As

detailed below, the registration argument is a sufficient basis to grant the motions to quash, though

not the sole basis.

### 4.   Additional Facts

#### a.   Factual Defenses Raised by the Moving John Doe Defendants

The factual defenses presented are vastly different and highly individualized.   One

movant – John Doe #16 – has stated that he was at work at the time of the alleged download.   John

Doe #2 states under oath that he closed the subject Earthlink account, which had been

compromised by a hacker, before the alleged download.   *K-Beech,* Decl. of John Doe #2, ¶5, DE

[34-1].   John Doe #29's counsel represents that his client is an octogenarian with neither the

wherewithal nor the interest in using BitTorrent to download *Gang Bang Virgins*.   DE [13].

John Doe #10 represents that downloading a copy of this film is contrary to her "religious, moral,

ethical and personal views." Mtn ¶5, DE [7].   Equally important, she notes that her wireless router

was not secured and she lives near a municipal parking lot, thus providing access to countless

neighbors and passersby.[3]    *Id.* at ¶4

---

[3] While Plaintiffs claim that they can amend their complaints to allege negligence against the owner of a WiFi router
who failed to password-protect the device which was then used by an intruder to infringe its copyright, *see* K-Beech

### b. The Use of IP Address to Identify the Alleged Infringers

The complaints assert that the defendants – identified only by IP address – were the individuals who downloaded the subject "work" and participated in the BitTorrent swarm. However, the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time.   An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones.   As one introductory guide states:

> If you only connect one computer to the Internet, that computer can use the address from your ISP.   Many homes today, though, use routers to share a single Internet connection between multiple computers.   Wireless routers have become especially popular in recent years, avoiding the need to run network cables between rooms.   If you use a router to share an Internet connection, the router gets the IP address issued directly from the ISP. Then, it creates and manages a subnet for all the computers connected to that router.[4]

Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function – here the purported illegal downloading of a single pornographic film – than to say an individual who pays the telephone bill made a specific telephone call.

Indeed, due to the increasingly popularity of wireless routers, it much less likely.   While a decade ago, home wireless networks were nearly non-existent, 61% of US homes now have wireless access.[5]   Several of the ISPs at issue in this case provide a complimentary wireless router as part of Internet service.   As a result, a single IP address usually supports multiple computer

---

Mem. in Opp. at 24, DE [10], this assertion flies in the face of common sense.

4 See "What is an IP address?" available at http://computer.howstuffworks.com/internet/basics/question5492.htm.

5 Lardinois, F,. "Study: 61% of US Households Now Have WiFi," available at http://techcrunch.com, 4/5/12.

6

devices – which unlike traditional telephones can be operated simultaneously by different

individuals.   *See U.S. v. Latham*, 2007 WL 4563459, at *4 (D.Nev. Dec. 18, 2007).   Different

family members, or even visitors, could have performed the alleged downloads.   Unless the

wireless router has been appropriately secured (and in some cases, even if it has been secured),

neighbors or passersby could access the Internet using the IP address assigned to a particular

subscriber and download the plaintiff's film.   As one court noted:

> In order to allow multiple computers to access the internet under the
> same IP address, the cable modem may be connected to a router, or
> may itself function as a router, which serves as a gateway through
> which multiple computers could access the internet at the same time
> under the same IP address. The router could be a wireless device in
> which case, computers located within 300 feet of the wireless router
> signal could access the internet through the router and modem under
> the same IP address. The wireless router signal strength could be
> increased beyond 600 feet if additional devices are added. The only
> way to prevent sharing of the wireless router is to encrypt the signal
> and even then an individual can bypass this security using publicly
> available software.

*Id.* at *4.   Some of these IP addresses could belong to businesses or entities which provide access

to its employees, customers and sometimes (such as is common in libraries or coffee shops)

members of the public.

   These developments cast doubt on plaintiffs' assertions that "[t]he ISP to which each

Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity."

*see, e.g., Malibu 26,* Compl. at ¶9, or that the subscribers to the IP addresses listed were actually

the individuals who carried out the complained of acts.   As one judge observed:

> The Court is concerned about the possibility that many of the names
> and addresses produced in response to Plaintiff's discovery request
> will not in fact be those of the individuals who downloaded "My
> Little Panties # 2." The risk is not purely speculative; **Plaintiff's
> counsel estimated that 30% of the names turned over by ISPs
> are not those of individuals who actually downloaded or shared**

> **copyrighted material.** Counsel stated that the true offender is
> often the "teenaged son ... or the boyfriend if it's a lady."
> Alternatively, the perpetrator might turn out to be a neighbor in an
> apartment building that uses shared IP addresses or a dormitory that
> uses shared wireless networks.   This risk of false positives gives
> rise to the potential for coercing unjust settlements from innocent
> defendants such as individuals who want to avoid the
> embarrassment of having their names publicly associated with
> allegations of illegally downloading "My Little Panties # 2."

*Digital Sin, Inc. v. Does 1-176*, -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012)

(citations omitted and emphasis added).   Another court noted:

> the ISP subscriber to whom a certain IP address was assigned may
> not be the same person who used the Internet connection for illicit
> purposes . . . By defining Doe Defendants as ISP subscribers who
> were assigned certain IP addresses, instead of the actual Internet
> users who allegedly engaged in infringing activity, Plaintiff's
> sought-after discovery has the potential to draw numerous innocent
> internet users into the litigation, placing a burden upon them that
> weighs against allowing the discovery as designed.

*SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620, at *3 (N.D.Cal. Nov. 30, 2011) (citations

omitted).

In sum, although the complaints state that IP addresses are assigned to "devices" and thus

by discovering the individual associated with that IP address will reveal "defendants' true

identity," this is unlikely to be the case.   Most, if not all, of the IP addresses will actually reflect a

wireless router or other networking device, meaning that while the ISPs will provide the name of

its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an

employee, invitee, neighbor or interloper.

### c.  Indicia of Unfair Litigation Tactics

One moving defendant has provided concrete evidence of improper litigation tactics

employed by K-Beech.   In a sworn declaration, John Doe #16 states the following:

Case 2:11-cv-03995-DRH-GRB   Document 39   Filed 05/01/12   Page 9 of 26 PageID #: 627

> Upon receipt of the Complaint, I reached out to Plaintiff and spoke to a self-described "Negotiator" in an effort to see if I could prove to them (without the need for publicly tying my name to the Complaint) that I had nothing to do with the alleged copyright infringements. **The Negotiator was offered unfettered access to my computer, my employment records, and any other discovery they may need to show that I was not the culpable party.** Instead, the Negotiator refused and was only willing to settle the Complaint for thousands of dollars. While the Negotiator said on October 24, 2011 that he would check to see if he could come down from the thousands of dollar settlement amount, the Negotiator has not responded to two voice mails that were left on October 25, 2011. Notably, the Negotiator justified the settlement amount because, in part, I would incur legal fees in hiring an attorney.

*K-Beech*, Decl. of John Doe #16, at 11-12 , DE [16] (emphasis added).   Significantly, since

plaintiff has not yet been provided with the identities of the moving John Does, this record exists

only because John Doe #16 proactively contacted counsel for K-Beech (who is also representing

Patrick Collins, Inc. in another matter), rather than await a determination by the Court.   John Doe

#16's experience directly mirrors that of defendants in a separate action by plaintiff K-Beech

regarding *Gang Bang Virgins*, as well as another action filed by Patrick Collins, Inc. relating to a

film entitled *Cuties*.   *See K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581, at *6

(E.D.Va. Oct. 5, 2011) ("Some defendants have indicated that the plaintiff has contacted them

directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation")

and *Patrick Collins, Inc. v. Does 1-58,* 2011 U.S. Dist. LEXIS 120235, at *6 (E.D.Va. Oct. 5,

2011) (same); *cf. Raw Films, Ltd. v. Does 1-32*, 2011 WL 6182025, at *2 (E.D.Va. Oct. 5,

2011)(same).[6]

   Remarkably, plaintiff's opposition to John Doe #16's motion, encompassing 62 pages of

---

[6] In these cases, counsel for K-Beech and Patrick Collins, Inc. was directed to show cause why Rule 11 sanctions should not be imposed for this conduct, but ultimately sanctions were not imposed.

material,[7] does not provide any evidentiary response to these sworn assertions of improper conduct.   Rather, counsel attempts to dismiss this evidence as "mere denials", and unabashedly argues that "[d]efendant's] assertion that the negotiations between him and Plaintiff have ended further supports the need for litigation."   Pl's. Mem. In Opp. at 24, DE [22].   Moreover, K-Beech has filed "Notices of Settlement and Voluntary Dismissal" as to three of the John Does in this action.   *See* DE [30], [31] and [38].   "This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does."   *Raw Films,* 2011 WL 6182025, at *2.

In a similar case by plaintiff Patrick Collins filed in this district, after being granted discovery of the IP subscribers, counsel for that entity described in motion papers the intended approach to the John Doe defendants:

> Plaintiff requested and was granted additional time within which to effectuate service upon the Doe Defendants to accommodate Plaintiff's need for obtaining their identifying information, as well as its further settlement and litigation strategy. The latter involves Plaintiff contacting Doe Defendants once their identities are known and attempting to reach a settlement with them.   In cases where a settlement cannot be reached, Plaintiff would then consider the feasibility of filing suit, and proceed with service upon those Doe Defendants against whom it chooses to proceed.

---

[7] Plaintiff K-Beech's rambling motion papers often lapse into the farcical.   In its papers, counsel for K-Beech equate its difficulties with alleged piracy of its adult films with those faced by the producers of the Harry Potter books, Beatles songs and Microsoft software, and compare its efforts to collect from alleged infringers of its rights to the efforts of the FBI to combat child pornography.   Mem. in Opp. at 4, 10, DE [22].   In an ironic turn, the purveyors of such works as *Gang Bang Virgins*, explain how its efforts in this matter will help empower parents to prevent minors from watching "movies that are not age appropriate" by ensuring that viewers must pay for plaintiffs products, and thereby effectively notify parents of such activity because "many parents would surely notice if they showed up on billing statements."   *Id.* at 7-8.   It is difficult to accord the plaintiff, which features "Teen" pornography on its website, the moral high-ground in this regard.

*Patrick Collins, Inc. v. Does 1-7,* CV 11-1270 (JG)(RER), Mtn, DE [22], at ¶ 6.    On a cold record, this overview could be viewed as a reasoned approach.    However, when viewed against undisputed experience of John Doe #16, described above, and findings by other courts, this suggests an approach that is highly inappropriate.

## DISCUSSION

**The Legal Standard**

Federal Rule of Civil Procedure 26(d)(1) forbids a party from seeking discovery "from any source before the parties have conferred as required by Rule 26(f) except as "authorized ... by court order."  Fed. R. Civ. P. 26(d) (1).    This is generally viewed as requiring a showing of good cause.  *See, e.g., Ayyash v. Bank Al–Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005).    Plaintiffs rely principally upon the five factor *Sony Music* test, adopted by the Second Circuit, which requires the Court to weigh:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, ... (2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... (4) [the] need for the subpoenaed information to advance the claim, ... and (5) the [objecting] party's expectation of privacy.

*Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) (*citing Sony Music Entm't Inc. v. Does 1–40,* 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004)).    This test, articulated in the context of evaluating a motion to quash, frames the inquiry in evaluating defendants' motions in *K-Beech.* Additionally, plaintiffs correctly note that the test is also instructive in evaluating the motions for early discovery.

**Element 1: Prima Facie Claim of Actionable Harm**

Plaintiffs Malibu and Patrick Collins have set forth *prima facie* claims of actionable harm

11

---

by alleging ownership of registered, copyrighted works that have been infringed.[8]

The situation with K-Beech is far different.   K-Beech does not allege that it has a copyright registration; rather, it bases its complaint on a copyright application.   In another case in this district,   *K-Beech v. Does 1-29*, CV 11-3331, Magistrate Judge Boyle denied K-Beech the precise relief sought in the instant application based on a failure to allege that its copyright in the work in that case – *Virgins 4* – had been registered.   Judge Boyle found:

> Section 411(a) of the Copyright Act "requires copyright holders to register their works before suing for copyright infringement." *Reed Elsevier, Inc. v. Muchnick*, — U.S. —, 130 S. Ct. 1237, 1241, 176 L. Ed. 2d 18 (2010) (citing 17 U.S.C.A. § 411(a)). While failure to register a work does not deprive a federal court of jurisdiction over an action for infringement, valid registration is an element of an infringement claim. Although the Second Circuit has not addressed this specific question, courts in both the Eastern District of New York and the Southern District of New York have held that submission of an application for copyright registration does not satisfy the registration precondition of § 411(a).

Order of 9/19/11 at 2-3 (additional quotations and citations omitted), DE [10].   Judge Boyle denied the requested discovery, and K-Beech voluntarily dismissed the case. *See* DE [12].   I agree with Judge Boyle and find that K-Beech has not met its burden on this factor.

K-Beech attempted to remedy this deficiency by adding conclusory trademark claims to its amended complaint.   The complaint fails to explain in what ways the illegal downloading and uploading alleged could possibly cause confusion among consumers, or "hamper efforts by

---

[8] For the purposes of this analysis, it is assumed that plaintiffs' works are entitled to copyright protection, though that may be an open question.  *See Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 447 n.2 (D.Mass. 2011) (it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement").

Plaintiff to protect its reputation" with "the purchasing public in New York."[9] Am. Compl.

¶¶64-67, DE [18].     K-Beech's citation to *dicta* in the Supreme Court's decision in *Dastar* is

unavailing, as that case's holding undercuts plaintiff's attempt to extend trademark protection to

these facts.    *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) ("in

construing the Lanham Act, we have been careful to caution against misuse or over-extension of

trademark and related protections into areas traditionally occupied by copyright" (citation

omitted)).   Even viewed in the most favorable light, the trademark allegations fail to state a claim.

**Elements 2: The Specificity of the Discovery Requests**

With respect to the specificity of discovery requests, the *Sony Music* court explained that

this factor requires that "Plaintiffs' discovery request is also sufficiently specific to establish a

reasonable likelihood that the discovery request would lead to identifying information that would

make possible service upon particular defendants who could be sued in federal court." *Sony*

*Music*, 326 F. Supp. 2d at 566.   While the discovery propounded by plaintiffs is specific, for the

reasons discussed above, it does not establish a reasonable likelihood it will lead to the identity of

defendants who could be sued. *See Pacific Century Int'l Ltd. v. Does*, 2011 WL 5117424, at *2

(N.D.Cal. Oct. 27, 2011) ("Plaintiff must go beyond the 'limited discovery' that it earlier asserted

would lead to Defendants' identities . . . [p]resumably, every desktop, laptop, smartphone, and

tablet in the subscriber's residence, and perhaps any residence of any neighbor, houseguest or other

---

[9] As K-Beech put its reputation into issue, it is worth noting that the owner of K-Beech Inc. (and the apparent inspiration for the K-Beech mark) is Kevin Beechum.  *See* "Porn studios raided to ensure adult-only casts," 1/12/07, *LA Times* at 1.   It appears that this is the same Kevin Beechum who testified in federal prosecutions about his experience vandalizing retail adult video stores to help extort protection payments from their owners.  *See U.S. v. Feinberg,* 89 F.3d 333, 335 (7th Cir. 1996); *U.S. v. Sturman,* 49 F.3d 1275, 1278 (7th Cir. 1995).  In those cases, Beechum described how he hired associates to use hammers and baseball bats to inflict $10,000 in damage on a Phoenix adult shop, and negotiated over a "few more jobs" in Cleveland.    Other evidence established that, following Beechum's introduction, these same associates, on behalf of the extortionists, planned to plant remote control bombs at eight stores in Chicago in furtherance of the scheme, but that plan failed when, after successfully attacking one store, a bomb accidentally went off, killing one of the coconspirators.

sharing his internet access, would be fair game.   Beyond such an inspection, [the plaintiff] might require still more discovery, including interrogatories, document requests and even depositions." (citations omitted; alterations in original)).

In this regard, the instant matter is factually distinguishable from the *Arista Records* decision.   In that case, the sought after discovery involved an Internet service provider located at a university.   Based on that setting, and at that time, it was almost certain that the end user at an IP address was a particular individual, rather than a wireless network.   The instant case involves broadband Internet service in a largely residential suburban area at a time when wireless is widely available.   Furthermore, it is alleged that each John Doe in the instant case downloaded only a single pornographic film.   By contrast, in *Arista Records*, the plaintiff alleged that a file sharing folder located at the IP address in question contained 236 audio files, containing at least a half-dozen copyrighted songs owned by the plaintiff.   *Arista Records,* 604 F.3d at 122.   In fact, in that case, plaintiffs' investigator was able to "download[] music files from the user's computer," which is not the case here.   *Arista Records LLC v. Does 1-16,* 2009 WL 414060, at *1 (N.D.N.Y. Feb. 18, 2009) *aff'd* 604 F.3d 110 (2d Cir. 2010).   Clearly, the level of activity in *Arista Records* made it far more likely that the subscriber to the IP address would have conducted or at least been aware of the illegal downloading.   In sum, it is not clear that plaintiffs have satisfied this factor.

**Element 3: The Absence of Alternative Means**

As one court observed, "[b]ecause the transactions in question occurred online, the defendants have been elusive and the IP addresses and ISP are the only available identifying information.   Without the requested discovery, there are no other measures Plaintiff can take to identify the personal information for the Doe defendants." *Raw Films, Ltd. v. Does 1-11,* 2012 WL 684763, at *2 (S.D. Cal. Mar. 2, 2012).   Plaintiffs retained a company that provides forensic

14

investigation services including the identification of IP addresses using BitTorrent protocol. *See* Fieser Decl. ¶¶5-6, DE [3-3].   Since plaintiffs have only been able to identify IP addresses used for potential infringement, they have established to the satisfaction of the Court that there are not alternative means available to identify the alleged infringers.

**Element 4: The Need for Subpoenaed Information to Advance the Claim**

Plaintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their claims.   However, not all the information sought is required to advance the claim.   For example, in addition to names and addresses, plaintiffs seek both the home telephone numbers and email addresses of the putative John Does, *see Malibu 26,* Proposed Order DE [3-2], information which is clearly not required to proceed with this action.     In particular, obtaining the home telephone numbers seems calculated to further plaintiffs' settlement strategies, discussed above, rather than advancing their claims by allowing them to effect service.

**Element 5: Defendants' Expectation of Privacy**

In *Arista Records*, the John Doe defendant, conceding that he had engaged in the alleged improper downloading, sought to quash the subpoena on First Amendment grounds.   While recognizing the protected nature of anonymous speech, the Court rejected the challenge, concluding that the "First Amendment does not . . . provide a license for copyright infringement." *Arista Records,* 604 F.3d at 118.   In examining this factor, the *Sony Music* court noted "defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission." *Sony Music,* 326 F. Supp. 2d at 566-67.   Here it is uncertain – indeed, it may be unlikely – that the subscribers sought to be identified downloaded the plaintiffs' copyrighted works. *Cf. Pacific Century,* 2011 WL 5117424, at *2 (denying discovery to protect "innocent internet users").   Thus, this Court cannot conclude with any reasonable certainty that

15

plaintiffs have overcome the expectation of privacy by putative defendants.

**Abusive Litigation Tactics Employed by the Plaintiffs**

The most persuasive argument against permitting plaintiffs to proceed with early discovery arises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants. Indeed, this may be the principal purpose of these actions, and these tactics distinguish these plaintiffs from other copyright holders with whom they repeatedly compare themselves. *See, e.g., K-Beech*, Pl. Mem. in Opp. at 3, DE [22] (arguing that this decision "will affect the rights of intellectual property holders across all segments of society"). While not formally one of the *Sony Music* factors, these facts could be viewed as a heightened basis for protecting the privacy of the putative defendants, or simply grounds to deny the requested discovery on the basis of fundamental fairness.

In an effort to defend its litigation approach, K-Beech argues that "Fed.R.Civ.P. 1 requires that Courts construe the rules to secure the inexpensive determination of every action." Pl. Mem. in Opp. at 11, DE [22]. This Court takes the mandate of Rule 1 quite seriously, and vigorously encourages efforts by litigants to reduce litigation costs through settlement. *See In re Tobacco Litig.,* 192 F.R.D. 90, 95 (E.D.N.Y. 2000) (describing court's "duty to take affirmative action assisting the parties in all possible settlement options"). However, in its argument, plaintiff neglects to observe that Rule 1 requires that disputes should be resolved in a manner that is "**just**, speedy and inexpensive." Fed. R. Civ. P. 1 (emphasis added). In this case, John Doe #16 offered the plaintiff "unfettered access" to his computer and employment records demonstrating that he was not at home at the time of the downloading, yet still finds himself pressured to settle for thousands of dollars. It would be difficult to characterize such a resolution as "just" even if speedy and inexpensive (for the plaintiff). *Cf. On The Cheap, LLC v. Does 1-5011*, -- F.R.D. --,

2011 WL 4018258, at *4 (N.D.Cal. Sept. 6, 2011) ("plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create . . . management and logistical problems . . . and then offer to settle with Doe defendants so that they can avoid digging themselves out of the morass plaintiff is creating").

Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." *Patrick Collins, Inc. v. Does 1–3757*, 2011 U.S. Dist. LEXIS 128029, at *6–7 (N.D.Cal. Nov. 4, 2011).

Given the unopposed, sworn account by John Doe #16, which dovetails with the experience of defendants in other actions brought by K-Beech and Patrick Collins, I find counsel for K-Beech has already engaged in improper litigation tactics in this matter, and find it highly probable that Patrick Collins Inc. and Malibu will likely engage in similar tactics if permitted to proceed with these mass litigations.   Such conduct cannot be condoned by this Court.   This is a persuasive basis to deny the motions for early discovery, as well as an additional basis to grant the motions to quash.   *See Pacific Century* , 2011 WL 5117424, at *2 (denying discovery on this basis).

It would be unrealistic to ignore the nature of plaintiffs' allegations – to wit: the theft of pornographic films – which distinguish these cases from garden variety copyright actions. Concern with being publicly charged with downloading pornographic films is, understandably, a common theme among the moving defendants.   As one woman noted in *K-Beech*, "having my

17

name or identifying or personal information further associated with the work is embarrassing,

damaging to my reputation in the community at large and in my religious community." Mtn to

Quash, ¶5, DE [7]. Many courts evaluating similar cases have shared this concern. *See,e.g.,*

*Pacific Century Int'l, Ltd. v. Does 1-37,* – F. Supp. 2d –, 2012 WL 1072312, at *3 (N.D. Ill. Mar.

30, 2012) ("the subscribers, often embarrassed about the prospect of being named in a suit

involving pornographic movies, settle"); *Digital Sin,* 2012 WL 263491, at *3 ("This concern, and

its potential impact on social and economic relationships, could compel a defendant entirely

innocent of the alleged conduct to enter an extortionate settlement") *SBO Pictures,* 2011 WL

6002620, at *3 (defendants "whether guilty of copyright infringement or not-would then have to

decide whether to pay money to retain legal assistance to fight the claim that he or she illegally

downloaded sexually explicit materials, or pay the money demanded. This creates great potential

for a coercive and unjust 'settlement'" ). This consideration is not present in infringement

actions involving, for example, popular music downloads. *See Arista Records,* 604 F.3d at 122,

("Teenagers and young adults who have access to the Internet like to swap computer files

containing popular music . . . The swappers . . . are ignorant or more commonly disdainful of

copyright." (*quoting In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003))).

The Federal Rules direct the Court to deny discovery "to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

This situation cries out for such relief.

**Joinder is Inappropriate**

In opposing the motions to quash, K-Beech relies heavily on the "swarm joinder" theory

championed by plaintiffs here and elsewhere. Rule 20 governs the permissive joinder of parties

and states that defendants may be joined in one action where a plaintiff states a right to relief

"arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."   Fed. R. Civ. P. 20 (a) (2) (A) & (B).   The argument is that every user who participates in the "swarm" is acting in concert to violate plaintiffs' copyrights.

Highly questionable factual assumptions underlie plaintiffs' contention that these cases satisfy the Rule 20 requisites for joinder.   By way of example, Plaintiffs assert that the John Does were "acting in concert with each other," "working together", and "directly interacted and communicated with other members of that swarm."   *See, e.g., Malibu 26,* Compl. ¶¶ 10, 33, 34. Much of the BitTorrent protocol operates invisibly to the user – after downloading a file, subsequent uploading takes place automatically if the user fails to close the program.   Exhibit D to the complaints, which allegedly documents the "interactions" between defendants, is a page of machine instructions which clearly demonstrate that the user plays no role in these interactions. Indeed, "[t]he bare fact that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world."   *Hard Drive Prods., Inc. v. Does 1-188,* 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011).

Moreover, the dates of downloading provided in the complaints – which are often weeks or months apart -- further undermine the allegation that all of the John Does were part of a single swarm.   Thus, *even assuming that the John Does are the actual infringers*, the assertion that defendants were acting in concert rests upon a thin reed.   *See generally Raw Films, Ltd. v. Does 1-32,* 2011 WL 6840590, at *2 (N.D.Ga. Dec. 29, 2011) (stating that the "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert"); *Raw Films, Ltd. v. Does 1-32,* 2011 WL 6182025 at *2 (E.D.Va. 2011) (conduct over

a three month time span was "insufficient to meet the standards of joinder set forth in Rule 20").   I

find that plaintiffs have not satisfied the requirement of establishing that defendants participated in

the same "transaction" or "occurrence" within the meaning of Rule 20.

Alternatively, because joinder is permissive, this Court retains the discretion to sever under

Rules 20(b), 21, and 42 (b).   *See Third Degree Films v. Does 1-131,* -- F. Supp. 2d --, 2012 WL

692993, at *3 (D. Ariz. Mar. 1, 2012).   In determining whether to exercise that discretion, the

court should "examine whether permissive joinder would comport with the principles of

fundamental fairness or would result in prejudice to either side."   *On the Cheap,* 2011 WL

4018258, at *2 (quoting *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1296 (9th Cir. 2000)).

"Courts may also consider factors such as the motives of the party seeking joinder and whether

joinder would confuse and complicate the issues for the parties involved."   *SBO Pictures,* 2011

WL 6002620, at *3.

Plaintiffs identify two common questions of fact in these actions: the plaintiffs' ownership

of copyrights, and the workings of BitTorrent.   By contrast, the half-dozen moving defendants,

even at this preliminary stage, have raised a panoply of individual defenses, including age,

religious convictions, and technological savvy; misidentification of ISP accounts; the kinds of

WiFi equipment and security software utilized; and the location of defendant's router.   The

individualized determinations required far outweigh the common questions in terms of discovery,

evidence, and effort required.   Thus, swarm joinder complicates these actions, resulting in waste

of judicial resources.

Plaintiffs tout the fact that "joinder in BitTorrent copyright infringement cases has been

thoroughly analyzed in forty reported opinions and has been permitted in district courts across the

country."   *K-Beech,*   Mem. in Opp. at 1, DE [25].   However, due to plaintiffs' litigation

20

strategy, which includes avoiding review on the merits except at a preliminary, *ex parte* stage,

these determinations were made without any factual record by judges unaware of the highly

individualized, fact specific defenses raised on the motions to quash, or evidence of strong-arm

tactics, both of which strongly militate against allowing joinder in these mass actions.

>    On this issue, one court has observed:

>> In addition to the Rule 20(a)(2) criteria, the court has a parallel duty
>> to ensure that permissive joinder "would comport with the
>> principles of fundamental fairness or would [not] result in prejudice
>> to either side.   The court also has discretion to sever an action when
>> joinder would confuse and complicate the issues for all parties
>> involved. It is likely that Defendants would assert different factual
>> and legal defenses, and would identify different witnesses. Case
>> management and trial . . . would be inefficient, chaotic, and
>> expensive.   Joining Defendants to resolve what at least
>> superficially appears to be a relatively straightforward case would in
>> fact transform it into a cumbersome procedural albatross. These
>> difficulties would place tremendous burden on Defendants as well.
>> To provide two illustrative examples, each Defendant would have
>> the right to be present at every other Defendant's depositions—a
>> thoroughly unmanageable and expensive ordeal. Similarly, *pro se*
>> Defendants, who most likely would not e-file, would be required to
>> serve every other Defendant with a copy of their pleadings and other
>> submissions throughout the pendency of the action at substantial
>> cost. The court cannot permit a case to proceed in this manner.

*Pacific Century,* 2011 WL 5117424, at *3 (quotations and citations omitted).   As such, I find that

principles of fundamental fairness and judicial economy dictate that permissive joinder not be

allowed in these cases.

**By Pursuing Mass Actions, Plaintiffs Improperly Avoid Payment of Filing Fees**

>    The payment of court filing fees is mandated by statute.   Specifically, the "district court

shall require the parties instituting any civil action, suit or proceeding in such court, whether by

original process, removal or otherwise, to pay a filing fee of $350."   28 U.S.C. §1914(a).   Of that

amount, "$190 shall be deposited into a special fund of the Treasury to be available to offset funds appropriated for the operation and maintenance of the courts of the United States." 28 U.S.C. §1931(1).

In multidistrict cases considering severance of cases, courts have noted that the filing fee has:

> two salutory purposes.  First, it is a revenue raising measure. . .
> Second, §1914(a) acts as a threshold barrier, albeit a modest one,
> against the filing of frivolous or otherwise meritless lawsuits.  Had
> each plaintiff initially instituted a separate lawsuit as should have
> occurred here, a fee would have been collected for each one. . . .
> Thus, the federal fisc and more particularly the federal courts are
> being wrongfully deprived of their due.  By misjoining claims, a
> lawyer or party need not balance the payment of the filing fee
> against the merits of the claim or claims.

*In re Diet Drugs,* 325 F. Supp. 2d 540, 541-42 (E.D. Pa. 2004); *see also In re Seroquel Prods. Liability Litig.,* 2007 WL 737589, at *2-3 (M.D. Fla. Mar. 7, 2007) (denying reduction of filing fees, noting the burden on the court and the "gatekeeping feature of a filing fee").

Several courts in similar cases involving BitTorrent protocol have also recognized the effect of a countenancing a single filing fee.  One court described the "common arc of the plaintiffs' litigating tactics" in these cases:

> ...these mass copyright infringement cases have emerged as a
> strong tool for leveraging settlements–a tool whose efficacy is
> largely derived from the plaintiffs' success in avoiding the filing
> fees for multiple suits and gaining early access en masse to the
> identities of alleged infringers.

*Pacific Century,* 2012 WL 1072312, at *3.  Thus, the plaintiffs file a single case, and pay one filing fee, to limit their expenses as against the amount of settlements they are able to negotiate. Postponing a determination on joinder in these cases "results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages plaintiffs in copyright actions to join (or

22

misjoin) as many doe defendants as possible." *K-Beech, Inc. v. John Does 1-41*, 2012 WL 773683, at \*5 (S.D. Tex. 2012).

In the four cases before this Court, plaintiffs have improperly avoided more than $25,000 in filing fees by employing its swarm joinder theory.   Considering all the cases filed by just these three plaintiffs in this district, more than $100,000 in filing fees have been evaded.   If the reported estimates that hundreds of thousands of such defendants have been sued nationwide, plaintiffs in similar actions may be evading millions of dollars in filing fees annually.    Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen.   It seems improper that they should profit without paying statutorily required fees.

### CONCLUSION

Because K-Beech has failed to allege a valid cause of action, and for all the other reasons set forth herein, the motions to quash in *K-Beech,* CV 11-3995, DE [7], [13], [14], [16], [17], [34], are hereby GRANTED.

For all of the reasons set forth herein, the Court is not inclined to grant the broad early discovery sought by Malibu and Patrick Collins.   At the same time, these plaintiffs are allegedly the owners of copyrighted works who should not be left without any remedy.   Given the record in this case, however, this must be done in a fashion that will ensure that the rights of all parties are adequately protected.   Thus, the Court is prepared to grant these plaintiffs limited early discovery, to wit: the names and addresses (**not** email addresses or phone numbers) of **only** the subscribers designated as John Doe 1 in *Malibu 26, Malibu 11, and Patrick Collins.*   Following service of subpoenas, under the terms and conditions set forth below, the identifying information will be provided to plaintiffs at a status conference, with each John Doe 1 present, giving them an opportunity to be heard, to obtain counsel and, if appropriate, request appointment of counsel from

23

this Court's *pro bono* panel.

Plaintiffs' motions for leave to serve third-party subpoenas prior to a Rule 26(f) conference, *Malibu 26,* CV 12-1147, DE [3], *Malibu 11,* CV 12-1150, DE [3], and *Patrick Collins,* CV 12-1154, DE [3], are GRANTED ONLY to the following extent:

(1) Plaintiffs in *Malibu 26, Malibu 11 and Patrick Collins* may serve subpoenas pursuant to Rule 45 of the Federal Rules of Civil Procedure on the ISPs to obtain the name, address, and Media Access Control address for each Defendant designated as John Doe 1 in each action to whom the ISP assigned an IP address.   Under no circumstances are plaintiffs permitted to seek or obtain the telephone numbers or email addresses of these individuals, or to seek or obtain information about any potential John Doe defendant other than John Doe 1.   Plaintiff's counsel is directed to attach a copy of this Order to the subpoena.

(2) Within seven days of service of each subpoena, the ISPs shall reasonably attempt to identify each John Doe 1 and provide him or her with a copy of the subpoena and this Order. If any of the ISPs are unable to determine, to a reasonable degree of technical certainty, the identity of the user of a particular IP address, it shall so notify Plaintiff's counsel.

(3) The ISPs shall have twenty-one (21) days from the service of the subpoena to move to quash or otherwise object to the subpoena. Each potential defendant shall have fourteen (14) days from receipt of the subpoena from the ISP to move to quash or otherwise object to the subpoena.

(4) Absent any motion to quash or objection, **the ISPs shall produce the information sought to the Court, not to the Plaintiff** within twenty-one (21) days after notifying

24

each Defendant pursuant to paragraph (2) above.   Said submission shall be made *ex parte* and under seal.   Said information will be provided to counsel for plaintiffs at a status conference to be scheduled by the Court.

(5) Plaintiff may only use the information disclosed pursuant to the subpoenas for the purpose of protecting and enforcing Plaintiffs' rights as set forth in the Complaint.

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGES

For all of the reasons set forth herein, it is respectfully recommended as follows:

1.  That the complaints in *Malibu 26, Malibu 11 and Patrick Collins* be dismissed, *sua sponte* and without prejudice, as to all defendants other than the individual designated as John Doe 1 in each action;

2.  That the complaint in *K-Beech* be dismissed, *sua sponte* and without prejudice, in its entirety; and

3.  That plaintiffs and their counsel in all four actions be directed that any future actions of a similar nature in this district be filed as separate actions as against each John Doe defendant, so as to avoid unfair outcomes, improper joinder and waste of judicial resources, and to ensure the proper payment of filing fees.   *See, e.g., DIRECTV, Inc. v. Armellino,* 216 F.R.D. 240, 241 (E.D.N.Y. 2003) (Spatt, J.) ("plaintiff is advised that all future claims of this nature must be instituted separately against individual defendants"), (*citing CSC Holdings Inc. v. Tack*, CV 00–3555 (E.D.N.Y. June 16, 2000) (Seybert, J.)).

A copy of this Order and Report and Recommendation is being sent to counsel for the

25

Case 2:11-cv-03995-DRH-GRB   Document 39   Filed 05/01/12   Page 26 of 26 PageID #: 644

plaintiffs by electronic filing on the date below.   Any objections to the Report and

Recommendation portion must be filed with the Clerk of the Court within 14 days.   *See* 28 U.S.C.

§636 (b)(1); Fed. R. Civ. P. 72;   Fed. R. Civ. P. 6(a) and 6(d).   Failure to file objections within

this period waives the right to appeal the District Court's Order.   *See Ferrer v. Woliver,* 2008 WL

4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997);

*Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
         May 1, 2012

                              /s/ Gary R. Brown_____
                              GARY R. BROWN
                              United States Magistrate Judge

26

# EXHIBIT 3

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 6255 | **DATE** | 3/2/2011 |
| **CASE TITLE** | CP Productions, Inc. Vs. Does 1-300 | | |

**DOCKET ENTRY TEXT**

CP's counsel is ordered to appear in court on March 9, 2011 at 9:00 a.m.  Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

■[ For further details see text below.]                                              Docketing to mail notices.

---

## STATEMENT

    This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants – this one seeking the nullification of a February 11, 2011 subpoena issued to Comcast Communications, LLC.  This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way.

    But because the aggrieved Doe defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, [1] CP's counsel is ordered to appear in court on March 9, 2011 at 9:00 a.m.  Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

---

    [1]At the end of the current motion, the verification by "John Doe" reflects its execution on February 24.  Although that date coincides with the date of the opinion referred to in the text, this Court had actually entered an order of dismissal earlier, followed by a motion for reconsideration filed by CP.

| | |
|---|---|
| Courtroom Deputy Initials: | SN |

# EXHIBIT 4

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SBO PICTURES, INC., d/b/a WICKED PICTURES, a California Corporation, <br><br>         Plaintiff, <br><br>    v. <br><br> DOES 1-3036, <br><br>         Defendants. | Case No. 11-4220 SC <br><br> ORDER GRANTING IN PART PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO TAKE EXPEDITED DISCOVERY, SEVERING DOE DEFENDANTS 2-3036 FROM ACTION, AND DISMISSING CLAIMS AGAINST <u>DOE DEFENDANTS 2-3036</u> |

## I.   **INTRODUCTION**

On August 26, 2011, Plaintiff SBO Pictures, Inc., d/b/a Wicked Pictures ("Plaintiff") filed a Complaint against 3036 unnamed defendants ("Doe Defendants"), alleging copyright infringement. ECF No. 1 ("Compl."). The same day, Plaintiff filed an Ex Parte Application for Leave to Take Limited Discovery, seeking leave to take third-party discovery in order to unearth the identities of Doe Defendants. ECF No. 4 ("Application"). For the reasons set forth below, the Court GRANTS IN PART Plaintiff's Application, SEVERS Doe Defendants 2-3036 from this action, and ORDERS that the claims against Doe Defendants 2-3036 be dismissed due to improper joinder.

///

///

United States District Court
For the Northern District of California

## II.   **BACKGROUND**

Plaintiff is a motion picture production company.  Compl. ¶ 7. Plaintiff alleges that it owns the copyright to the film "XXX Avengers" ("the Motion Picture").  Id.  Plaintiff claims that the Motion Picture is the subject of the valid Certificate of Registration No. PA 1-745-351, issued June 10, 2011 by the United States Copyright Office, and that Plaintiff owns the registration. Id. ¶ 8.

Plaintiff alleges that Doe Defendants used "an online media distribution system, in this case a BitTorrent network, a 'peer to peer' network (or a 'P2P' network), to reproduce [and distribute] at least one copy of the Motion Picture." Id. ¶ 10.  According to Plaintiff, "[e]ach Defendant has acted in cooperation with the other Defendants by agreeing to provide, and actually providing, on a P2P network an infringing reproduction of at least substantial portions of Plaintiff's copyrighted Motion Picture, in anticipation of the other Defendants doing likewise with respect to that work and/or other works." Id. ¶ 11.  Plaintiff alleges that all Doe Defendants acted in concert by participating in the same BitTorrent "swarm,"[1] to achieve unlawful reproduction and distribution of the

---

[1] Jon Nicolini ("Nicolini"), Vice President of Plaintiff's contractor, Copyright Enforcement Group, submitted a declaration in support of Plaintiff's Request.  ECF No. 5 ("Nicolini Decl.").  He explains how P2P networks distribute infringing copies of copyrighted works through file sharing software such as BitTorrent. The process begins when one user accesses the Internet through an Internet service provider and intentionally makes a digital file of a work available to the public from his or her computer.  Nicolini Decl. ¶ 6.  This file is referred to as the first "seed."  Id. Other users, who are referred to as "peers," then access the Internet and request the file.  Id.  These users engage each other in a group, referred to as a "swarm," and begin downloading the seed file.  Id.  As each peer receives portions of the seed, that

United States District Court
For the Northern District of California

1  Motion Picture.  _Id._  Plaintiff alleges that Doe Defendants'

2  actions have violated Plaintiff's rights under the Copyright Act,

3  17 U.S.C. §§ 101, _et seq._

4       Plaintiff attaches to the Complaint a list allegedly

5  containing the Internet Protocol ("IP") addresses of each Doe

6  Defendant, the date and time of each alleged infringement, and the

7  Internet Service Provider ("ISP") associated with each IP address.

8  Compl. Ex. A ("IP Log").  Plaintiff's contractor, Copyright

9  Enforcement Group ("CEG"), declares that through monitoring

10  Internet-based infringement of Plaintiff's copyrighted content, it

11  confirmed that each Doe Defendant reproduced at least a substantial

12  portion of the Motion Picture.  Nicolini Decl. ¶¶ 17-19, 22.

13       Plaintiff argues that due to the anonymous nature of the peer-

14  to-peer file distribution system used by Doe Defendants, it can

15  only identify the names and addresses of individuals associated

16  with these IP addresses by subpoenaing the ISPs.  Application at 6,

17  9.  Plaintiff seeks leave to serve third-party subpoenas on dozens

18  of ISPs to compel them to provide the name, address, telephone

19  number, and e-mail address of each Doe Defendant.  _See_ IP Log;

20  Application Ex. 1 ("Sample Subpoena").

21

22  **III. LEGAL STANDARD**

23       Generally, a party may not initiate discovery before the

24  parties have met and conferred pursuant to Federal Rule of Civil

25  Procedure 26(f).  However, a court may authorize earlier discovery

26  "for the convenience of parties and witnesses and in the interests

27  _____

28  peer makes those portions available to other peers in the swarm.
    _Id._

                                   3

1  of justice." Fed. R. Civ. P. 26(d). The requesting party must
2  demonstrate good cause for earlier discovery. See Semitool, Inc.
3  v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002).
4  "Good cause may be found where the need for expedited discovery, in
5  consideration of the administration of justice, outweighs the
6  prejudice to the responding party." Id.

7       According to the Ninth Circuit:

8           [W]here the identity of alleged defendants will
            not be known prior to the filing of a
9           complaint[,] . . . the plaintiff should be
            given an opportunity through discovery to
10          identify the unknown defendants, unless it is
            clear that discovery would not uncover the
11          identities, or that the complaint would be
            dismissed on other grounds.
12

13  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). For
14  leave to conduct discovery to identify a Doe defendant, the moving
15  party must: (1) identify the defendant with enough specificity to
16  allow the Court to determine whether the defendant is a real person
17  or entity who could be sued in federal court; (2) recount the steps
18  taken to locate the defendant; (3) show that its action could
19  survive a motion to dismiss; and (4) file a request for discovery
20  with the Court identifying the persons or entities on whom
21  discovery process might be served and for which there is a
22  reasonable likelihood that the discovery process will lead to
23  identifying information. Columbia Ins. Co. v. seescandy.com, 185
24  F.R.D. 573, 578-80 (N.D. Cal. 1999) ("Columbia Ins.").
25      In the context of parties seeking discovery in alleged online
26  piracy, the court must balance "the need to provide injured parties
27  with [a] forum in which they may seek redress for grievances"
28  against "the legitimate and valuable right [of Internet users] to

United States District Court
For the Northern District of California

4

United States District Court
For the Northern District of California

1   participate in online forums anonymously or pseudonymously . . .
2   without fear that someone who wishes to harass or embarrass them
3   can file a frivolous lawsuit and thereby gain the power of the
4   court's order to discover their identity." Id. at 578.

5
6   **IV.   DISCUSSION**
7       The Court is satisfied that Plaintiff has met the first,
8   second, and fourth Columbia Insurance factors.  However, the Court
9   finds that Plaintiff has not established that it could satisfy the
10  third Columbia Insurance factor because it has not shown that the
11  Complaint could survive a motion to dismiss based on improper
12  joinder.

13      **A.    Permissive Joinder Under Rule 20**
14      Federal Rule of Civil Procedure 20(a) provides that parties
15  may be joined in a single lawsuit where the claims against them
16  arise from a single transaction or a series of closely related
17  transactions.  If defendants do not satisfy the test for permissive
18  joinder, a court may sever the misjoined parties, "so long as no
19  substantial right will be prejudiced by the severance." Coughlin
20  v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997) (citation omitted);
21  see Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for
22  dismissing an action.").

23      In this case, the Court finds that Plaintiff has failed to
24  satisfy the Rule 20 requirements for permissive joinder.  Plaintiff
25  argues that the Doe Defendants are properly joined because they
26  infringed the same copyrighted work in cooperation with each other
27  by exchanging portions of the work with one another (i.e., they
28  were a part of the same "swarm"), and the nature of the BitTorrent

5

1   technology requires concerted action with regard to each swarm.

2   Application at 12-14.

3       Courts in this district are divided as to whether Rule 20 is

4   satisfied by virtue of the fact that defendants were part of the

5   same BitTorrent swarm. Compare Hard Drive Prods. v. Does 1-42, No.

6   CV 11-01956 EDL, 2011 U.S. Dist. LEXIS 105229, at *2 (N.D. Cal.

7   Aug. 3, 2011) (Rule 20 satisfied because defendants participated in

8   a common BitTorrent swarm), with Third Degree Films v. Does 1-3577,

9   No. C 11-02768 LB, 2011 U.S. Dist. LEXIS 128030, at *9 (N.D. Cal.

10  Nov. 4, 2011) (Rule 20 not satisfied even though defendants were

11  part of a common swarm) and Diabolic Video Prods., Inc. v. Does 1-

12  2099, No. 10-CV-5865-PSG, 2011 U.S. Dist. LEXIS 58351, at *10-11

13  (N.D. Cal. May 31, 2011) (same).

14      Here, the Doe Defendants' alleged participation in the same

15  swarm spanned approximately a four-month period from May 2011

16  through August 2011. See IP Log. The Court cannot conclude that a

17  Doe Defendant who allegedly downloaded or uploaded a portion of the

18  Motion Picture on May 11, 2011, a Doe Defendant who allegedly did

19  the same on August 10, 2011, and over three thousand Doe Defendants

20  who allegedly did the same in the interim, were engaged in the

21  single transaction or series of closely-related transactions

22  recognized under Rule 20. See Third Degree Films, 2011 U.S. Dist.

23  LEXIS 128030, at *9 (Even though defendants were allegedly part of

24  same swarm, "permissive joinder is inappropriate, particularly

25  given that 3,577 Doe defendants downloaded the protected work at

26  various dates and times ranging from November 11, 2010, to June 1,

27  2011.").

28  ///

United States District Court
For the Northern District of California

**B.    Other Factors Bearing on Whether Joinder is Proper**

In addition to the Rule 20(a) criteria, a court must examine whether permissive joinder "would comport with the principles of fundamental fairness or would result in prejudice to either side." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000)(internal quotation omitted).  Courts may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved.  IO Group, Inc. v. Does 1-435, No. C 10-4382 SI, 2011 U.S. Dist. LEXIS 14123, at *18 (N.D. Cal. Feb. 3, 2011); Hard Drive Prods., Inc. v. Does 1-188, No. C-11-01566 JCS, 2011 U.S. Dist. LEXIS 94319, at *17 (N.D. Cal. Aug. 23, 2011).

Here, the Court finds that even if Rule 20 were satisfied, other concerns weigh against joinder.  First, joinder has the potential to produce an unfair result for some, if not many, Doe Defendants.  Plaintiff defines Doe Defendants as the ISP subscribers whose internet connection was allegedly used to pirate the Motion Picture.  Compl. ¶ 5.  As many courts have noted, however, the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes.  For example, "[ISP] subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's works." Third Degree Films, 2011 U.S. Dist. LEXIS 128030, at *9.  By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, "Plaintiff's sought-after discovery

7

1   has the potential to draw numerous innocent internet users into the

2   litigation, placing a burden upon them that weighs against allowing

3   the discovery as designed." Hard Drive Prods., Inc. v. Does 1-130,

4   No. C-11-3826 DMR, 2011 U.S. Dist. LEXIS 132449, at *6 (N.D. Cal.

5   Nov. 16, 2011).  If the Court were to grant Plaintiff's

6   Application, Plaintiff would likely send settlement demands to the

7   individuals whom the ISP identified as the IP subscriber.[2]  "That

8   individual -- whether guilty of copyright infringement or not --

9   would then have to decide whether to pay money to retain legal

10  assistance to fight the claim that he or she illegally downloaded

11  sexually explicit materials, or pay the money demanded.  This

12  creates great potential for a coercive and unjust 'settlement.'"

13  Id. at *9.

14      Indeed, the Court is concerned that Plaintiff's motive for

15  seeking joinder of over three thousand Doe Defendants in one action

16  may be precisely to coerce such settlements.  See IO Group, Inc.,

17  2011 U.S. Dist. LEXIS 14123, at *19.  As Plaintiff's counsel surely

18  knows, trial of a suit with thousands of individual defendants

19  would present unmanageable difficulties.  The vast majority of

20  these mass copyright infringement suits are resolved through

21  settlement once the plaintiff secures the information identifying

22  the Does.  Id.  As Judge Beeler has noted, Plaintiff's counsel in

23  this action has filed at least ten other mass copyright

24  infringement suits against large numbers of Doe defendants.  See

25  Patrick Collins, Inc. v. Does 1-3757, No. C 10-05886 LB, 2011 U.S.

26  Dist. LEXIS 128029, at *6-7 (N.D. Cal. Nov. 4, 2011).  The court in

27  ───────────────

28  [2] Indeed, Plaintiff has already sent settlement demands to the ISPs
    with a request that they be forwarded to the subscribers.  Nicolini
    Decl. ¶ 21.

8

Patrick Collins reviewed the dockets in those cases and determined
that no plaintiff ever filed proof of service upon a single
defendant, even after a number of defendants were identified and
settled with plaintiffs.  Id. at *7.  Instead, the plaintiffs
"appear[ed] content to force settlements without incurring any of
the burdens involved in proving their cases."  Id.  It therefore
appears that Plaintiff's motive in joining over three thousand
defendants in one action is to keep its own litigation costs down
in hopes that defendants will quickly agree to a settlement.
However, "while the courts favor settlements, filing one mass
action in order to identify hundreds of doe defendants through pre-
service discovery and facilitate mass settlement, is not what the
joinder rules were established for."  Id. (internal quotation
omitted).

Additionally, the Court finds that Plaintiff would not suffer
undue prejudice by severing Doe Defendants 2-3036 and dismissing
them from the case without prejudice.  The earliest date of an
illegal download identified in Plaintiff's IP Log is May 2011.
Under 17 U.S.C. § 507, the statute of limitations of a civil
copyright action is three years after the claim accrued.  Thus,
Plaintiff has ample time to file individual lawsuits should it
choose to do so.  Furthermore, Plaintiff's contractor CEG already
sent notices to each of the ISPs at issue, and requested that the
ISPs forward those notices to the addresses of the subscribers
associated with each allegedly infringing IP address.  Nicolini
Decl. ¶ 21.  Each notice included, among other things, an address
where the accused infringer can contact CEG to arrange for
settlement.  Id.  Thus, Plaintiff may obtain, and indeed may have

1   already obtained, settlements from many of the alleged infringers

2   without Court-ordered discovery.[3]

3        Plaintiff argues that the Court should not rule on whether

4   joinder is proper at this stage in the case.  Application at 11.

5   Plaintiff does not flesh out this argument, but it provides a full-

6   page block quote from Call of the Wild Movie, LLC v. Does 1-1,062,

7   770 F. Supp. 2d 332, 344-345 (D.D.C. 2011), in which Judge Howell

8   reasons that considering severance at this juncture would introduce

9   "significant obstacles in [plaintiffs'] efforts to protect their

10  copyrights from illegal file-sharers and this would only needlessly

11  delay their cases."  Judge Howell proceeds to explain that the

12  plaintiffs would need to file thousands of separate lawsuits, pay

13  the associated filing fees, and then move to issue separate

14  subpoenas to ISPs in search of each defendant's identifying

15  information.  Id.  Be this as it may, the Court finds that the

16  potential for coercing unjust settlements from innocent defendants

17  trumps Plaintiff's interest in maintaining low litigation costs.

18  Moreover, other courts and commentators have noted the flipside of

19  Judge Howell's argument.  Namely, "a consequence of postponing a

20  decision on joinder in lawsuits similar to this action results in

21  lost revenue of perhaps millions of dollars (from lost filing fees)

22  and only encourages [plaintiffs in copyright actions] to join (or

23  misjoin) as many doe defendants as possible."  IO Group, 2011 U.S.

24  Dist. LEXIS 14123, at *20 n.5 (citation omitted).

25  ///

26  ///

27  _____

28  [3] The IP addresses listed in the IP log correspond to those
subscribers who had not yet settled as of the time the Complaint
was filed.  Nicolini Decl. ¶ 21.

10

**United States District Court**
For the Northern District of California

## V.   CONCLUSION

For the reasons stated above, the court GRANTS IN PART
Plaintiff SBO Pictures, Inc.'s Ex Parte Application for Leave to
Take Limited Discovery.  Within ten (10) days of this Order,
Plaintiff shall serve on Doe 1's ISP a subpoena in the form
attached as Exhibit 1 to Plaintiff's Application.  The subpoena
shall include a copy of the Complaint and this Order.  The ISP
shall have thirty (30) days from the date of service upon it to
serve Doe 1 with a copy of the subpoena, the Complaint, and this
Order.  The ISP may serve Doe 1 using any reasonable means,
including written notice sent to Doe 1's last known address,
transmitted either by first-class mail or via overnight service.
The ISP and Doe 1 each shall have thirty (30) days from the date of
service upon them to file any motions in this Court contesting the
subpoena (including a motion to quash or modify the subpoena).  If
that thirty-day period lapses without Doe 1 or the ISP contesting
the subpoena, then the ISP shall have ten (10) days to produce to
Plaintiff the information responsive to the subpoena with respect
to Doe 1.

The ISP shall preserve all subpoenaed information pending the
ISP's delivering such information to Plaintiff, or the final
resolution of a timely filed and granted motion to quash the
subpoena.  Plaintiff may use any information disclosed in response
to the subpoena solely to protect its rights under the Copyright
Act, 17 U.S.C. § 101, et seq.

It is further ORDERED that Doe Defendants 2-3036 are SEVERED
from this action, and Plaintiff's claims against Doe Defendants 2-
3036 are DISMISSED without prejudice for improper joinder.

United States District Court
For the Northern District of California

1       Lastly, Plaintiff asks that the Court enlarge time for

2  Plaintiff to serve process on Doe Defendants until 180 days after

3  the date of this Order due to the delays involved in issuing

4  subpoenas to ISPs, receiving responses to those subpoenas, and

5  subsequently serving Doe Defendants.[4]  Even though only one Doe

6  Defendant remains in this action, the timeline set forth above

7  demonstrates that an enlargement of time is necessary.

8  Accordingly, the Court GRANTS Plaintiff's Application to Enlarge

9  Time.

10       Plaintiff also requests that no Case Management Conference be

11  held until approximately 210 days from the date of this Order in

12  order to allow for service of process and Doe Defendant's response.

13  Accordingly, the Case Management Conference currently scheduled for

14  December 9, 2011 is hereby continued to July 27, 2012, at 10:00

15  a.m. in Courtroom 1, on the 17th floor, U.S. Courthouse, 450 Golden

16  Gate Avenue, San Francisco, CA 94102.  The parties shall file a

17  Joint Case Management Statement with the Court at least seven (7)

18  days prior to the Conference.

19

20       IT IS SO ORDERED.

21

22       Dated:  November 30, 2011

23                            UNITED STATES DISTRICT JUDGE

24

25

26

27

28

---

[4] Plaintiff filed an Application for Enlargement of Time to Serve Defendants along with its Application for Leave to Take Limited Discovery.  ECF No. 2.

# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK COLLINS, INC.,

            Plaintiff,

                                         Case No. 11-cv-15231
vs.                                    HON. GEORGE CARAM STEEH


JOHN DOES 1-23,

            Defendants.

_____/

<u>ORDER GRANTING MOTION TO QUASH IN PART AND SEVERING DOE
DEFENDANTS 2-23</u>

    I.     <u>Introduction</u>

This case is one among many cases filed nationwide by copyright owners[1] alleging

that John Doe defendants downloaded their films without authorization using a peer-to-peer

("P2P") file sharing network known as BitTorrent.  Plaintiff, Patrick Collins, Inc., the owner

of United States Copyright Registration Number PA0001745322, for the motion picture

---

    [1]  Plaintiff itself has filed a number of nearly identical lawsuits against Doe
defendants in federal district courts across the country.  *See Patrick Collins, Inc. v. John
Does 1-54*, No. 11-cv-1602-PHX-GMS, 2012 U.S. Dist. LEXIS 36232 (D. Ariz. March
19, 2012); *Patrick Collins, Inc. v. Does 1-58*, No. 3:11-cv-531-JAG, 2011 U.S. Dist.
LEXIS 120235 (E.D. Va. Oct. 5, 2011); *Patrick Collins, Inc. v. Does 1-2,590*, No. C-11-
2766, 2011 U.S. Dist. LEXIS 140913 (N.D. Cal. Dec. 7, 2011); *Patrick Collins, Inc. v.
John Does 1-33*, No. 11-cv-02163, 2012 WL 415424 (D. Colo. Feb. 8, 2012); *Patrick
Collins, Inc v. Does 1-22*, No. 11-cv-01772, 2011 WL 5439005 (D. Md. Nov. 8, 2011).
    In fact, on the same date that plaintiff filed the present action, plaintiff also filed
three similar cases involving copyright infringement of other works in this district.  *See
Patrick Collins, Inc. v. Does 1-21*, No. 2:11-cv-15232-DPH; *Patrick Collins, Inc. v. Does
1-30*, No. 2:11-cv-15236-PDB; *Patrick Collins, Inc. v. Does 1-27*, No. 4:11-cv-15237-
MAG.

"Gangbanged" (the "Work"), filed the instant action alleging claims of direct and indirect copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.* against twenty-three John Doe defendants.

On December 1, 2011, the magistrate judge assigned to this matter entered an order allowing plaintiff to serve third party subpoenas on defendants' Internet Service Providers ("ISP") prior to a Rule 26(f) conference. Plaintiff has no identifying information concerning the Doe defendants other than their IP addresses, a unique numerical identifier that is automatically assigned to an internet user by the user's ISP. Defendant John Doe's ISP, Comcast, was served with a Rule 45 subpoena and defendant John Doe now moves to quash or modify subpoena and to sever.

II. Factual Background

BitTorrent is one of the most common peer-to-peer file sharing protocols used for distributing large amounts of data. Its popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In other words, to reduce the load on the source computer, rather than downloading a file from a single source computer, the BitTorrent protocol allows users to join a "swarm" of computers and upload and download files from each other.

According to plaintiff the Doe defendants installed a BitTorrent client onto his or her computer. The BitTorrent Client is a software program that implements the BitTorrent protocol. Once installed, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol. A BitTorrent user who wants to upload a new file to share with others, known as the "initial seeder" starts by creating a "torrent" descriptor file using the BitTorrent Client installed on the computer. The

-2-

BitTorrent Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces." The Client then gives each one of the Work's pieces a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the "torrent" file.

The torrent file also has an "announce" section which specifies the URL (Uniform Resource Locator) of a "tracker," which directs a peer user's computer to other peer users' computers that have particular pieces of the Work and facilitates the exchange of data among the computers.

The BitTorrent protocol causes the initial seed's computer to send different pieces of the Work to other peers seeking to download the Work. Once a peer receives a piece of the Work, the protocol enables transmission of this piece to other peers. In this way, all of the seeders work together in what is known as a "swarm."

Plaintiff's investigators, IPP Limited, were tasked with identifying the IP addresses that are using the BitTorrent protocol to reproduce the Work. IPP Limited used forensic software named International IPTracker v1.2.1. This software enabled IPP Limited to determine that the IP addresses associated with the Doe defendants (identified on exhibit A to the complaint) connected to the investigative server in order to transmit a full copy, or portion thereof, of a digital media file identified by hash value of 8F7C963137369F5A874A32E468C1D432DAFOB859. Therefore, plaintiff alleges that each Doe defendant copied a piece of plaintiff's Work and were part of the same series of transactions because they all were part of the same "swarm" of peer users.

### III.   LAW & ANALYSIS

### A.   Permissive Joinder

Federal Rule of Civil Procedure 20(a)(2) allows the joinder of defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and
(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  "The purpose of Rule 20 is to promote efficiency, as joining all interested parties in one proceeding encourages resolution of the dispute, avoids overlapping litigation, and ensures that single judgment binds all interested parties, thereby avoiding inconsistent outcomes and multiple litigation."  *Nilssen v. Universal Lightning Technologies, Inc.*, No.3:04-0080, 2005 WL 1971936, \*4 (M.D. Tenn. 2005).  Therefore, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; and joinder of claims, parties, and remedies is strongly encouraged." *Call of the Wild Movie v. Does* 1-1,062, 770 F. Supp. 2d 332, 339 (D.D.C. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1996)).  The remedy for improper joinder is severance under Rule 21 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 21.  "[I]t is well-settled that parties are misjoined when the preconditions of permissive joinder set forth in Rule 20(a) have not been satisfied."  *Id.* at 342.

Defendant Doe argues that this court should quash the subpoenas served upon the Doe defendants because the plaintiff has improperly joined the putative defendants under Rule 20(a) of the Federal Rules of Civil Procedure.  Defendant Doe maintains that joinder is improper because the allegations in the complaint, while involving a single Work, involve

-4-

unrelated defendants who allegedly violated the copyright laws at different times and locations, sometimes using different services and perhaps subject to different defenses. Further, defendant claims that the nature of BitTorrent does not support plaintiff's claim that all John Doe IP addresses acted together for the entire relevant time period.

Defendant Doe relies on case law addressing alleged copyright infringement using P2P file sharing protocols that predate BitTorrent technology where the courts found that the use of the same P2P file sharing network by a group of Doe defendants to commit copyright infringement is insufficient to sustain permissive joinder. *See IO Group, Inc. v. Does 1-19*, No. C-10-03851-SI, 2010 U.S. Dist. LEXIS 133717 (N.D. Cal. Dec. 7, 2010); *Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fl. Apr. 1, 2004); *Artista Records v. Does 1-9*, No. 07-cv-961, 2008 U.S. Dist. LEXIS 57734 (S.D. Ohio July 29, 2008); *Artista v. Does 1-11*, No. 07-cv-2828, 2008 U.S. Dist. LEXIS 90183 (N.D. Ohio Nov. 3, 2008); *LaFace Records, LLC v. Does 1-38*, 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. Feb. 27, 2008); *Elektra Entertainment Group, Inc. v. Does 1-9*, No. 04-civ-2289, 2004 U.S. Dist. LEXIS 23560 (S.D.N.Y. Sept. 7, 2004).

Conversely plaintiff argues, similar to other plaintiffs filing BitTorrent copyright infringement cases across the country, that joinder of the twenty-three Doe defendants is proper because each Doe defendant was part of the same "swarm" simultaneously uploading and downloading plaintiff's Work. Plaintiff urges the court to adopt the decisions of some district courts that have found that Doe defendants who have participated in the same swarm to download a copyrighted work may properly be joined under Rule 20(a)(2), despite the authority that reaches a contrary conclusion with respect to earlier P2P technologies. *See Call of the Wild Movie*, 770 F. Supp. 2d at 343 (concluding that the

-5-

plaintiffs met requirements of permissive joinder and that severance would "debilitate the plaintiffs' efforts to protect their copyrighted materials . . . ."); *Digital Sin, Inc. v. Does 1-176,* No. 12-cv-00126, 2012 WL 263491, *4  (S.D.N.Y. Jan. 30, 2012)*; see also, Voltage Pictures, LLC v. Vazquez*, No. 10-00873, 2011 WL 5006942 (D.D.C. Oct. 20, 2011) (finding that joinder was proper and that the merits of the putative defendants defenses were not properly before the court until being named as a defendant); *Patrick Collins, Inc. v. John Does 1-33*, No. 11-cv-02163, 2012 WL 415424, *3 (D. Colo. Feb. 8, 2012) (concluding that joinder was proper because "joinder of the Doe Defendants 'facilitates jurisdictional discovery and expedites the process of obtaining identifying information, [a] prerequisite to reaching the merits of plaintiff's claims."); *Liberty Media Holdings, LLC v. Does 1-62*, No. 11-cv-575-MMA, 2011 WL 1869923, *5 (S.D. Cal. May 12, 2011) ("In this case, the complaint sufficiently alleges that defendants are properly joined due to the use of BitTorrent, which necessarily requires each user to be an uploader as well as a downloader."); *Patrick Collins v. Inc v. Does 1-22*, No. 11-cv-01772, 2011 WL 5439005, *2-3 (D. Md. Nov. 8, 2011); *Patrick Collins v. Does 1-2590*, No. C-11-2766, 2011 WL 4407172, *5 (N.D. Cal. Sept. 22, 2011).

Based on a review of the complaint, motions and briefing filed in the instant action, and the decisions analyzing whether joinder of unnamed Doe defendants utilizing BitTorrent technology in one action is permitted under Rule 20(a), the court concludes that simply alleging the use of BitTorrent technology, like earlier P2P file sharing protocols, does not comport with the requirements under Rule 20(a) for permissive joinder. Here, the alleged activity involves 23 different defendants, 4 different ISPs, and nearly three months of activity (7/15/2011 through 10/11/2011).   This is insufficient to establish that the Doe

-6-

defendants were involved in the same transaction or series of transactions.

In the instant matter, the allegations reveal that each of the computers using the IP addresses (identified in Exhibit A to the complaint) connected to the investigative server in order to download a piece of the Work, identified by the hash value of 8F7C963137369FA874A32E468C1D432DAF0B859. Each of the IP addresses connected to the investigative server at different times and dates to download a piece of the Work and there is no allegation that any of the computers associated with the IP addresses downloaded or uploaded pieces of the Work with each other. That plaintiff has provided evidence that each of the defendants connected to the investigative server to download a piece of the Work does not show that each of the IP addresses acted in concert with all the other addresses in the swarm. The nearly three month time span covering this activity suggests the likely possibility that there was never common activity linking the 23 addresses in this matter. *See Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011); *K-Beech, Inc. v. John Does 1-41*, No. V-11-46, 2012 U.S. Dist. LEXIS 31803, *10 (S.D. Tex. March 8, 2012) ("While [plaintiff] provides the precise date, hour, minute and second at which it alleges that each Doe Defendant was observed to be sharing the torrent of the copyrighted work, [plaintiff] does not indicate how long each Doe Defendant was in the swarm or if any of the Doe Defendants were part of the swarm contemporaneously.") In *Hard Drive Productions*, the court held that

> [E]ven if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case.

809 F. Supp. 2d at 1163; *see also, Patrick Collins, Inc. v. John Does 1-58*, No. 3:11cv-531-

-7-

JAG, 2011 U.S. Dist. LEXIS 120235, *5-6 (E.D. Va. Oct. 5, 2011); *Boy Racer, Inc. v. Does 1-98*, No. C-11-02536-JCS, 2011 U.S. Dist. LEXIS 11930, *2 (N.D. Cal. Oct. 14, 2011).

In addition, plaintiff's complaint is devoid of any information concerning the number of users in the swarm involved, which easily can reach numbers in the hundreds of thousands. The nature of the BitTorrent protocol enables its users to share files in a relatively quick time frame, ranging anywhere from fifteen minutes to a few hours. The absence of information concerning the number of total users in the swarm, coupled with the BitTorrent protocol's ability to quickly share files further demonstrates that it is implausible that any of the Doe defendants were simultaneously sharing pieces of plaintiff's Work. *See Hard Drive Prods., Inc.* 809 F. Supp. 2d at 1163 ("In this age of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole.") Thus, the absence of any allegations that a particular user downloaded a piece of the Work from, or uploaded a piece of the Work to, another user in the swarm highlights the absence of any reason to conclude that the Doe defendants were engaged in the same transaction or series of transactions. *See Patrick Collins, Inc. v. John Does 1-54*, 2012 U.S. Dist. LEXIS 36232, *14 (D. Ariz. March 19, 2012) ("[A]bsent allegations that any particular user copied a piece of the file from or to any other particular user, one could not conclude that the users 'were engaged in the single transaction or series of closely-related transactions recognized under Rule 20."). In short, the connection plausibly alleged among defendants named in this case is nothing more than alleged in the prior P2P file sharing cases.

Based on plaintiff's failure to sufficiently allege that the Doe defendants engaged in

-8-

the same series of transactions with respect to their alleged infringing conduct, the court concludes that the Doe defendants have been improperly joined and severs Doe defendants 2-23 from this action under Rule 21. The court rejects plaintiff's argument that allowing severance of the Doe defendants will prevent copyright holders from being able to protect their ownership rights. The court's decision does not prevent plaintiff from bringing separate actions against each individual Doe defendant. *See Lightspeed v. Does 1-1000*, No. 10-C-5604, 2011 U.S. Dist. LEXIS 35392, * 6 (N.D. Ill. March 31, 2011) (rejecting the plaintiff's argument that joinder at this stage of the litigation serves the interests of judicial economy); *see also, K-Beech, Inc. v. John Does 1-41*, 2012 U.S. Dist. LEXIS, at *14-15 (rejecting plaintiff's argument that severing the Doe defendants would prevent plaintiff from being able to enforce its copyright.)  That many ISPs do not retain accurate records which may thwart plaintiff's efforts to identify significant numbers of infringing defendants is immaterial to this court's analysis of the propriety of permissive joinder under the Federal Rules of Civil Procedure. Likewise, plaintiff's desire to keep its litigation costs low also fails to persuade the court that severance is inappropriate. As one court stated:

> Plaintiff's motive for seeking joinder, therefore, is to keep its own litigation costs down in hopes that defendants will accept a low initial settlement demand. However, filing one mass action in order to identify hundreds of Doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for.

*IO Group, Inc. v. Does 1-435*, No. C-10-04382-SI, 2011 U.S. Dist. LEXIS 14123, *9 (N.D. Cal. Feb. 3, 2011).  The court also rejects plaintiff's argument that allowing this case to proceed with 23 joined defendants is more efficient than filing 23 separate actions. As the court in *Hard Drive Prods., Inc.* explained:

-9-

> [E]ven though they may be separated by many miles and have nothing in common other than the use of BitTorrent, each defendant must serve each other with all pleadings–a significant burden when, as here, many of the defendants will be appearing pro se and may not be e-filers. Each defendant would have the right to be at each other defendant's deposition –creating a thoroughly unmanageable situation. The courtroom proceedings would, in effect, require a mini-trial. These burdens completely defeat any supposed benefit from the joinder of all Does in this case[.]

809 F. Supp. 2d at 1164.

While some district courts have determined that the joinder issue should be addressed after the ISPs have provided the Doe defendants' identifying information, the court disagrees with these decisions. *See Voltage Pictures, LLC v. Vazquez*, No. 10-00873, 2011 WL 5006942, *7 (D.D.C. Oct. 20, 2011); *Patrick Collins, Inc. v. John Does 1-33*, No. 11-cv-02163, 2012 WL 415424, *3 (D. Colo. Feb. 8, 2012) (denying without prejudice motion to sever because joinder did not prejudice any of the Doe defendants who had not yet been served with a copy of the complaint); *Call of the Wild v. Does 1-1,062*, 770 F. Supp. 2d at 344. The court agrees with the reasoning in *Artista Records, LLC v. Does 1-11*, No. 1:07-cv-2828, 2008 U.S. Dist. LEXIS 90183, *12 (N.D. Ohio Nov. 3, 2008). While *Artista Records* involves alleged copyright infringement utilizing P2P protocols prior to the advent of BitTorrent, this does not change the analysis.

Rule 21 provides that a court, on motion or on its own, may "at any time, on just terms, add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. As the court finds that the Doe defendants have been improperly joined, allowing plaintiff to proceed with its lawsuit until the Doe defendants have been identified will pervert the joinder rules. *Artista Records, LLC*, 2008 U.S. Dist. LEXIS, at *15. "Postponing a decision on joinder in lawsuits similar to this action results in lost revenue of perhaps millions of

dollars and only encourages Plaintiffs and other members of the [Recording Association of America] to join (or misjoin) as many doe defendants as possible." *Id.* at *17 (citing *Sony BMG Music Entm't v. Does 1-5*, No. CV 07-2434-SJO (C.D. Cal. Aug. 29, 2007)).

Further, it cannot be ignored that the nature of P2P file sharing infringement cases inevitably produces varying defenses that require severance. Many courts have recognized that the ISP may produce identifying information associated with the individual who opened the account for internet service, rather than the individual who uses the internet connection for illegal purposes. *See K-Beech, Inc. v. John Does 1-41*, 2012 U.S. Dist. LEXIS, at *12-13. "For example, 'ISP subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's works.'" *Id.* at *13 (citing *Third Degree Films v. Does 1-3,577*, No. C-11-02768-LB, 2011 U.S. Dist. LEXIS 128030, *4 (N.D. Cal. Nov. 4, 2011)).

### B.    Rule 45(c)(3)

Defendant Doe moves to quash the subpoenas served upon his ISP, as well as those served on the other Doe defendants' ISPs. Under Rule 45(c)(3), this court must modify or quash a subpoena that: (1) fails to allow a reasonable time to comply, (2) requires a non-party to travel more than 100 miles from where that person resides, is employed, or regularly transacts business, (3) requires disclosure of privileged or other protected matter that is not subject to an exception or waiver, or (4) subjects a person to undue burden. *See* Fed. R. Civ. P. 45(c)(3)(A). A court may modify or quash a subpoena if it requires disclosure of (1) confidential information, (2) an unretained expert's opinion or (3) requires a non party to incur substantial expense to travel more than 100 miles to attend trial. *See* Fed. R. Civ. P. 45(c)(3)(B).

-11-

Defendant Doe does not argue that any of the factors requiring or permitting this court to quash the subpoenas apply. He has not asserted that complying with the subpoenas requires disclosure of confidential or privileged information or is unduly burdensome. Rather defendant's argument relies solely on the assertion that defendants have been improperly joined in this matter. However, the court quashes the subpoenas served upon Doe defendants 2-23s' ISPs as those defendants are no longer in this action. The subpoena served upon Doe defendant 1's ISP remains in effect. Should plaintiff decide to file separate individual actions against Doe defendants 2-23, plaintiff may move for leave to file a third party subpoena prior to Rule 26(f) conference in those actions.

IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Defendant John Doe's Motion to Quash in part and to Sever [#5]. The court hereby severs and dismisses from this action Doe defendants 2-23, except Doe defendant 1 associated with the IP address 71.238.74.7 (the first Doe listed on exhibit A to the complaint). The subpoena served upon Doe defendant 1's ISP remains in effect. All of the subpoenas seeking discovery regarding Doe defendants 2-23 are ordered QUASHED. Plaintiff SHALL IMMEDIATELY notify the ISP recipients of these subpoenas that said subpoenas have been quashed and that the Doe defendants (except for Doe 1) have been severed from, and are not litigants in this case.

Civil Action 2:11-cv-15231 is hereby assigned to Doe 1 as an individual defendant. Plaintiff may file individual complaints against Doe defendants 2-23. Such cases will be

-12-

assigned separate civil action numbers.

    SO ORDERED.


Dated:  March 26, 2012

                              S/George Caram Steeh
                              GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE

---

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 26, 2012, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---

-13-

Please Recycle

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments.

# PRIORITY MAIL

**UNITED STATES POSTAL SERVICE**

U.S. POSTAGE
PAID
ANN ARBOR, MI
48103
JAN 16, 13
AMOUNT
**$6.80**
00072297-05

1005    48226

Mailing Envelope

Visit us at usps.com

**INTERNATIONAL RESTRICTIONS APPLY:**

Customs forms are required. Consult the
International Mail Manual (IMM) at pe.usps.gov
or ask a retail associate for details.



## PRIORITY MAIL®
**UNITED STATES POSTAL SERVICE**

For Domestic
and International Use

From   John Doe (50.4.160.247)
LZ Roog @ outlook.com
111E. 9 mile RD   Hazel Park MI 48030

**TO**   Clerk's office
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd. Room 564
Detroit MI 48226

Label 228, January 2008

Country of Destination: /Pays de destination:



PS00000000013

TYVEK® IS RECYCLABLE.
©2005. DUPONT™ AND TYVEK® ARE TRADEMARKS OF DUPONT.

PLEASE PRESS FIRMLY

Schedule package pickup right from your home o
Print postage online — Go to usps.com/postageo.

DELIVERY CONFIRMATION ™

United States Postal Service®

0311 3250 0001 4022 4458

EP14  SEPT 2012
Outer Dimension: 11.625 x 15.125

**PRIORITY MAIL**®
UNITED STATES POSTAL SERVICE

Mailing Envelope
Visit us at usps.com

PS00000000013