# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# <u>SOUTHERN DIVISION</u>

| | |
|---|---|
| **AF HOLDINGS, LLC,**<br><br>    Plaintiff,<br><br>    v.<br><br>**MATTHEW CICCONE**,<br><br>    Defendant. | Civil Action No.<br>2:12-cv-14442-GKD-MJM<br><br>Hon. Gershwin A. Drain<br>United States District Judge<br><br>Hon. Mona K. Majzoub<br>United States Magistrate Judge |

JONATHAN W. TAPPAN (P72195)
JONATHAN W. TAPPAN, PLLC
Attorney for the Plaintiff
2549 Somerset Blvd.
No. 102
Troy, MI 48084
248-622-0206
Email: tappanj@comcast.net

JOHN T. HERMANN (P52858)
LAW OFFICES OF JOHN T. HERMANN PC
Attorney for Multiple Intervenors
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-9291
Email: JTHermanos@Earthlink.net

KENNETH M. MOGILL (P17865)
MOGILL, POSNER & COHEN
Attorneys for Movant J. Doe
27 E. Flint Street; 2nd Floor
Lake Orion, MI 48226
248-814-9470
Fax: 248-814-8231
Email: kmogill@bignet.net

BERNARD J. FUHS (P69621)
BUTZEL LONG
Attorney for Defendant Matthew
Ciccone
150 W. Jefferson; Suite 100
Detroit, MI 48226-4430
313-225-7000
Fax: 313-225-7080
Email: fuhs@butzel.com

JENNIFER A. DUKARSKI (P74257)
BUTZEL LONG
Attorney for Defendant Matthew
Ciccone
350 South Main Street
Suite 300
Ann Arbor, MI 48104
734-995-3110
Fax: 734-995-1777
Email: dukarski@butzel.com

**MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* <u>AF Holdings v. Ciccone</u>, No. 2:12-cv-14442 (E.D. Mi.).

ERIC C. GRIMM (P58990)
WILLIAMS | HUGHES, PLLC
Attorneys for Intervenors WOW
Subscriber Alpha, WOW Subscriber
Beta, and Charter Subscriber Alpha
120 West Apple Avenue
P.O. Box 599
Muskegon, MI 49443-0599
231.728.1111
Fax: 231.727.2111
Email:
ecgrimm@williamshugheslaw.com

**MOTION OF WOW SUBSCRIBER ALPHA, WOW SUBSCRIBER BETA, AND CHARTER SUBSCRIBER BETA, FOR LEAVE TO INTERVENE, MOTION FOR SUSPENSION OF DISCOVERY ORDER (R.E. No. 11) TO PRESERVE *STATUS QUO ANTE*, MOTION TO QUASH, AND LR 1.2 MOTION FOR IMMEDIATE CONSIDERATION**

Intervening interested cable subscribers Charter Subscriber Alpha, WOW Subscriber Alpha, and WOW Subscriber Beta, through counsel, respectfully move for four things.

First, the moving subscribers move for leave to intervene. They have not been sued, but substantial rights and interests of each of them – especially personal interests in privacy and due process – imminently are threatened with palpable and irreparable harm. Once the shaving cream of identity disclosure is out of the can, it is practically impossible to get it back in. E.g., Mick Haig Productins, E.K.v. Does 1-670, 687 F.3d 649 (5th Cir. 2012) (offering a practical illustration of the mischief that can be wrought, once a cable company releases subscriber identity information to counsel for a pornography company pursuing a "strategy of suing anonymous internet users for allegedly downloading pornography illegally,

**MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* AF Holdings v. Ciccone, No. 2:12-cv-14442 (E.D. Mi.).

-2-

using the powers of the court to find their identity, then shaming or intimidating them into settling for thousands of dollars—a tactic . . . employed all across the state and that has been replicated by others across the country").

The moving cable subscribers are not alone in being imminently threatened with irreparable harm. Imminent and irreparable harm is threatened – this week – against all 300 or so of the targets of the subpoenas issued in this case, seeking the identities of unrepresented non-parties, apparently without the knowledge or approval of <u>any</u> of the unrepresented non-parties.

Second, the moving cable subscribers respectfully pray for this honorable Court at least temporarily to suspend its previously-issued order (Record Entry No. 11), so as to preserve the *status quo ante* until such time as the Court can consider carefully the motions to quash that already are on file, and such other motions to quash as may be filed (including, in more detail, by these moving subscribers) in the near future.

Indeed, each of these <u>cable subscribers</u> (a different term than "Does" – and used for a reason), already is preparing a more detailed motion to quash, adding to the arguments already ably made on behalf of several clients by Attorney Hermann.

The moving subscribers each reserve the right in the near future to file such supplemental motions. In the meantime, to the extent permitted by the Court, the moving cable subscribers respectfully adopt by reference the motion(s) and arguments filed by Mr. Hermann, and ably argued by him, and move to quash the subpoenas.

These moving parties not only move to quash the subpoenas as to their own

-3-

**MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* <u>AF Holdings v. Ciccone</u>, No. 2:12-cv-14442 (E.D. Mi.).

personally-identifiable information, but also as to the information of **all** cable subscribers targeted by the three subpoenas issued in this case.

The subpoenas in this case are not actually about the legitimate use of court discovery processes to resolve a particular dispute involving Matthew Ciccone, in the manner authorized by the Federal Rules of Civil Procedure. Indeed, both sides of the dispute involving Ciccone appear to be quite eager to get this case off the Court's docket (although AF Holdings also has an unrelated agenda of also walking away with a "call list" or "customer list" of targets, for extra-judicial activity, to be put to extrajudicial use after the suit is dropped by AF Holdings).

Here, the subpoenas represent yet another questionable technique (in place of several other strategies that are failing in courts all over the country) to <u>harvest</u> non-party targets – to be called indiscriminately (innocent and putative infringer alike) and subjected to a so-called "enforcement" and litigation threat process resembling the practices of the consumer debt collection industry – that is calculated by an entity calling itself Prenda Law to be maximally extra-judicial and minimally court-supervised. Under these circumstances, the subpoenas ought to be quashed in their entirety as to all subscribers, and the moving subscribers respectfully so move.

Finally, the moving subscribers have no choice, but to move, pursuant to Local Rule 1.2, for immediate consideration, and for immediate temporary relief.

The metaphorical shaving cream leaves the can, so to speak, on January 25, 2013, and as to a substantial portion of the persons adversely impacted by disclosure, the harm will

**MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* AF Holdings v. Ciccone, No. 2:12-cv-14442 (E.D. Mi.).

become effectively irreparable on January 25, 2013.

That is, the harm will become irreparable unless this honorable Court, in the meantime, issues an order temporarily suspending its prior discovery order (Record Entry 11), thereby temporarily relieving the ISPs from subpoena compliance.

We pray that this honorable Court, at least on a temporary basis, give itself enough time to consider all the issues with care, and protect the adversely impacted cable subscribers from irreparable harm in the interim. A temporary order such as this one, will cause no harm at all to the Plaintiff, because it will reasonably be limited in duration, and the denial of third-party discovery will only become permanent, if at all, after the Court has had a full and fair opportunity to review the merits of the Plaintiff's efforts to take third-party discovery.

Accordingly, the moving cable subscribers respectfully move for this honorable court reasonably to preserve the *status quo ante*, until such time as the Court can consider with care whether shotgun mass-discovery (something that dozens of courts all over the country have refused to permit) ought to be allowed under the guise of a "joint motion" that was filed without consulting, to our knowledge, <u>any</u> of the adversely impacted cable subscribers, rather than Matthew Ciccone himself (who is not among those targeted by the subpoena).

We have sought the consent of counsel for AF Holdings, to the relief requested in this motion, and counsel for AF Holdings has informed us that a California attorney who has not entered an appearance in this case, has not filed a *pro hac vice* motion, and who has not sought admission under Local Rule 83.20, has instructed counsel of record not to agree to the requested relief.

-5-

**MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* AF Holdings v. Ciccone, No. 2:12-cv-14442 (E.D. Mi.).

PRAYER FOR RELIEF

The moving cable subscribers respectfully pray for the relief specifically requested in this motion.

Dated:	January 23, 2013	Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　 /s/ Eric C. Grimm
　　　　　　　　　　　　　　　　　　　　　ERIC C. GRIMM (P58990)
　　　　　　　　　　　　　　　　　　　　　WILLIAMS | HUGHES, PLLC
　　　　　　　　　　　　　　　　　　　　　Attorneys for Intervenors WOW Subscriber Alpha, WOW Subscriber Beta, and Charter Subscriber Alpha
　　　　　　　　　　　　　　　　　　　　　120 West Apple Avenue
　　　　　　　　　　　　　　　　　　　　　P.O. Box 599
　　　　　　　　　　　　　　　　　　　　　Muskegon, MI 49443-0599
　　　　　　　　　　　　　　　　　　　　　231.728.1111
　　　　　　　　　　　　　　　　　　　　　Fax: 231.727.2111
　　　　　　　　　　　　　　　　　　　　　Email:
　　　　　　　　　　　　　　　　　　　　　ecgrimm@williamshugheslaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
<u>SOUTHERN DIVISION</u>

| | |
|---|---|
| **AF HOLDINGS, LLC,**<br><br>        Plaintiff,<br><br>    v.<br><br>**MATTHEW CICCONE**,<br><br>        Defendant. | Civil Action No.<br>2:12-cv-14442-GKD-MJM<br><br>Hon. Gershwin A. Drain<br>United States District Judge<br><br>Hon. Mona K. Majzoub<br>United States Magistrate Judge |

**BRIEF IN SUPPORT OF
MOTION OF WOW SUBSCRIBER ALPHA, WOW SUBSCRIBER BETA,
AND CHARTER SUBSCRIBER BETA, FOR LEAVE TO INTERVENE,
MOTION FOR SUSPENSION OF DISCOVERY ORDER (R.E. No. 11) TO
PRESERVE *STATUS QUO ANTE*, MOTION TO QUASH, AND LR 1.2
<u>MOTION FOR IMMEDIATE CONSIDERATION</u>**

Intervening interested <u>cable subscribers</u> Charter Subscriber Alpha, WOW Subscriber Alpha, and WOW Subscriber Beta, through counsel, respectfully move for four things, more specifically described in the preceding motion.

The term <u>cable subscribers</u>, in this motion, is to be distinguished from the term "Does," and is used on purpose to distinguish the moving cable subscribers from the concept of a "Doe." To help illustrate the point that the mistake of confusing an <u>IP Address</u> with a <u>person</u> (in other words, to assume mistakenly that <u>all</u> traffic through a subscriber's cable account necessarily comes from that subscriber), we respectfully urge the Court to watch a brief clip from the NBC televison network, describing a federal law enforcement raid gone wrong in Sarasota, Florida. <u>See</u> < http://video.today.msnbc.msn.com/today/41985312

-7-    **MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* <u>AF Holdings v. Ciccone</u>, No. 2:12-cv-14442 (E.D. Mi.).

>. In the Sarasota case, the owner of a condominium overlooking the water – Malcolm Riddell – one day had his condominium raided by federal agents who, with firearms displayed, commenced questioning him about child pornography. It turns out that the federal officials mistakenly thought (and mistakenly persuaded a judge), that by obtaining the IP address from which downloads of illegal content were observed to occur, they had positively identified the cable subscriber (Mr. Riddell) as the porn trafficker – much to Mr. Riddell's surprise. Because Riddell had done nothing at all illegal.

As it turned out, the porn trafficking actually was being done by another person, completely without the knowledge or approval of Mr. Riddell. More than two city blocks away from Mr. Riddell's condominium, working from a boat in a marina, another man – reported in the press to be named Mark Brown, had acquired a signal from Mr. Riddell's wireless network, and was using Mr. Riddell's internet bandwith, completely without the knowledge of Mr. Riddell. This is not an anomlalous fact-pattern, but is merely a particularly striking illustration of a common mistake that is often made (especially by Prenda Law).

In truth, discovering the identities of cable subscribers is a completely different enterprise from nailing down the identities of the "Does" actually transmitting or receiving BitTorrent "packets" over the Internet. The reason that this difference makes perfect sense is that anybody smart enough to learn about BitTorrent, and how to use it, also is smart enough to figure out on their own (or to learn from a multitude of fora published on the Internet), never to use their own cable accounts to download content that might potentially

-8- **MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, in AF Holdings v. Ciccone, No. 2:12-cv-14442 (E.D. Mi.).

trigger litigation. With this reality in mind, it is hardly surprising that a large portion of the subscribers whose addresses are sought, simply are not the downloaders.

When Prenda Law is pursuing so-called "enforcement" activity, without judicial supervision, by cold-calling cable subscribers whose identities have been harvested, they have no real financial incentive to be careful in distinguishing innocent cable subscribers from actual downloaders, and every financial incentive to be careless and indiscriminate.

Moreover, Prenda Law and other lawyers engaging in what has come to be termed the "copyright troll" business, routinely propagate the myth that innocent subscribers can be sued for thousands of dollars for "negligence," and therefore also ought to be shaken down for payment, whether or not they actually did any thing to violate the Copyright Act.

Many subscribers who have done absolutely nothing wrong (and, indeed, there neither is nor ought ever to be any law against operating an open wireless node),[1] when contacted by Prenda Law or similar porn litigation mills, and threatened with the burdens of litigation, decide that the least expensive approach is simply to pay a substantial-but-still-affordable sum of money (perhaps the price of 20 or 50 DVDs at retail) to make the problem go away, and to make the harassing phone calls cease.

Internet reports about settlement amounts vary from $750.00 to $2200.00, but we have heard suggestions that accused "Does" now can get a <u>much</u> better deal than even $750.00,

---

[1] Even cable subscribers who use encryption and a password, to activate WEP or WPA security on a wireless network, are vulnerable to having their networks used by strangers, without their knowledge or permission. Software such as Aircrack NG is widely available, free of charge, and relatively easy to use, that enables security on many wireless networks to be bypassed in a matter of seconds.

-9- **MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, in <u>AF Holdings v. Ciccone</u>, No. 2:12-cv-14442 (E.D. Mi.).

merely by agreeing to a bunch of discovery involving third-parties that someone like Matthew Ciccone never has met, thereby enabling Prenda Law to secure disclosure of more subscriber identities from a cable company – which, in turn, feeds a new list of targets back into the shakedown mill. Who would defend against such a threatened case, at a lawyer's hourly rate, when instead a target simply can make the threats and phone calls go away for a modest payment? Especially considering the discount reportedly available for throwing 300 strangers – roughly a half of them, we estimate, completely innocent – under the bus by agreeing to discovery of the strangers' identities, wouldn't the temptation be strong to make the problem someone else's problem?

The Court may have noticed that we have mentioned something called Prenda Law several times – and this reference may be puzzling initially. After all, the lawyer entering an appearance for AF Holdings,[2] does not identify himself as a member or associate of Prenda Law (and indeed, he informs us he is not an employee or owner of this firm).

Nevertheless, at least as of the time of the filing of this motion, the Prenda Law Website, <http://wefightpiracy.com/suits-against-individuals.php>, lists "Matthew Ciccone - 2:12-CV-14442-GAD-LJM (MI)," as among the Prenda firm's active matters. This is

---

[2]There appear to be some genuine questions about the corporate formation, if any, of AF Holdings (including whether "AF Films, LLC" is the same thing as the Plaintiff), and about any signature purporting to be that of "Alan Cooper" on Exhibit B to the Plaintiff's Complaint. A self-represented movant (identified only as 50.4.160.247), has done a commendable job of identifying some of these questions. Pages 16-17 (Exhibit 1) of Docket Entry No. 23, in particular, reasonably calls into question the legal viability of the Plaintiff. WOW Subscriber Beta, and counsel, do not as yet take a firm position one way or the other as to the reasonable questions posed by Pages 16-17 of Docket Entry No. 23, but we respectfully suggest that further investigation and inquiry by counsel and further interrogation by the Court about these subjects would be warranted.

**MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* AF Holdings v. Ciccone, No. 2:12-cv-14442 (E.D. Mi.).

somewhat confusing, and we reasonably hava a few questions about why Prenda Law would report on its Website that this case is one of its cases, while at the same time not bothering to follow the Local Rules concerning attorney appearances, and admission to practice locally. Those rules are there for a reason. We respectfully suggest that these Local Rules have been flagrantly violated by Prenda Law, for the exact same reason that those rules were established in the first place.

Moreover, when the Complaint initially was filed in this case, the telephone number on the Complaint, was in the 415 area code, and does not appear to have been the actual phone number of Michigan attorney Jonathan Tappan. That phone number, interestingly, does happen to be associated with a California lawyer named Brett Gibbs – which perhaps is not surprising because Mr. Tappan also listed an email address, on the pleading that initiated this case, that also appears to redirect to Mr. Gibbs.

Interestingly enough, neither Mr. Gibbs, nor anyone else from the Prenda Law firm,[3] filed a *pro hac vice* motion in this case, entered an appearance on behalf of AF Holdings, or sought admission to the Eastern District of Michigan, under the Local Rules.

Then again, we also recently brought to Mr. Tappan's attention, a rather remarkable transcript from a court hearing, in which a federal judge in Florida had many questions for Prenda Law and persons associated with Prenda Law. Mr Tappan, we are informed in an email from him, agrees that this honorable Court ought to have the benefit of reviewing the

---

[3]The Prenda Law firm, appears to be a successor to a firm called Steele Hansmeier, which started in Chicago, and that has an interesting history in the Illinois courts. This subject, while worthy of further exploration, probably can await a later time.

-11-

**MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* AF Holdings v. Ciccone, No. 2:12-cv-14442 (E.D. Mi.).

Florida transcript for itself.  So, attached for the Court's convenience and perusal, is what we understand to be a transcript of a hearing conducted on November 27, 2012, before the Hon. Mary S. Scriven, in <u>Sunlust Pictures v. Nguyen</u>, No. 12-cv-1685, a case in the Tampa Division of the U.S. District Court for the Middle District of Florida.  Our efforts to confirm the authenticity of this transcript by downloading a comparison copy off of PACER, have been delayed until February 28, 2013, because downloads *via* PACER, are restricted by a court procedure until that date.  Accordingly, we acknowledge that presently we are utilizing an unofficial source for what appears to be the transcript.  We reserve the right, however, to secure and submit an official copy that can be reliably verified.

Additionally, we respectfully believe, based on some initial and tentative investigation, that additional questions are warranted about the relationship between Prenda Law, John Steele, and the purported "client" bringing this action – AF Holdings.

In a different filing by one of the other moving parties in this case – pages 16-17 of Docket Entry 23, a letter appears, that leads us to want to ask many more questions about AF Holdings and its corporate formation, if any, among other issues.  We have contacted the attorney authoring the "Alan Cooper" letter by telephone, and the attorney confirms verbally that it is authentic and that he continues to believe the contents of the letter to be reliable.  At this stage, we simply flag the issue for further inquiry, as our understanding is presently incomplete.  But we think it would be more than fair and reasonable, when a hearing is held in this matter, for this honorable Court to ask questions of its own, in an effort to clear up at least some of the apparent irregularities in this case.

-12-

**MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* <u>AF Holdings v. Ciccone</u>, No. 2:12-cv-14442 (E.D. Mi.).

In many instances, in the mass pornography copyright lawsuits filed all over the country, the big secret rarely if ever revealed to courts by the plaintiffs bringing these actions, is that even if the identity of a particular cable subscriber is revealed, the identity of any "Doe" who allegedly infringed a copyright, often still will remain permanently unknowable.

Again, anyone with enough technical know-how to learn about BitTorrent, and to install and learn to use software implementing the BitTorrent protocol, generally speaking will also be smart enough to figure out on their own (or with the help of widespread advice from others) not to use their own Internet connection to download content that presents potential copyright problems. BitTorrent, of course, is regularly used for a myriad of perfectly legal uses, and the protocol or software implementing it, is not the problem. But to the extent that Bit Torrent, apart from perfectly legal uses, also is used to exchange works in potential violation of the Copyright Act, often users will employ strategies to evade detection – and it just turns out that innocent cable subscribers who did not download the content in question (and who often never have heard about BitTorrent), wind up receiving letters from the ir Internet Service Providers, followed sometimes by unwelcome attention from Prenda Law and similar shakedown mills.

The moving subscribers (like about 300 others, a number of whom already have filed motions to intervene and to quash), have received notice from their Internet service providers ("ISPs") that the ISPs have been served with a subpoena, and that the subscribers' identities – on January 25, 2012 – are about to be disclosed to Johnathan Tappan or to some other

-13-

**MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* AF Holdings v. Ciccone, No. 2:12-cv-14442 (E.D. Mi.).

person (perhaps Mr. Gibbs, the California lawyer who has neither filed a *pro hac vice* motion, nor sought admission to practice in the Eastern District of Michigan) purporting to represent AF Holdings, to fuel another round of "enforcement" activity that is purposely structured by Prenda Law to minimize judicial supervision over what is done with the identities of cable subscribers, once disclosed.

Three such subpoenas have been served – one to Wide Open West, one to Charter, one to Comcast. One such ISP has indicated verbally to counsel on the telephone that the ISP will voluntarily suspend the disclosure of <u>all</u> subscribers' information, until the already pending motions to quash can be decided, so as to preserve the *status quo ante*, and to enable this honorable Court to take the time to consider carefully the important issues raised in the motions to quash.

The other two cable companies have taken the view that the Court itself must take action, and must first suspend its own Order (Record Entry No. 11), in order to preserve the *status quo ante*, and to enable the Court to consider whether the subpoena ought to be quashed as to **all 300** of the cable subscribers who are the targets of the peculiar discovery request jointly filed only by Matthew Ciccone's lawyer, and by Mr. Tappan.

To be on the safe side, we respectfully suggest that the most prudent course, is to suspend the discovery order (Record Entry 11), and all three subpoenas, so as to preserve the *status quo ante*, until such time as this honorable Court can conduct a hearing, review all the filings, interrogate counsel for both sides, and get to the bottom of what is really going on here.

-14-   **MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* <u>AF Holdings v. Ciccone</u>, No. 2:12-cv-14442 (E.D. Mi.).

Needless to say, neither Mr. Ciccone's lawyer, nor Mr. Tappan, nor Mr. Ciccone himself, ever was appointed by any of the <u>cable subscribers</u> making this motion, to purport to represent – or to sign away – these cable subscribers' rights and interests.

None of them ever was consulted by Mr. Ciccone or either of the lawyers. It is, in our view, something of a misnomer – or, at the very least, less than fully candid – for counsel to have described the motion previously filed (Record Entry No. 10) as "stipulated" or "joint."

In truth, it simply wasn't stipulated-to by any of the subscribers whose privacy and due process rights are in imminent jeopardy, because the persons most directly and adversely impacted by this motion never were asked their opinion about what Ciccone and Tappan (and, apparently, Gibbs, and perhaps Steele) proposed to do.

We are aware of several court decisions – decided in the early stages of the tidal wave of mass pornography torrent litigation – that took the premature view that cable subscribers whose accounts appeared to be associated with traffic that raised the porn plaintiffs' ire, must be copyright violators, and that copyright violators who are getting sued as "Does" really ought not to have their privacy protected.

But, the trend in the law (Mr. Hermann's briefs are helpful on this point) is in the other direction – both against the mass aggregation of copyright allegations, and against the mass aggregation of identity discovery. This case is different from the early cases in that none of the subpoenas in this lawsuit actually seek to discover the identity of any <u>party</u> accused of any copyright infringement. Mr. Ciccone's identity already is known, and not a single "Doe" was sued in this case. No allegations of copyright infringement against anyone

-15-

**MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* <u>AF Holdings v. Ciccone</u>, No. 2:12-cv-14442 (E.D. Mi.).

other than Ciccone actually have been properly pleaded.

Rather, this case is different, in that Mr. Ciccone's cooperation is being used (in a manner that can reasonably be viewed as questionable) as a vehicle to obtain the identities of <u>non-parties</u>. Moreover, these non-patties, in calculated manner, were not consulted and their interests were not represented, when a "joint" motion purportedly was filed.

Moreover, as time has gone on, courts have become better-informed about the widespread problem of "false positives" – people who have never done any download – who are still being subjected to threats of litigation (including continued assertions of "negligent infringement" even though no such cause of action exists, any state-law claim is necessarily pre-empted by the Copyright Act, and at least two courts already have summarily rejected this bogus and fraudulent theory).

It is a grave error – and turns the burden of proof upside-down – to presuppose that every cable subscriber whose IP address is listed in a mass pornography fishing expedition for new shakedown targets, automatically is guilty of porn piracy. A great many of them, actually, turn out not to be infringers, and ought not to be subjected to the ordeal of what amount to debt-collector phone calls, seeking to "monetize" the monitoring of BitTorrent traffic, using threats of having their names associated with pornography and infringement.

Under the circumstances, especially in light of the grave risk of "false positives," including of harrassment and mistreatment of the innocent, as well as the lack of judicial supervision over the "enforcement" practices of Prenda Law, not to mention the peculiar and intruguing questions about whether AF Holdings even exists, and why the attorneys who

-16-     **MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* <u>AF Holdings v. Ciccone</u>, No. 2:12-cv-14442 (E.D. Mi.).

appear to be actually running this case, have not actually entered an appearance – the motions to quash ought to be granted. They ought to be granted not only as to the subscribers who have filed motions to quash, but also as to everyone swept up in all three identity subpoenas issued in this case.

At a very minimum, we respectfully ask that this honorable Court take temporary action to preserve the *status quo ante*, and to give itself sufficient time to get all the facts.

The alternative – to subject a substantial number of innocent "false positives" to the tender mercies of the Prenda Law "enforcement" machine – amounts to irreparable harm to all the "false positives." Remedying the harm after disclosure occurs is tantamount in difficulty to getting expelled shaving cream back in the can.

The prudent course, under the circumstances, in order to make sure that the right decision is made, and everyone's rights are adequately protected – is to suspend discovery and all three subpoenas, until such time as the court can resolve the issues in an orderly manner.

Dated:        January 23, 2013              Respectfully submitted,

                                                                  /s/ Eric C. Grimm
                                                     ERIC C. GRIMM (P58990)
                                                     WILLIAMS | HUGHES, PLLC
                                                     Attorneys for Three Intervenors
                                                     120 West Apple Avenue
                                                     P.O. Box 599
                                                     Muskegon, MI 49443-0599
                                                     231.728.1111
                                                     Fax: 231.727.2111
                                                     Email:
                                                     ecgrimm@williamshugheslaw.com

**MOTION TO SUSPEND DISCOVERY ORDER, TO QUASH, AND FOR IMMEDIATE RELIEF**, *in* AF Holdings v. Ciccone, No. 2:12-cv-14442 (E.D. Mi.).

## CERTIFICATE OF SERVICE

      I certify that on January 23, 2013, I filed electronically this Motion to Intervene, Motion to Suspend Discovery Order, Motion to Quash, and Motion for Immediate Relief, with the Court's ECF system, which will automatically send notice to each of the following:

      Johnathan Tappan
      Bernard J. Fuhs
      Jennifer A. Dukarski
      John T. Hermann
      Kenneth M. Mogill

An electronic version of this filing also has been emailed to < Lz2009@outlook.com > – the email address for the movant self-identified as John Doe (50.4.160.247), but compliance with R8(e) of the Electronic Filing Policies and Procedures cannot presently be accomplished.

                                                __/s/ Eric C. Grimm_____
                                                ERIC C. GRIMM (P58990)
                                                WILLIAMS | HUGHES, PLLC
                                                Attorneys for Intervenors WOW Subscriber Alpha, WOW Subscriber Beta, and Charter Subscriber Alpha
                                                120 West Apple Avenue
                                                P.O. Box 599
                                                Muskegon, MI 49443-0599
                                                231.728.1111
                                                Fax: 231.727.2111
                                                Email: ecgrimm@williamshugheslaw.com