## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AF HOLDINGS LLC.,

Plaintiff,

vs.                                              Case No. 2:12-cv-14442

                                                 Hon. Gershwin A. Drain

MATTHEW CICCONE,

 Defendants.

_____

JONATHAN W. TAPPAN (P-72195)          BERNARD J. FUHS (P-69621)
Attorney for Plaintiff                Attorney for Defendant
2549 Somerset Blvd. #102              150 W. Jefferson, Ste. 200
Troy, MI 48084                        Detroit, MI 48226
(415) 325-5900                        (313) 225-7044

RICHELLE C. HALL (P53383)
Attorney for Intervening Party James Krueger
UAW Legal Services Plan
91 N. Saginaw St., Ste. 204
Pontiac, MI 48342
(248) 858-5850
_____

## MOTION TO INTEVENE IN ORDER TO QUASH SUBPOENA OR
## ALTERNATIVELY
## FOR ISSUANCE OF A PROTECTIVE ORDER

 Movant with IP address97.95.46.188 moves this court to intervene pursuant to Fed. R.

Civ. P. 24(a)&(b) in order to quash the subpoena served upon their Internet Service

Provider by Plaintiff, or in the alternative, for a protective order, for the reasons stated in

the accompanying Brief In Support pursuant to Fed. R. Civ. P. 26(C)(1).


Dated: January 25, 2013

s/ Richelle C. Hall
_____
RICHELLE C. HALL (P53383)
Attorney for Intervening Party
UAW Legal Services Plan
91 N. Saginaw St., Ste. 204
Pontiac, MI 48342
(248) 858-5850

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AF HOLDINGS LLC.,

Plaintiff,

vs.                                              Case No. 2:12-cv-14442

                                                 Hon. Gershwin A. Drain

MATTHEW CICCONE,

 Defendants.

_____

JONATHAN W. TAPPAN (P-72195)            BERNARD J. FUHS (P-69621)
Attorney for Plaintiff                  Attorney for Defendant
2549 Somerset Blvd. #102                150 W. Jefferson, Ste. 200
Troy, MI 48084                          Detroit, MI 48226
(415) 325-5900                          (313) 225-7044


RICHELLE C. HALL (P53383)
Attorney for Intervening Party
UAW Legal Services Plan
91 N. Saginaw St., Ste. 204
Pontiac, MI 48342
(248) 858-5850
_____

**BRIEF IN SUPPORT OF MOTION TO INTERVENE IN ORDER TO QUASH**
**SUBPOENA OR ALTERNATIVELY FOR ISSUANCE OF A PROTECTIVE**
**ORDER**


Dated: January 25, 2013


                              s/ Richelle C. Hall
                              _____
                              RICHELLE C. HALL (P53383)
                              Attorney for Intervening Party
                              UAW Legal Services Plan
                              91 N. Saginaw St., Ste. 204
                              Pontiac, MI 48342
                              (248) 858-5850

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES................................................................ 2

STATEMENT OF ISSUES PRESENTED ................................................. 3

STATEMENT OF CONTROLLING AUTHORITY ..................................... 4

I. OVERVIEW OF PLAINTIFF'S ABUSIVE LITIGATION TACTICS ...................... 5

II. FACTUAL BACKGROUND ........................................................ 9

III. HISTORY OF JOINING MULTIPLE DEFENDANTS IN ONE ACTION ............. 12

IV. STANDARD OF REVIEW ........................................................ 17

V. LAW AND ARGUMENT ........................................................ 17

   A. Movants Have Standing to Challenge the Subpoena .................................... 17

   B. Because and IP Address Does Not Identify The Person That
   Actually Engaged In the Alleged Activity, the Subpoenas Seeking
   the Personal Information Associated With the Movants Purported
   IP Address Should Be
   Quashed…………………..................................................................... 18

   C. Plaintiff Has Shown No Legitimate Purpose for Obtaining the
   Requested Information........................................................................... 20

   D. Plaintiff Is Improperly Attempting To Link Activity of Some 300
   IP Addresses Based On Entirely Separate And Independent Acts...................... 23

   E. Alternatively The Court Should Issue A Protective Order
   Restricting the Use Of The Requested Information For the Stated
   Purpose (i.e In Support Of Its Claims Of Contributory
   Infringement Against Mr. Ciccone) ................................................. 26

VI. CONCLUSION................................................................. 28

## <u>INDEX OF AUTHORITIES</u>

*AF Holdings, LLC v. Doe*, No. 12-cv-02048 (N.D. Cal. Nov. 6,2012) ........................... 8

*Accusoft Corp. v. Quest Diagnostics, Inc.*, No. 12-CV-40007(D. Mass. Apr. 18, 2012) 26

*Atlantic Recording Corporation, et al. v. Does 1-151*, No. A-04-CA-636 SS................ 24

*Austin v. Douglas G. Peterson & Assocs.*, 2012 U.S. Dist. LEXIS 91882 (2012) .......... 27

*Axel Braun Production v. Does 1-7,098*, (N.D.W.V. Dec. 23, 2010)............................. 26

*Balistrieri v. Holtzman*, 52 F. R. D. 23, 24-25 (E.D. Wis. 1971) ..................................... 8

*BMG Music v. Does 1-4, 2006* U.S. Dist. LEXIS 53237(N.D. Cal. July 31, 2006) .. 23,24

*BMG Music v. Does 1-203*, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004) ........................ 24

*Boy Racer; Inc. v. Does 1-60*, 3:11cv-01738.................................................................. 24

*Boy Racer, Inc v. Does 1-52*, 5:11-cv-02329 (N.D. Cal. Sept. 13, 2011)......................... 3

*Boy Racer v. Does 1-22*, No. 11-cv-2984, (C.D. Ill. May 9, 2011) .................................. 8

*Boy Racer, Inc v. Does 1-52*, 5:11-cv-02329 ................................................................... 8

*Boy Racer, Inc v. Does 1-71*, 5:11-cv-01958 ..................................................................15

*Boy Racer, Inc. v. Does 1-98*, U.S. Dist. LEXIS 11930, (N.D. Cal. Oct. 14, 2011)........ 17

*Combat Zone, Inc. v. Does 1-245*, (N.D.W.V. Dec. 16, 2010) ................................... 26,27

*CP Productions, Inc. v. Does 1-300*, 1:2010-cv-06255 (Colo.)..................................... 14

*Diabolic Video Productions, Inc v. Does 1-2099*, 5:10c-v-05865 ................................ 14

*Digital Sin, Inc. v. Does 1-176*, 2012 WL 263491 (S.D.N.Y. Jan. 30, 2012)............. 13,19

*Elektra Entertainment Group, Inc. et al. v. Does 1-11*, No. A-04-CA-703 LY.............. 24

*Firetrace USA, LLC v. Jesclard,* No. CV-07-2001(D. Ariz. Dec. 8, 2008).................... 27

*Funimation Entertainment v. Does 1-1337*, (N.D. TX. Feb. 10, 2011) ......................... 26

*Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 402 (1st Cir. 2005) .................... 27

*Hard Drive Prods. v. Does 1-48*, No. 11-cv-9062, (N.D. Ill. June 14, 2012) ................. 8

*Hard Drive Prods. v. Does 1-30*, No. 11-cv-345 (E.D. Va. Oct. 17, 2011) .................... 8

*In re BitTorrent Adult Film Copyright Litigation*, (E.D.N.Y. May 1, 2012) .....11,19,21,22

*In the Matter of DIRECT TV, INC..* 2004 U.S. Dist. LEXIS 24263 (N.D. Cal. Jul. 26,
004) …………………………………………………………………………………… 25

*Interscope Records v. Does 1-25*, 2004 U.S. Dist. LEXIS 27782(M.D. Fla. Apr. 1, 2004)
...,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, 24,25

*IO Group, Inc. v. Does 1-435*, 3:210-cv-04382 ............................................................ 12

*LaFace Records*, 2008 WL 544992 .......................................................................... 23,24

*Lightspeed v. Does 1-1000*, No. 10-C-560 (N.D. Ill. March 31, 2011).................... 20,26

*Malibu Media, LLC v. John Does 1–10*, (C.D. Cal. June 27, 2012) ............................... 11

*Mcintyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995).................................... 17

*MCGIP, LLC v. Does 1–149*, No. 2011 WL 4352110, (N.D. Cal. Sept. 16, 2011) ......... 13

*Millennium TGA, Inc v. Does 1-21*, 3:11-cv-02258 ....................................................... 15

*Millennium TGA, Inc. v. Doe, No. 10-cv-5603*, (N.D. Ill. Aug. 24, 2011) ...................... 3

*Millennium TGA, Inc. v. Comcast, No. 12-*mc-00150, (D.D.C. June 25, 2012) ............... 3

*New Sensations, Inc v. Does 1-1768*, 5:2010-cv-05864 .................................................. 15

*On the Cheap, LLC v. Does 1-501I*, Case No. ClOA472 (N.D. Cal. Feb. 3, 2011) .... 12,15

*Pacific Century International LTD v. Does, 1-101* 4:2011-cv-02533 …..................... 14,22

*Patrick Collins, Inc. v. Does 1-281*, 3: l0-cv-00091 (N.D. W.V. Dec. 16, 2010) ....... 15,26

*Patrick Collins, Inc. v. Does 1-45*, Case No.: 12-cv-3507 (Aug. 23, 2012) .................. 12

*Patrick Collins v John Doe 1-23*, 11:-cv-15231 (E.D. Mich. 2012) .......................... 16,17

*Patrick Collins v. John Does 1-58*, 3:11-cv-00531-JAG .................................................. 17

*Reno v. ACLU*, 521 U.S. 844, 870 (1997) ....................................................................... 17

*SBO Pictures, Inc. v. Does 1-3036*, (N.D. Cal. Nov. 30, 2011) ................................. 19,20

*Schering Corp. v. Caraco Pharm. Labs., Ltd.*, 2007 U.S. Dist. LEXIS 41020, (E.D. 2007)
................................................................................................................................................ 27

*Third Degree Films, v. Does 1-47* 1:12-cv-10761 (Dist. Mass. 2012) ............................. 8

*Third Degree Films, Inc. v. Does 1-108,* (D. MD. February 28, 2012) .......................... 18

*Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 .................... 24

*UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY) .............................. 24

*VPR Internationale vs. Does 1-1017*, 2:11-cv-02068 ................................................. 14,19

## **COURT RULES**

Fed R. Civ. P. 20(a) .......................................................................................................... 17

Fed R. Civ. P. 24(a) ........................................................................................................... 17

Fed R. Civ. P. 24(b) ........................................................................................................... 17

Fed R. Civ. P. 26 ........................................................................................................... 25,27

## STATEMENT OF ISSUES PRESENTED

I. DOES THE MOVANT HAVE STANTDING TO CHALLENGE THE SUBPOENA?

      Plaintiff Answers: No.
      Defendant Answers: Yes.
      Court Should Answer: Yes.

II. SHOULD THE SUBPONEA SEEKING THE PERSONAL INFORMATION ASSOCIATED WITH THE MOVANTS PUPORTED IP ADDRESS BE QUASHED SINCE IT DOES NOT IDENTIFY THE PERSON WHO ACTUALLY ENGAGED IN THE ALLEGED ACTIVITY?

      Plaintiff Answers: No.
      Defendant Answers: Yes.
      Court Should Answer: Yes.

III. HAS PLAINTIFF SHOWN A LEGITIMATE PURPOSE FOR OBTAINING THE REQUESTED INFORMATION?

      Plaintiff Answers: Yes.
      Defendant Answers: No.
      Court Should Answer: No.

IV. IS PLAINTIFF ATTEMPTING TO LINK THE ACTIVITY OF SOME 300 IP ADDRESSES BASED ON ENTIRELY SEPARATE AND INDEPENDENT ACTS?

      Plaintiff Answers: No.
      Defendant Answers: Yes.
      Court Should Answer: Yes.

V. SHOULD THE COURT ISSUE A PROTECTIVE ORDER RESTRICTING THE USE OF THE REQUESTED INFORMATION FOR THE PURPOSE STATED BY PLAINTIFF?

      Plaintiff Answers: No.
      Defendant Answers: Yes.
      Court Should Answer: Yes.

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

In accordance with L.R. 7.1(c)(2), Defendants state that the following are the most controlling and/or most appropriate authorities relevant to deciding the issues raised in its motion are contained in Patrick Collins v. John Does, 1-12, Case No. 11-cv-15231-GCS E.D. Mich. Opinion and Order to Show Cause Dated 04/02/12 (attached hereto as exhibit 2); Third Degree Films v. John Does 1-47, Case No. 12-10761-WGY Dist. Mass. Memorandum and Order Dated October 2, 2012, (attached hereto as exhibit 3); Patrick Collins Inc., v. John Does 1-15, Case No. 1:12-CV-618 W.D. Mich. Order Dated August 13, 2012, (attached hereto as exhibit 4); In Re Bit Torrent Adult Film Copyright Infringement Cases¸ Case No. 2:11-cv-03995-DRG E.D.N.Y. Order & Report & Recommendation Dated May 1, 2012, (attached hereto as exhibit 5)

## I. OVERVIEW OF PLAINTIFF'S ABUSIVE LITIGATION TACTICS

Over the past several years, Plaintiff's and/or their regional counsel (i.e. Prenda Law PLLC a successor in interest to the Chicago law firm Steele Hansmeier, PLLC)1 have utilized a variety of methods "harvest" the IP addresses of "swarm participants" who have downloaded and/or exchanged various pornographic films that were allegedly owned by Plaintiff's. In 2010, Steele Hansmeier began filing hundreds of John Doe lawsuits in order seek expedited discovery so that they could issues against various internet service providers forcing them to identify the names and address of the accountholders associated with the IP address of the "swarm participants." In their complaints, Plaintiff's relied on the declaration of Peter Hansmeier (a Minnesota attorney who is the bother of Paul Hansmeier – a principal of Steele Hansmeier, PLLC) as its "technical expert" responsible for monitoring and detection of online piracy of Plaintiff's pornographic films. (Dkt. 10-2)

Once they have gathered the information, Plaintiff's employ regional "call centers" or "settlement shops" whose representatives demand thousands of dollars in settlement regardless of whether the named accountholder is the actual infringer. Plaintiff's representatives also utilize the nature of the alleged download (i.e. pornographic material) as an additional measure to threaten individuals into paying the settlements – emphasizing that the accountholder wouldn't want their friends, family, and/or employer to know that they were illegally downloading pornographic materials. One media outlet reports that more than 220,000 individuals have been sued since 2010

---

1In April of 2012 Steele Hansmeier, PLLC sold its book of business to Prenda Law, PLLC which included the names and address of thousands of individuals that it had acquired in response to the various John Doe lawsuits filed on behalf of its adult entertainment clients.

in mass BitTorrent lawsuits, many of them based upon alleged downloading of pornographic works.2

Recently, the courts have begun to question the manner and methodology in which Plaintiff's and/or their counsel have been pursuing their claims of copyright infringement. In particular a number of federal district courts have found that Prenda Law and its clients have abused the court system by (1) improperly joining numerous Doe defendant's into single a single action; (2) engaging in abusive litigation tactics; (3) harassing individuals with insufficient evidentiary support into coerced settlements; (4) collusive agreements with defendants in exchange for their cooperation in allowing them to obtain the address and/or information of other potential victims. In this district alone, the courts have been inundated with a multitude of similar John Doe lawsuits filed by similar Plaintiffs who are the registered copyright owners for a variety of pornographic films.3

Such adult film companies have cluttered the courts with lawsuits filed without a good faith intent to litigate on the merits, in pursuit of potentially extortionate

---

2See http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk

3Nucorp Ltd. v. Does 1-9, Case No. 2:11-cv-15194-SJM; Nucorp Ltd. v. Does 1-24, Case No. 2:11-cv-15222-BAF; Guava LLC v. John Doe, Case No. 2:12-cv-14441-GCS; Third Degree Films v. Does 1-36, Case No. 1:11-cv-15200-SJM; Malibu Media, LLC v. Does 1-46, Case No. 2:12-cv-12584-SFC; Malibu Media, LLC v. Does 1-13, Case No. 2:12-cv-12586-PJD; Malibu Media, LLC v. Does 1-9, Case No. 2:12-cv-12587-DPH; Malibu Media, LLC v. Does 1-10, Case No. 2:12-cv-12591-SJM; Malibu Media, LLC v. Does 1-6, Case No. 2:12-cv-12593-SJM; Malibu Media, LLC v. Does 1-43, Case No. 2:12-cv-12597-BAF; Malibu Media, LLC v. Does 1-28, Case No. 2:12-cv-13311-LPZ; Malibu Media, LLC v. Does 1-30, Case No. 2:12-cv-13312-DPH; Malibu Media, LLC v. Does 1-15, Case No. 2:12-cv-13667-GCS; Malibu Media, LLC v. Does 1-31, Case No. 2:12-cv-13668-LPZ; Malibu Media, LLC v. Does 1-38, Case No. 2:12-cv-13669-LPZ; Malibu Media, LLC v. Does 1-42, Case No. 2:12-cv-14105-VAR; Malibu Media, LLC v. Does 1-28, Case No. 4:12-cv-12598-GAD; Patrick Collins, Inc. v. Does 1-28, Case No. 1:12-cv-13670-TLL; Patrick Collins, Inc. v. Does 1-23, Case No. 2:11-cv-15231-GCS; Patrick Collins, Inc. v. Does 1-21, Case No. 2:11-cv-15232-DPH; Patrick Collins, Inc. v. Does 1-30, Case No. 2:11-cv-15236-PDB; Patrick Collins, Inc. v. Does 1-21, Case No. 2:12-cv-12596-AJT; Patrick Collins, Inc. v. Does 1-12, Case No. 2:12-cv-13310-AJT; Patrick Collins, Inc. v. Does 1-27, Case No. 4:11-cv-15237-MAG; Patrick Collins, Inc. v. Does 1-33, Case No. 4:12-cv-13309-GAD.

settlements. See Third Degree Films v. Does 1-47, No. 12- cv-10761, 2012 U.S. Dist.

LEXIS 142079, at *1-4 & *33-34 (D. Mass. Oct. 2, 2012) (providing examples of

extortionate litigation tactics in recent cases by "copyright trolls," including many of

Prenda's clients); See also id. at *35, 36 (imposing protective measures to ensure plaintiff

was not suing to "obtain the defendants' information and coerce settlement with no intent

of employing the rest of the judicial process") As a result, Prenda (AF Holdings regional

attorneys) have exploited these tactics with abandon as one of the country's most

notorious and vexatious copyright troll plaintiff law firms, and have been repeatedly

reprimanded for using improper litigation tactics.4 Recent media coverage of the firm's

seamier aspects is also extensive.5

---

4 See, e.g., AF Holdings, LLC v. Doe, No. 12-cv-02048, 2012 U.S. Dist. LEXIS 159259, at *4 (N.D. Cal. Nov. 6,2012) (denying plaintiff leave to amend, citing apparent bad faith of plaintiff's counsel Prenda); Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC, No. 12-mc-00150, 2012 U.S. Dist. LEXIS 88369, at *23-24 (D.D.C. June 25, 2012) (reviewing Prenda's "intimidating tactics and oppressive demands"); Hard Drive Prods. v. Does 1-48, No. 11-cv-9062, 2012 U.S. Dist. LEXIS 82927, at *14-16 (N.D. Ill. June 14, 2012) (discussing court's discomfort with Prenda's litigation strategy and raising specter of Rule 11); Hard Drive Prods. v. Does 1-30, No. 11-cv-345, 2011 U.S. Dist. LEXIS 119333, at *4 n.2 (E.D. Va. Oct. 17, 2011) ("District judges have begun recognizing [John] Steele's representation of these [adult film] companies against multiple Doe Defendants, named without sufficient evidence as to their involvement, as 'effort[s] to shoot first and identify his targets later.'") (quoting Boy Racer v. Does 1-22, No. 11-cv-2984, 2011 U.S. Dist. LEXIS 49557, at *1 (C.D. Ill. May 9, 2011)); Millennium TGA, Inc. v. Doe, No. 10-cv-5603, 2011 U.S. Dist. LEXIS 94746, at *5 (N.D. Ill. Aug. 24, 2011) ("The court will initiate sanctions proceedings should it determine that plaintiff's counsel [John Steele] has failed to meet his obligations under Rule 11."); Boy Racer, Inc. v. Does 1-52, No. 11-cv-02329, 2011 U.S. Dist. LEXIS 103550, at *9 (N.D. Cal. Sept. 13, 2011) (discussing inconsistent representations by Prenda attorney Brett Gibbs; "The court cannot tolerate such legerdemain.").

5See, e.g., Timothy B. Lee, Porn trolling firm dogged by identity theft allegations: Prenda Law stonewalls on claimthat it named man CEO without his permission, Ars Technica (Dec. 11, 2012) (available at http://arstechnica.com/tech-policy/2012/12/porn-trolling-firm-dogged-by-identity-theft-allegations/); Timothy B. Lee, Porn trolling case thrown out for "attempted fraud on the court," Ars Technica (Nov. 30, 2012) (available at http://arstechnica.com/tech-policy/2012/11/porn-trolling-case-thrown-out-for-attempted-fraud-on-the-court/)(Prenda retained local counsel for plaintiff after denying representing any party, and offered up former Prenda paralegal as corporate representative of plaintiff though he had no authority to act on its behalf); Reyhan Harmanci, The Pirates And Trolls Of Porn Valley, BuzzFeed (Aug. 30, 2012) (available at http://www.buzzfeed.com/reyhan/the-pirates-and-trolls-of-pornvalley) (discussing Prenda's "dubious methods," including misleading settlement demand letters and robocalls, and "using the outré nature of the content itself to pressure people to settle"); Nate Anderson, Judge eviscerates P2P lawyer: "I accepted you at your word," Ars Technica (Mar. 9, 2011), available at http://arstechnica.com/tech-policy/2011/03/judge-eviscerates-p2p-lawyer-i-accepted-you-at-your-word/ (District Court Judge Milton Shadur found Prenda's filings did not "comply with the subjective and objective good faith requirement" in "ill-considered lawsuit" that "abused the litigation system in more than one way").

Movant, is an accountholder for one of the IP addresses identified in Exhibit A of Plaintiff's Stipulated Motion for Expedited Discovery and is fearful that the information requested of his internet service provider will not be used for its intended purpose (i.e. to support Plaintiff's claim of contributory infringement against Mr. Ciccone), but for the ulterior purpose of subjecting him (along with hundreds of other individuals identified in Exhibit A of Plaintiff's Stipulated Motion) to Prenda's "shakedown" campaign.

## II. FACTUAL BACKGROUND

On October 7, 2012, Plaintiff filed its complaint against Matthew Ciccone 6("Mr. Ciccone") for the unlawful duplication and/or exchange of work of sexually explicit video material (i.e. "Sexual Obsessions"7) in violation of the United States Copyright Act. (Plaintiff's Complaint ¶¶ 1, 2) Plaintiff alleges that it detected Mr. Ciccone's duplication and/or reproduction of the video on May 8, 2011. (Plaintiff's Complaint ¶ 23) Plaintiff asserts that Mr. Ciccone is liable for copyright infringement by allowing his internet account (IP address 68.41.29.56) to be utilized as part of BitTorrent peer-to-peer file "swarm" for the download and/or exchange of its copyrighted material. (Plaintiff's Complaint ¶¶ 4, 22, 23, 29, 38, 51, 55)

---

6Mr. Ciccone's identity was disclosed in response to a subpoena that was served upon his Internet Service Provider
("ISP") in one of the numerous John Doe cases filed across the country by the owners of pornographic video works.

7The video work is registered in the United States Copyright Office (Copyright No. PA 0001725120 attached as
exhibit A of Plaintiff's Complaint.

Plaintiff also alleges that Mr. Ciccone "conspired with others to reproduce and distribute Plaintiff's video by exchanging pieces of the Video file in a torrent swarm." (Plaintiff's Complaint ¶ 55) Shortly after being served with a copy of the lawsuit,

Plaintiff and Defendant entered into a confidential settlement agreement whereby, Mr. Ciccone (in exchange for a nominal settlement of his copyright case) would "stipulate" to a joint discovery motion that would allow Plaintiff's to serve hundreds of subpoenas upon various ISP for newly identified IP address associated with other downloads of its video works.

Although Plaintiff settled its claims with Mr. Ciccone, it then represented to the court that additional discovery was warranted so that it could determine whether Mr. Ciccone actually passed pieces back and forth of Plaintiff's video – which was necessary for speedy resolution of its case against Mr. Ciccone.

> By alleging contributory infringement, Plaintiff is alleging that all of these individuals—including Defendant—who were allegedly in this BitTorrent swarm with Defendant contributed to one another's infringement of Plaintiff's copyrighted work. Plaintiff alleged claims of direct infringement and contributory infringement. In order to prove such, Plaintiff must get the identities and be granted leave to discover actual information from these individuals—i.e. records from their computer hard drives—in order to determine whether this sharing in fact occurred. The individuals whose IP addresses were allegedly in the BitTorrent swarm with Defendant possess a wealth of perishable information that is central to Plaintiff's case. For example, Plaintiff has alleged, "Defendant has used, and continues to use, the BitTorrent file transfer protocol to unlawfully distribute the Video to other individuals over the Internet by publishing the Video to hundreds of thousands of BitTorrent users…" (ECF No. 1 at ¶ 38). To prove its claim, Plaintiff must map the flow of data from Defendant to other swarm participants. Unless this Court is prepared to rule as a matter of law that mere coexistence in a BitTorrent swarm constitutes contributory infringement with respect to all other swarm participants, Plaintiff needs information that goes to the interconnections among the swarm members. (Brief In Support of Stipulated Motion for Expedited Discovery, p. 5-6)

In furtherance its request, Plaintiffs sought permission to subpoena various ISPs demanding that they produce the name, address, telephone number, e-mail, and MAC address of each of the subscribers listed on Exhibit A which included over 300 separate IP addresses. Notably the capture dates for the newly identified IP address all occur

nearly fifteen months after Mr. Ciccone's IP address was first detected with a BitTorrent "swarm."

The purpose of Plaintiff's discovery requests is to cast a wide net and make significant threats, with the hopes of settling with as many people as possible to maximize profit while at the same time avoiding the pitfalls of past judicial rulings which prevent them from quickly and cheaply "harvesting" the names and identities of hundreds of unrelated individuals. Plaintiff's plan is to improperly use the United States District Court as the enforcement tool to further its copyright business model. See Malibu Media, LLC v. John Does 1–10, Case No. 2:12–cv–3623–ODW (C.D. Cal. June 27, 2012) ("The federal courts are not cogs in plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial."); In re BitTorrent Adult Film Copyright Litigation, 2012 WL 1570765, *10 (E.D.N.Y. May 1, 2012) ("Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon."). Plaintiff's latest strategy of using its case against Mr. Ciccone (with a confidential settlement agreement requiring his stipulation to the requested discovery) is a blatant attempt to circumvent federal rules of discovery as well as the numerous rulings which have prevented Plaintiff's from obtaining the identities of mass numbers of individual Doe defendants in a single proceeding.

## III. HISTORY OF JOINING MULTIPLE DEFENDANTS IN ONE ACTION

Some courts have opined that the rationale for the joinder of multiple defendants in these copyright cases is an attempt by plaintiffs to "identify hundreds of Doe

defendants through pre-service discovery and facilitate mass settlement." See, for example, On the Cheap, LLC v. Does 1·501I, Case No. ClOA472, (Zimmerman, MJ.) (N.D. Cal. Sept 6, 2011) (quoting 10 Group, Inc. v. Does 1-435, 2011 U.S. Dist. LEXIS 14123, *9 (N.D. Cal. Feb. 3, 2011)). Movant notes that this is not Plaintiff's first mass-defendant copyright infringement lawsuit. For example, a similar copyright infringement suit regarding a different pornographic video was filed by a Plaintiff in the Northern District of West Virginia against 281 John Doe defendants. In that case, all John Doe defendants except for John Doe 1 were severed on the basis of misjoinder, and subpoenas for the identities of the severed defendants were quashed. See Patrick Collins, Inc. v. Does 1-281, Case No.3: l0-cv-00091, *3-4 (Bailey, 1) (N.D. W.V. Dec 16, 2010). It appears that after failing in West Virginia, Plaintiff now asserts similar claims before this Court. A similar copyright infringement suit regarding a different pornographic video was filed by Plaintiff in the Southern District of New York against 45 John Doe defendants. In that case, all John Doe defendants except for John Doe 1 were severed on the basis of misjoinder, and subpoenas for the identities of the severed defendants were quashed. See Patrick Collins, Inc. v. Does 1-45, Case No.: 12-cv-3507, *1-2 (Jones, S.D. N.Y. Aug 23, 2012). ("the Court grants Defendant Doe No. 41's motion in its entirety and thus severs and dismisses without prejudice the case against Doe defendants 2 through 45 for improper joinder, and quashes the subpoenas seeking the identity of those defendants.")

Because many of the named Defendants are mere subscribers and not infringers, the scheme of joinder may compel entirely innocent subscribers "to settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a

12

case about the alleged illegal trading of a pornographic film." Id., citing Digital Sin, Inc.

v. Does 1-176, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012) ("This risk of false

positives gives rise to the potential for coercing unjust settlements from innocent

defendants such as individuals who want to avoid the embarrassment of having their

names publicly associated with allegations of illegally downloading pornography."

[citation and internal quotation marks omitted]); MCGIP, LLC v. Does 1–149, No. 11

Civ. 2331, 2011 WL 4352110, at *4 n. 5 (N.D. Cal. Sept. 16, 2011) ("[T]he subscribers,

often embarrassed about the prospect of being named in a suit involving pornographic

movies, settle."). This risk of false positives gives rise to the potential for coercing unjust

settlements from innocent defendants such as individuals who want avoid the

embarrassment of having their name publically associated with allegations of

downloading pornography…This risk is not purely speculative; Plaintiff's counsel

estimated that 30% of the names turned over by ISPs are not those individuals who

actually downloaded or shared copyrighted content. Digital Sin, at *3.

 Similar cases have also been dismissed, such as CP Productions, Inc. v. Does 1-

300 case 1:2010-cv-06255, in which the Colorado District Court noted before dismissal:


> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something
> that this court will assume to be the case, given the Complaint's allegations that so
> state), each of those infringements was separate and apart from the others. No
> predicate has been shown for thus combining 300 separate actions on the cheap –-
> if CP had sued the 300 claimed infringers separately for their discrete
> infringements, the filing fees alone would have aggregated $105,000 rather than
> $350.

 Later, Judge Milton Shadur wrote about Steele Hansmeier's abuse of the litigation

system "in more than one way" with its "ill-considered" lawsuit:

This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants – this one seeking the nullification of a February 11, 2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, 1 CP's counsel is ordered to appear in court on March 9, 2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit. CP Productions, Inc. v. Does 1-300 case 1:2010-cv-06255 (dismissed ALL John Doe defendants)

In another Steele Hansmeier BitTorrent case in Illinois, Judge Harold A. Baker writes in

denying the motion for expedited discovery:

<u>Plainly stated, the court is concerned that the expedited ex parte discovery is a fishing expedition by means of a perversion of the purpose of and intent of Fed. R. Civ. P. 23.</u> VPR Internationale vs. Does 1-1017 case 2:2011-cv-02068

In the Northern District of California, these similar BitTorrent cases have been

severed for improper joinder:

- • . Pacific Century International LTD v. Does 1-101 case 4:2011cv02533 (severed does 2-101)
- • . IO Group, Inc. v. Does 1-435 case 3:2010cv04382 (severed does 2-435)
- • Diabolic Video Productions, Inc v. Does 1-2099 case 5:2010cv05865 (severed Does 2-2099)
- • . New Sensations, Inc v. Does 1-1768 case 5:2010cv05864 (severed Does 2-1768)

In another similar BitTorrent case, filed in the Northern District of California by Steele

Hansmeier, Millennium TGA, Inc v. Does 1-21 case 3:2011cv02258, Judge Samuel

Conti found the same joinder problems, and wrote in his Order denying request for leave

to take early discovery, "This Court does not issue fishing licenses." These nearly

identical BitTorrent cases in the Northern District of California, again represented by Steele Hansmeier, have been severed for improper joinder:

- Boy Racer, Inc v. Does 1-52 case 5:2011cv02329 (severed Does 2-52)
- Boy Racer, Inc v. Does 1-71 case 5:2011cv01958 (severed Does 2-72)

In a recent Order (September 6, 2011) by Judge Bernard Zimmerman, Northern District of California, 5010 John Does were dismissed from On The Cheap, LLC, v. Does 1-5011, Case C10-4472 BZ, due to improper joinder. Judge Zimmerman stated the following in his Order:

"This Court does not condone copyright infringement and encourages settlement of genuine disputes. However, Plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed above and then to offer to settle with Doe defendants so they can avoid digging themselves out of the morass plaintiff is creating."

In fact, even within this district, at least one court has issued an order to Show Cause as to why similar cases filed by the same Plaintiff's should not be severed. (Patrick Collins, Inc. v. John Does 1-12, United States District Court Case No. 12-cv-13310 Judge Arthur J. Tarnow Dated September 10, 2012).

Similarly, Judge George Caram Steeh's adopted a consistent approach concluding that joinder of the Doe defendants was not permitted under Rule 20 of the Federal Rules of Civil Procedure. (Exhibit 1; Patrick Collins, Inc. v. John Does 1-23, United States District Court Case No. 12-cv-15231 Judge George Caram Steeh Dated March 26, 2012).

As Judge Steeh's Order Granting Motion to Quash in Part and Severing Doe Defendants

2-23, noted at pages 4-5:

> "Defendant Doe argues that this court should quash the subpoenas served upon the Doe defendants because the plaintiff has improperly joined the putative defendants under Rule 20(a) of the Federal Rules of Civil Procedure. Defendant Doe maintains that joinder is improper because the allegations in the complaint, while involving a single Work, involve unrelated defendants who allegedly violated the copyright laws at different times and locations, sometimes using different services and perhaps subject to different defenses. Further, defendant claims that the nature of BitTorrent does not support plaintiff's claim that all John Doe IP addresses acted together for the entire relevant time period."

The court concluded at pages 6-9 of Judge Steeh's Order that simply alleging use

of BitTorrent technology does not comport with the requirements of Rule 20(a) for

permissive joinder:

> "…the court concludes that simply alleging the use of BitTorrent technology, like earlier P2P file sharing protocols, does not comport with the requirements under Rule 20(a) for permissive joinder. Here, the alleged activity involves 23 different defendants, 4 different ISPs, and nearly three months of activity (7/15/2011 through 10/11/2011). This is insufficient to establish that the Doe defendants were involved in the same transaction or series of transactions.
>
> ***
>
> [E]ven if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case.

> 809 F. Supp. 2d at 1163; see also, Patrick Collins, Inc. v. John Does 1-58, No. 3:11cv-531- JAG, 2011 U.S. Dist. LEXIS 120235, *5-6 (E.D. Va. Oct. 5, 2011); Boy Racer, Inc. v. Does 1-98, No. C-11-02536-JCS, 2011 U.S. Dist. LEXIS 11930, *2 (N.D. Cal. Oct. 14, 2011).

## IV. STANDARD OF REVIEW

Fed. R. Civ. P. 24(a) is applicable to the present case and provides in pertinent part that

upon a timely motion the court must permit anyone to intervene who:

> (2) claims an interest relating to the property or transaction, and is so situated that
> disposing of action may as a practical matter impair or impede the movant's
> ability to protect its interest, unless the existing parties adequately represent

Similarly, Fed. R. Civ. P. 24(b) provides that upon a timely motion the court may permit

anyone to intervene who:

(B) has a claim or defense that shares with the main action a common question of
law or fact

## V. LAW AND ARGUMENT

### A. Movants Have Standing to Challenge the Subpoena

There is no question that Movants have standing to challenge the subpoenas

served on its ISP. It is well-recognized that the "decision to remain anonymous .. .is an

aspect of the freedom of speech protected by the First Amendment." Mcintyre v. Ohio

Elections Comm'n, 514 U.S. 334, 342 (1995). The use of the internet does not destroy

this fundamental right. See Reno v. ACLU, 521 U.S. 844, 870 (1997) (recognizing there

is "no basis for qualifying the level of First Amendment scrutiny that should be applied"

to the internet.) Even if a customer's privacy interest in its subscriber information is

minimal or exceedingly small (a point which Movant does not concede), "parties need

only have some personal right or privilege in the information sought to have standing to

challenge a subpoena to a third party." Third Degree Films, Inc. v. Does 1-108, 2012 U.S.

Dist. LEXIS 25400, 7-8 (D. Md. February 28, 2012) (internal quotation marks and

citations omitted). Consequently, Movants have standing to challenge the subpoenas

seeking their personal information.

>B. Because and IP Address Does Not Identify The Person That Actually Engaged In the Alleged Activity, the Subpoenas Seeking the Personal Information Associated With the Movants Purported IP Address Should Be Quashed.

Plaintiff alleged in their Complaint that "IP addresses are numbers assigned to devices,

such as computers, that are connected to the internet." (Plaintiff's Complaint ¶ 14).

Plaintiff has alleged that retained a "computer forensics firm" to monitor its computers

and capture/analyze digital evidence of unlawful activity. (Plaintiff's Complaint ¶ 21)The

"computer forensics firm" allegedly identified Internet Protocol (IP) addresses which

Plaintiff alleges is associated with the purported conspiracy to reproduce and/or distribute

its pornographic video film. (Plaintiff's Complaint ¶ 21)Plaintiff has identified over three

hundred IP addresses as having allegedly unlawfully participated in the download and/or

exchange with Mr. Ciccone. Plaintiff claims that each of the 300 IP address can be linked

to Mr. Ciccone, however the list that the IP addresses being sought were identified and/or

detected over 15 months after Mr. Ciccone's IP address was identified. For example, Mr.

Ciccone's IP address was first identified by Plaintiff's on May 8, 2011 at 6:24:31 UTC

(Plaintiff's Complaint ¶ 23) However, each of the IP address identified in Exhibit A of

Plaintiff's Stipulated Motion show identification dates occurring from July to November

of 2012. Plaintiff asserts that the infringement "was part of a series of transactions"

as if they were somehow factually related and that the infringement was allegedly

accomplished by Mr. Ciccone and the other co-conspirators over a period of 15 months

after his IP address was first identified.

An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones. In re: Bittorrent Adult Film Copyright Infringement Cases, 2012 U.S. Dist. LEXIS 61447 at *3 (E.D.N.Y., May 1, 2012). As such, while Plaintiff claims to have observed activity by two specific IP addresses, he has failed to plead sufficient facts to support the contention that Movants committed any of the acts alleged in its Complaint. Many courts have acknowledged that any ISP subscriber that will be identified through a purported JP address is not necessarily the individual who engaged in the acts alleged in Plaintiff's complaint. See Id. at *4 ("While the ISP will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper."); see also Digital Sin, Inc. v. Does 1-176, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012) ("The Court is also concerned about the possibility that many of the names and addresses produce in response to Plaintiff's discovery request [seeking personal identifiers for a list of IP addresses] will not in fact be those of the individuals who [engaged in the alleged activity]."); SBO Pictures, Inc. v. Does 1-3036, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011) ([The ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes ... "); VPR Int'l v. Does 1-1017, 2011 U.S. Dist. LEXIS 64656, at *4 (C.D. Ill. April 29, 2011) ("Where an IP address might actually identify an individual subscriber and address, the correlation [between IP subscriber and copyright infringer] is far from perfect. The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.") Because an IP address does not identify the individual

that engaged in the alleged unlawful activity, the subpoenas seeking Movants' personal information should be quashed. Releasing Movants' personal information will not "prove or disprove something in issue" (i.e. reveal the identity of alleged co-conspirators), but merely identify another individual who Plaintiff's will undoubtedly threaten with embarrassment and/or exposure should they fail to submit to their settlement demands.

### C. Plaintiff Has Shown No Legitimate Purpose for Obtaining the Requested Information

Plaintiff's and/or their representatives has a long history of filing similar complaints, which have been acknowledged by numerous courts as "shakedowns" and mere constructs in a scheme to coerce settlements from people under pain of the threat that, whether they committed any wrongdoing or not, they will be publicly accused of being lawbreakers and consumers of pornographic films. Movants respectfully request that this Honorable Court refuse to permit such a scheme to operate here. Plaintiff's counsel filed a lawsuit virtually identical to that filed in the case at bar in St. Clair County, Illinois in December of 2011. Lightspeed v. Doe, 2011 L 683. As in the instant case, they issued subpoenas to thousands of alleged "co-conspirators". In fact, they issued subpoenas to 6,600 so-called "co-conspirators." The Honorable Robert P. LeChien resided over Lightspeed, entering orders permitting expansive discovery despite the fact that, as in the instant matter, it was clear that Plaintiff had failed to sufficiently plead its claims and was merely attempting to utilize the court as an apparatus for harvesting settlements.

Ultimately, several of the ISPs who had received subpoenas for information regarding their subscribers sought to intervene in the matter and challenge the subpoenas.

Their motions were denied, as were motions to quash filed by other subpoena targets. The ISPs filed a Rule 383 motion seeking a supervisory order from the Illinois Supreme Court directing the Circuit Court of St. Clair County to vacate the discovery order and allow the motions to quash. On June 27, 2012, the Illinois Supreme Court issued a supervisory order directing the Circuit Court of St. Clair County to vacate its discovery orders and enter an order allowing the motion to quash subpoenas filed by the ISPs. The entire lawsuit is part of a nationwide scheme under which Plaintiff's lawyers harvest identifying subscriber information based on one-sided papers, unchallenged evidence (as in this matter), and ex parte orders, and then contact the. identified subscribers to threaten them with public exposure for alleged unauthorized access to pornographic content if they don't cough up thousands of dollars in settlement. See e.g. In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765 (E.D.N.Y.) (noting "a nationwide blizzard of civil actions brought by purveyors of pornographic films" and also taking note of a media report that "more than 220,000 individuals have been sued since mid-2010 in a mass of BitTorrent lawsuits, many of them based upon alleged downloading of pornographic works.") The Eastern District Court's Order contains a thorough discussion of the nature of the coercive scheme in which Plaintiff and its counsel are engaged. Movants' telephone numbers and email addresses are absolutely immaterial and irrelevant to the claims made by Plaintiff. The only reason to request that information is to utilize it to harass Movants and to attempt to coerce Movants to settle their claims.

Typically, these types of lawsuits are filed in federal court and assert copyright infringement. But, plaintiffs like Guava and Lightspeed who are enlisting the courts for the purpose of harvesting contact information are encountering a "stiffening judicial

headwind" in federal courts across the country. Pac. Century Int'l. Ltd. v. John Does 1-37, 2012 WL 1072312 at *3 (N.D. Ill. Mar. 30, 2012). These courts have, in rapidly increasing numbers, quashed subpoenas, severed mass defendants, imposed sanctions and generally increased their supervision and skepticism over these lawsuits. See In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765 at *9. ("The most pervasive argument against permitting plaintiffs to proceed with early discovery rises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigation tactics to extract settlements from John Doe defendants"). Stymied by the recent decisions to sever many of the Doe defendant cases, plaintiffs have begun coercing singled named Defendants into "stipulating" to the same discovery requests rejected by other courts where they present the same issues and objectives.

This case is an example of the latest effort to secure mass discovery from a single court, In essence, to annex the court to the office of Plaintiff's counsel and its Florida call center, to which subpoena targets are directed in the subpoena and in the letters issued to the targets by the ISPs and their agents. In this type of case, the plaintiffs lawyers sue just one defendant, then say that there are numerous potential joint tortfeasors" or so-called "coconspirators" as to which discovery should be permitted even though they are not parties. Thus, discovery is sought as to hundreds of individuals under the theory that they are simultaneously (i) potential parties as to whom identification is warranted and (ii) non-patties as to whom personal jurisdiction, venue and joinder are not pertinent. In support of their fictional pleading, plaintiff's lawyers boldly argue both that the so-called co-conspirators" lack standing to challenge the subpoenas (because the subpoenas are directed at the ISPs) and that the ISPs lack standing to challenge the subpoenas (because

many of the arguments involve the rights of the ISP's customers who are the so-called "co-conspirators". The plaintiff's lawyer will also say that the subscriber's rights, if any, should be addressed after they are served and enter an appearance.

<u>D. Plaintiff Is Improperly Attempting To Link Activity of Some 300 IP Addresses Based On Entirely Separate And Independent Acts</u>

The gravamen of Plaintiff's requests is that some 300 separate accountholders collaborated with Mr. Ciccone to simultaneously use a BitTorrent computer program to either download or upload portions of the pornographic video. Essentially, Plaintiff alleges that Mr. Ciccone who allegedly "downloaded" the adult film and then "distributed" parts of that film in May of 2011, continued to do so with all 300 other IP address fifteen months after he was first identified. Plaintiff's entire argument rests upon the premise that merely using BitTorrent to download the same file or portions of a file is sufficient to allow unfettered access to discovery to identify others who allegedly collaborated with Mr. Ciccone. However, courts across the country have routinely held that committing the same type of violation in the same way does not link defendants together for purposes of joinder." LaFace Records, 2008 WL 544992, at *2. In BMG Music v. Does 1-4, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006), the court sua sponte severed multiple defendants in the action where the only connection between them was allegation they used same ISP to conduct copyright infringement. See also Interscope Records v. Does 1-25, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended sua sponte severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct

copyright infringement); BMG Music v. Does 1-203, No. Civ. A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, In re Cases Filed by Recording Companies, filed in Fonovisa, Inc. et al. v. Does 1-41 (No. A-04-CA-550 LY), Atlantic Recording Corporation, et al. v. Does 1-151 (No. A-04-CA-636 SS), Elektra Entertainment Group, Inc. et al. v. Does 1-11 (No. A-04-CA-703 LY); and UMG Recordings, Inc., et al. v. Does 1-51 (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, Twentieth Century Fox Film Corp., et al., v. Does 1-12, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

In Boy Racer; Inc. v. Does 1-60, Case No. 3:11cv-01738, *2 (Illston, J.) (N.D. Cal. Aug 19, 2011) the court outlined the history of other cases finding that multiple defendants named in a single lawsuit were improper.

> Laface Records, LLC v. Does 1-38, 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. Feb. 27, 2008) (ordering the severance of claims against thirty-eight defendants where plaintiff alleged each defendant used the same ISPs as well as the same peer-to-peer network to commit the alleged copyright infringement, but there was no assertion that the multiple defendants acted in concert); 1nterscope Records v. Does 1-25, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended sua sponte severance of multiple defendants in action where only connection between defendants was allegation that they used same ISP and peer-to-peer network to conduct copyright infringement); see also BMG Music v. Does, 2006 U.S. Dist. LEXIS 53237, No. 06-01579 (Patel, J.) (N.D. Cal. July 31, 2006) (finding improper joinder of four Doe defendants where the complaint

alleged that each defendant used the same IS!' to engage in distinct acts of infringement on separate dates at separate times, and there was no allegation that defendants acted in concert); Twentieth Century Fox Film Corp. v. Does 1-12, No. C 04- 04862 WHA (N.D. Cal. Nov. 16, 2004) (Alsup, J.) (severing twelve Doc defendants in a copyright infringement case where although defendants used the same ISPs to allegedly infringe motion picture recordings, there was no allegation that the individuals acted in concert); cf In the Matter of DIRECT TV, INC.. 2004 U.S. Dist. LEXIS 24263, No. 02-5912 (Ware, J.) (N.D. Cal. Jul. 26, 2004) (severing and dismissing hundreds of defendants in a case alleging that defendants purchased and used modified access cards and other pirate access devices to permit view of plaintiff's programming without authorization).

Other cases holding similarly include multiple West Virginia cases (see, for example, Patrick Collins, Case No. 3:10-cv-00091, *3; Third World Media, LLC v. Does 1-1,243, Case No. 3:IO-cv-00090, *3 (Bailey, J.) (N.D.W.V. Dec. 16, 2010); Combat Zone, Inc. v. Does 1-245, Case No. 3:10-cv-00096, *3 (Bailey, J.) (N.D.W.V. Dec. J6, 2010); and Axel Braun Production v. Does 1-7,098, Case No. 3:10-cv-001l2,*3 (Bailey, 1.) (N.D.W.V. Dec. 23,2010), all holding that "defendants' alleged use of some of the same ISPs and P21' networks to commit copyright infringement is, without more, insufficient for permissive joinder under Rule 20"); Lightspeed v. Does 1-1,000, 2011 U.S. Dist. LEXIS 35392 (N.D. Ill. March 31, 2011) (finding misjoinder in a multiple-defendant copyright case involving BitTorrent); multiple cases from Texas (see, for example, Funimation Entertainment v. Does 1-1337, Case No. 3:1I-cv-00147-F, *3 Furgeson, J.) (N.D. TX. Feb. 10,2011), holding that the plaintiff failed to allege any relationship among the defendants or any allegations that defendants acted in concert: "Plaintiff makes no allegation in this case that the claims against the joined defendants 'arise out of the same transaction, occurrence, or series of transactions or occurrences.' Instead, it seems that the copyright infringement claim against each Defendant is based on the individual acts of each Defendant")

**E. Alternatively The Court Should Issue A Protective Order Restricting the Use Of The Requested Information For the Stated Purpose (i.e In Support Of Its Claims Of Contributory Infringement Against Mr. Ciccone)**

 "[I]f a party or any person from whom discovery is sought shows good cause, a court may issue a protective order that either prohibits the discovery or prescribes its scope and nature." Accusoft Corp. v. Quest Diagnostics, Inc., No. 12-CV-40007, 2012 U.S. Dist. LEXIS 54216, at *29-30 (D. Mass. Apr. 18, 2012). "[A] party may move for a protective order 'regardless of whether [it] is seeking to prevent disclosure of information by a nonparty, as long as the moving party can tie the protected information to an interest listed in the rule, such as annoyance, embarrassment, etc.'" Id. at *32 (quoting Firetrace USA, LLC v. Jesclard, No. CV-07-2001, 2008 U.S. Dist. LEXIS 101838, at *4 (D. Ariz. Dec. 8, 2008)).The Court must limit any discovery that it finds "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C). "Under Rule 26, the trial court is required to balance the burden of proposed discovery against the likely benefit." Gill v. Gulfstream Park Racing Ass'n, 399 F.3d 391, 402 (1st Cir. 2005). Furthermore, "A district court has the power to enjoin litigants who abuse the court system by filing groundless and vexatious litigation." Austin v. Douglas G. Peterson & Assocs., 2012 U.S. Dist. LEXIS 91882, at *3 (D. Mass. June 20, 2012) (citations omitted).

Good cause for such a protective order exists because the discovery sought in the parallel actions imposes a significant burden on Defendants and would yield an improper benefit to Plaintiff (i.e. a new source of obtaining the name and identity of hundreds of IP address without having to resort to individual filings or risk severance due to improperly joining multiple unrelated parties into a single actions) Without a protective order each individual accountholder associated with 300 separate IP address attached as Plaintiff's

Exhibit A of Dkt. 10-1 would be forced to contest discovery or risk being subjected to extortive settlement demands. This would cause each individual extreme prejudice. See Schering Corp. v. Caraco Pharm. Labs., Ltd., No. 06-14386, 2007 U.S. Dist. LEXIS 41020, at *8-9 (E.D. Mich. June 6, 2007) (granting motion to stay action where "danger of unfair prejudice to [party] is substantial"; if party "is required to litigate identical issues in parallel actions, it will be forced to incur an unwarranted duplication of effort and expense," including expenses of separate discovery in each jurisdiction). A proper protective order, would limit the involvement of each individual IP address ccountholder, avoid rewarding Plaintiff's strategic gamesmanship, prevent piecemeal litigation, and conserve judicial resources.

## VII. CONCLUSION

The use of Mr. Ciccone's case to allow the discovery of some 300 other internet account holders raises serious questions of individual fairness and individual justice. Many of the Courts that previously heard these types of mass copyright infringement cases have correctly named this activity as a "Fishing Expedition" for subscriber information. There is a well-documented history of these types of cases in the Federal Courts. Movant respectfully moves and requests the Court quash the subpoena requiring the ISP to provide the subscriber information as to IP address issue a protective order prohibiting Plaintiff or counsel for Plaintiff from further contact with Movants, and prohibiting their ISPs from disclosing their personal information to Plaintiff and/or counsel for Plaintiff. In the event the Court feels production of the personal information for either Movant is appropriate, Movants respectfully request that the Court enter an

Order limiting the use of such information for the stated purpose of proving and/or

disproving their claims against Mr. Ciccone only.

Dated: January 25, 2013

s/ Richelle C. Hall
_____
RICHELLE C. HALL (P53383)
Attorney for Intervening Party
UAW Legal Services Plan
91 N. Saginaw St., Ste. 204
Pontiac, MI 48342
(248) 858-5850

**CERTIFICATE OF ELECTRONIC SERVICE**

 I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court with the ECF system, which will send notification of each filing to the following:

Jonathan Tappan, Esq.
Bernard J. Fuhs, Esq.

Dated: January 25, 2013

s/ Richelle C. Hall
_____
RICHELLE C. HALL (P53383)
Attorney for Intervening Party
UAW Legal Services Plan
91 N. Saginaw St., Ste. 204
Pontiac, MI 48342
(248) 858-5850